**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

**ANITA LANN, et al.,**

                                  *

        **Plaintiffs,**        *

                                    *                **Case No. 14-CV-2237 (PJM)**

    **v.**                            *

**TRINITY HEALTH
CORPORATION, et al.**       *

           **Defendants.**      *
-----------------------------------------------------------

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF UNOPPOSED MOTION FOR FINAL APPROVAL
<u>OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 4

      A.    Procedural History ................................................................................. 4

      B.    Settlement Negotiations ......................................................................... 7

            1.    Non-Monetary Equitable Consideration ................................. 12

            2.    Monetary Consideration ........................................................... 14

            3.    Class ......................................................................................... 14

            4.    Released Claims ....................................................................... 15

            5.    Notice ....................................................................................... 15

            6.    Attorneys' Fees ........................................................................ 15

      D.    Reasons for the Settlement .................................................................. 16

      E.    Preliminary Approval ........................................................................... 16

      F.    Notice to the Class ............................................................................... 17

III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ...... 18

      A.    The Settlement Meets the Judicial Standards for Final Approval ...................... 18

            1.    The *Jiffy Lube* "Fairness" Factors All Support Approval of This
                  Settlement. ............................................................................... 20

                  a.    The Posture of the Case and the Amount of Discovery
                        Completed Support Settlement Approval. ................................... 20

                  b.    The Circumstances Surrounding Settlement Negotiations
                        Weigh in Favor of Settlement Approval. ..................................... 21

                  c.    The Experience of Counsel Supports Settlement Approval. ...... 22

            2.    The Applicable *Jiffy Lube* "Adequacy" Factors Likewise Are
                  Satisfied Here. ......................................................................... 23

a.     The Relative Strength of Plaintiffs' Case and the Difficulties Associated With Potential Trials Weigh in Favor of Approval. ................................................... 23

b.     The Anticipated Duration and Expense of Additional Litigation Supports Settlement Approval. ................................. 24

c.     The Lack of Opposition to the Settlement Supports Settlement Approval. ................................................. 26

B.     The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process ................................................................................................ 26

C.     Certification of the Settlement Class Is Appropriate ......................................... 28

    1.     The Requirements of Rule 23(a) Are Easily Satisfied ........................... 29

    2.     The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2) ......... 30

       a.     Individual Actions Would Create Inconsistent Adjudications or be Dispositive of the Interests of Absent Members ................................................................. 30

       b.     Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole is Appropriate ................................................................ 31

    3.     The Requirements of Rule 23(g) Are Met ............................................ 32

IV.     CONCLUSION ................................................................................................ 32

ii

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re A.H. Robins Co., Inc.*,
173 F.3d 423 (4th Cir. 1999) ................................................................18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................28

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y. 2002) ...........................................................29

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
338 F.3d 755 (7th Cir. 2003) .................................................................31

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014)........................................................ *passim*

*Chronister v. Baptist Health.*,
442 F.3d 648 (8th Cir. 2006) ...................................................................2

*Colella v. Univ. of Pittsburgh*,
569 F. Supp. 2d 525 (W.D. Pa. 2008)....................................................21

*DeWitt v. Darlington Cty., S.C.*,
No. 11-00740, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) .....................21

*DiFelice v. U.S. Airways*,
235 F.R.D. 70 (E.D. Va. 2006) ..............................................................31

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975) ...............................................................18

*Foe v. Cuomo*,
700 F. Supp. 107 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990) ......................................................................27

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016)..............................................................21

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982)................................................................................29

- iii -

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................27, 32

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989) ...............................................................................................18

*Griffith v. Providence Health & Servs.*,
  No. 14-1720, 2017 WL 1064392 (W.D. Wash. March 21, 2017). .........................................28

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...............................................................................................18

*Hernandez v. La Flor De Mayo Bakery, Inc.*,
  *No*. CV CBD-15-1430, 2016 WL 25886 (D. Md. Jan. 4, 2016)............................................19

*Hewlett v. Premier Salons Int'l, Inc.*,
  185 F.R.D. 211 (D. Md. 1997)..............................................................................................29

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ....................................................................................... *passim*

*Kaplan v. Saint Peter's Healthcare System*,
  No. 13-2941, 2014 WL 1284854 (D.N.J. March 31, 2014)............................................2, 6, 23

*Lafarge Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  935 F. Supp. 675 (D. Md. 1996) ...........................................................................................18

*Lown v. Continental Cas. Co.*,
  238 F.3d 543 (4th Cir. 2001) ........................................................................................2, 8, 16

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)........................................................................................................28, 31

*Mitchell–Tracey v. United Gen. Title Ins. Co.*,
  237 F.R.D. 551 (D. Md. 2006)..............................................................................................30

*In re Mut. Funds Inv. Litig.*,
  MDL No. 1586, 2010 WL 2307568 (D. Md. May 19, 2010) ..................................................32

*Overall v. Ascension*,
  23 F.Supp.3d 816 (E.D. Mich. 2014).......................................................................................2

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
  390 U.S. 414 (1968)..............................................................................................................25

iv

*Rollins v. Dignity Health*,
  19 F.Supp.3d 909 (N.D. Cal. 2013) ................................................................2

*Saman v. LBDP, Inc.*,
  No. DKC-12-1083, 2013 WL 2949047 (D. Md. June 13, 2013)............................19

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3rd Cir. 2009) ......................................................................31

*Singer v. Becton Dickinson & Co.*,
  No. 08-821, 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ....................................21

*Stapleton v. Advocate Health Care Network & Subsidiaries*,
  76 F.Supp.3d 796 (N.D. Ill. 2014) ................................................................2

*Tatum v. R.J. Reynolds Tobacco Co.*,
  254 F.R.D. 59 (M.D.N.C. 2008) ..................................................................29

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*,
  820 F.2d 1359 (4th Cir. 1987) ....................................................................26

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..................................................................................29

*Whitaker v. Navy Fed. Credit Union*,
  No. 09-2288, 2010 WL 3928616 (D. Md. Oct. 4, 2010) ....................................19

*Zimmerman v. Bell*,
  800 F.2d 386 (4th Cir. 1986) ......................................................................18

v

# I.    INTRODUCTION

Plaintiffs Anita Lann, Jean Atcherson, Albert R. Chavies, and Thomas Holland ("Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in support of their Unopposed[1] Motion for Final Approval of Settlement Agreement and Certification of Settlement Class.[2]

The Settlement[3] is an excellent result for the proposed Settlement Class of participants and beneficiaries of the defined benefit pension plans sponsored by Trinity Health Corporation ("Trinity Health") and Catholic Health East ("CHE") (collectively the "Plans").[4]  Reached only after vigorous arm's-length negotiations by experienced counsel with the assistance of a third-party mediator who has significant experience mediating ERISA[5] cases, including Church Plan cases, the Settlement provides significant monetary and equitable relief, and avoids the considerable risks associated with ongoing litigation. Specifically, the monetary relief consists of **$76,650,400**, including (i) contributions to the Plans totaling **$75 million** payable over three years; (ii) cash payments of $1,600 to each of the 219 former participants ("Group B" class members) who elected and received a lump sum distribution during the 2014 lump sum window period (totaling **$350,400**); and (iii) cash payments of $176.36 to each of the 7,371 former participants ("Group C" class members) who terminated with insufficient years of service to vest under the current Plans' terms, but who would arguably have been entitled to vested benefits if

---

[1] Defendants do not oppose the relief sought in this motion paper, but they do not agree with many of the averments stated in this pleading.

[2] Plaintiffs file the instant Motion contemporaneously with their Motion for Awards of Attorneys' Fees and Expenses, and Incentive Fees to the Named Plaintiffs and Plaintiff Mary Beth Henrick, who was to be added as a Named Plaintiff if the litigation progressed in light of her role assisting Class Counsel with their investigation and providing deposition testimony.

[3] Capitalized terms not otherwise defined in this memorandum have the same meaning as ascribed to them in the Settlement Agreement, attached hereto as Ex. 1, and the First Addendum, attached hereto as Ex. 2, and all Schedules thereto.

[4] *See* Schedule A to the Settlement Agreement, Ex. 1, for complete list of Plans covered by the Settlement.

[5] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*

1

the Court ultimately held that the Plans were not Church Plans (totaling **$1.3 million**). Under the Settlement Trinity[6] also guarantees that the Plans will have sufficient funds to pay the accrued benefits payable to participants under the terms of the Plans for fifteen years commencing on the Effective Date of Settlement. The Settlement also includes significant equitable relief that will enhance the retirement security of the members of the Settlement Class. These protections are comparable to some of ERISA's key provisions and will enable the Plans' participants and beneficiaries to receive important notices and disclosures concerning the Plans and their benefits.

This result is especially advantageous for the Settlement Class given the challenging circumstances in which the Parties negotiated the Settlement between August and December 2015. At that time, the district courts were evenly divided on the key threshold question: Must a church plan be established by a church?[7] No appellate court had squarely addressed the issue, though Defendants contended that two older cases, including one in the Fourth Circuit, supported their argument that a non-church, specifically a church related hospital, could establish its own church plan.[8] However, this key threshold issue was pending in three Circuits: the Third, the Seventh, and the Ninth Circuit. The cases in the Third and Seventh Circuits had already been argued and a decision was expected at any time. These cases were settled in the face of that uncertainty (indeed, this uncertainty persists as these three cases are now under review by the Supreme Court). Class Counsel were ideally situated to evaluate that uncertainty, because they

---

[6] Trinity and CHE merged in 2014 and now operate under the name Trinity; accordingly, this brief will refer to Trinity to mean the entity that is the product of the CHE-Trinity merger.

[7] *Compare Overall v. Ascension,* 23 F.Supp.3d 816 (E.D. Mich. 2014) (granting defendants' motion to dismiss), *Lann v. Trinity* No. 14-2237, 2015 WL 6468197 (D. Md. Feb 24, 2015) (granting defendants' partial motion to dismiss) *and Chavies v. Catholic Health East*, No. 16-1417 (E.D. Pa. Mar. 28, 2014) Dkt. #67 (ordering jurisdictional discovery on whether CHE was a church) *with Rollins v. Dignity Health*, 19 F.Supp.3d 909 (N.D. Cal. 2013), *Stapleton v. Advocate Health Care Network & Subsidiaries,* 76 F.Supp.3d 796 (N.D. Ill. 2014), and *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. March 31, 2014) (denying motions to dismiss).

[8] *Lown v. Continental Cas. Co.,* 238 F.3d 543 (4th Cir. 2001), *Chronister v. Baptist Health,* 442 F.3d 648 (8th Cir. 2006).

also represent the plaintiffs in the three cases on appeal.  Class Counsel's goal, of course, was to achieve a settlement that provided significant relief to the Class *and* protected the Class from the risk of adverse decisions in the appellate courts.

In this setting, Class Counsel incorporated into the Settlement – in the nature of "carve outs" from the release – specific protections should any one of four potential events[9] occur which would enhance the strength of Plaintiffs' claims, as detailed in Schedule D to the Settlement Agreement.  *See* Ex. 2 at Schedule D. The occurrence of any one of these carve outs would allow Class Members to pursue any prospective claims for relief. At the same time, the Class will receive all of the benefits of the Settlement unless one of two of the contingencies occur (a ruling by the Supreme Court or IRS changing the law in Plaintiffs' favor). The other two contingencies – the Roman Catholic Church disassociating from Trinity Health, or an amendment of Congress to ERISA – would not impact or reduce the benefits provided to the Settlement Class. Moreover, even if the Supreme Court or IRS contingency is triggered, Group A will still receive the benefit of the first $25 million payment to the Plans and Groups B and C still will receive their payments; none can be clawed back. Accordingly, the Settlement provides the Plans' participants with the best of both worlds: significant monetary and equitable relief should the law or facts remain the same or change in Defendants' favor from the time settlement was negotiated, while preserving their right to pursue their ERISA claims prospectively should there be positive legal or factual developments for Plaintiffs' claims.

Finally, the Parties have fully complied with the terms of the Order Preliminarily Approving Class Action Settlement Agreement ("Preliminary Approval Order"), Dkt. # 101,

---

[9] These carve outs could be triggered by one of four possible events: (1) a decision by the United States Supreme Court holding either that (i) Church Plans must be established by a church or a convention or association of churches or (ii) that the Church Plan exemption is unconstitutional; (2) the Internal Revenue Service ("IRS") issues a written ruling that the Plans do not qualify as Church Plans; (3) ERISA is amended to eliminate the Church Plan exception; or (4) the Roman Catholic Church dissociates itself from Trinity Health Corporation.

3

including providing notice of the Settlement to the Settlement Class[10] and mailing the Class

Action Fairness Act ("CAFA") notices to the requisite officials pursuant to the CAFA statute.[11]

28 U.S.C. § 1715.  Under the governing standards for evaluating class action settlements in this

Circuit, this Settlement is fair, reasonable, and adequate, and should be approved.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural History

#### 1.      *Chavies v. Catholic Health East*

On March 28, 2013, Plaintiffs Chavies and Holland filed a putative class action

complaint in the United States District Court for the Eastern District of Pennsylvania against

CHE – a large, non-profit healthcare provider – and various other defendants ("CHE

Defendants") alleging violations of ERISA. *Chavies, et al. v. Catholic Health East, et al.,* No.

16-1417, Compl. ("CHE Complaint"), *CHE* Dkt. # 1. Plaintiffs in the CHE case ("CHE

Plaintiffs") were and are represented by Cohen Milstein Sellers & Toll, PLLC and Keller

Rohrback L.L.P. (collectively, "Class Counsel"). The CHE action is one of the first Church Plan

lawsuits filed. Thus, before filing, Class Counsel first identified the church plan issue and

developed the factual and legal theories relevant to arguing that plans sponsored by large

healthcare organizations are not ERISA-exempt Church Plans. Joint Decl. ¶ 15-18. This involved

an extensive analysis of the relevant ERISA legislative history and the applicable case law, as

well as an investigation of publicly-available information regarding CHE and pension benefits

within the healthcare industry, review and analysis of Plan-related documentation, analysis of

Defendants' financial statements, and interviews with participants in the Plans.  Joint Decl. ¶ 20.

---

[10] *See* Rust Aff. ¶ 11 and Exs. A-C thereto.
[11] *See* Declaration of Benjamin M. Saper, submitted contemporaneously herewith.

4

As a product of this extended investigation, the CHE Complaint alleged that the CHE Defendants denied ERISA protections to the participants in and beneficiaries of certain pension plans sponsored by CHE (the "CHE Plans") by incorrectly claiming that the CHE Plans qualified as ERISA exempt Church Plans. *See id.* ¶¶ 1-12; 29 U.S.C. § 1002(33).  On July 1, 2014, after the CHE case was filed, CHE merged with Trinity Health, also a large, non-profit healthcare provider, bringing the Plans at issue in both cases under the Trinity umbrella. Ex. 1 ¶ 1.22.

On June 17, 2013, the CHE Defendants moved to dismiss the CHE Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a plausible claim to relief. *CHE* Dkt. # 33, 44. Class Counsel moved to strike affidavits and exhibits filed in support of Defendants' motion and also substantively opposed the motion and arguments raised by Defendants in an opposition brief as well as a sur-reply brief allowed by the Court.  *CHE* Dkt. # 36, 38, 53-54, 56; *see also* Joint Decl. ¶ 21. Defendants also filed an opposition to Plaintiffs' motion to strike. *CHE* Dkt. # 41.  The district court ordered oral argument for March 25, 2014, Dkt. # 61, and following argument, the court denied the motion without prejudice and ordered the Parties to engage in jurisdictional discovery on the issue of whether CHE is a "church" within the meaning of ERISA. *CHE* Dkt. # 67. For several months thereafter, the Parties engaged in fact and expert discovery, and prepared to file *Daubert* and dispositive motions regarding whether CHE is a church. *CHE* Dkt. # 78; *see also* Joint Decl. ¶ 22. This included (1) review of over 10,000 pages of documents produced by Defendants; (2) taking and defending 18 depositions, including fact, Rule 30(b)(6) and expert depositions; (3) propounding 43 requests for production of documents, two sets of detailed, multi-part interrogatories and 82 requests for admission; (4) responding to 16 requests for documents from Defendants and production of over 2,000 pages; (5) consulting with experts and exchanging two expert reports and rebuttal reports; (6) monitoring

5

developments in all the Church Plan cases in order to determine the impact on these cases; and (7) largely completing briefing on summary judgment in CHE before the cases were settled.

As noted above, while the Parties were litigating the CHE case, the Third Circuit was considering an appeal from the District Court of New Jersey's holding that only a church could establish an ERISA-exempt Church Plan.  *See Kaplan v. Saint Peter's Healthcare System,* No. 13-2941, 2014 WL 1284854 (D.N.J. March 31, 2014).  Recognizing that a Third Circuit ruling would have a substantial influence on the course of this litigation, the Plaintiffs did not oppose Defendants' motion to stay their case until the Third Circuit ruled in the *Saint Peter's* matter. *CHE* Dkt. # 79. On January 1, 2015, the district court in the CHE case stayed the proceedings pending the Third Circuit's decision in *Saint Peter's*.[12]  *CHE* Dkt. # 80.

### 2. *Lann v. Trinity Health*

On July 11, 2014, a substantially similar putative class action complaint was filed in this Court against Trinity Health and various other defendants ("Trinity Defendants") alleging violations of ERISA. *Trinity*, Compl. ("Trinity Compl."), Dkt. # 1. The Trinity Complaint alleged that the Trinity Defendants denied the Plans' participants and beneficiaries the protections of ERISA by claiming that certain pension plans sponsored by Trinity Health and its related entities (the "Trinity Plans") qualified as ERISA exempt Church Plans. The Trinity Complaint also alleged that the Trinity Plans did not qualify as ERISA exempt Church Plans. *See id.* ¶¶ 1-11; 29 U.S.C. § 1002(33). With respect to the Trinity Complaint, Plaintiffs were and are

---

[12] On December 7, 2015, the Parties executed a Term Sheet settling the CHE and Trinity cases. Later, on December 29, 2015,the Third Circuit issued its decision in *Kaplan v. Saint Peter's Healthcare System*, holding that under the unambiguous terms of ERISA an exempt church plan must be established by a church, as opposed to a qualifying church agency. 810 F.3d 175.

also represented by Class Counsel. Just as in CHE, Class Counsel performed an extensive investigation into the relevant facts and law prior to filing the Trinity Complaint.

The Trinity Defendants filed a partial motion to dismiss the Trinity Complaint on October 6, 2014, arguing that a Church Plan could be established by a non-church entity and still qualify as an ERISA-exempt Church Plan. *See* Dkt # 40, 46.  Class Counsel responded in detail to that motion and the arguments raised by Defendants.  *See* Dkt. # 43; *see also* Joint Decl. ¶ 23. The first partial motion to dismiss was argued on February 23, 2015; following oral argument, the Court ruled from the bench, granting the Trinity Defendants' motion. *See* Dkt. # 54. The Trinity Defendants then filed a second partial motion to dismiss on April 10, 2015 arguing that Trinity and the Trinity Benefits Committee are associated with and controlled by the Roman Catholic Church as a matter of law and that Plaintiffs' challenge to the constitutionality of the Church Plan exemption failed as a matter of law. *See* Dkt. # 60, 65. Class Counsel responded in opposition on June 12, 2015.  *See* Dkt. # 63; *see also* Joint Decl. ¶ 24. The Trinity Defendants submitted over 800 pages in support of their first and second partial motions to dismiss (discussed *infra*), all of which were reviewed by Class Counsel.  Resolution of this second motion, which was fully briefed and scheduled for argument, was delayed by the Court at the Parties' request, to allow the Parties to negotiate the Settlement.  *See* Dkt. # 61, 64, 66, 67.

**B.     Settlement Negotiations**

The settlement negotiations took place over the course of nearly five months, beginning in August 2015. They were overseen by a respected third-party JAMS mediator, Robert Meyer, Esq., who has substantial experience mediating cases concerning ERISA and retirement plan issues, including cases involving the Church Plan exemption in ERISA.  Ex. 1 at § 2.11; Joint Decl. ¶ 25.  Trinity (which now includes CHE) participated in settlement negotiations with Class

7

Counsel for the Plaintiffs in both lawsuits.[13]  Joint Decl. ¶ 25.  These negotiations included two in-person mediation sessions in Los Angeles, and a third in Detroit, as well as numerous calls and meetings between the Parties.  Joint Decl. ¶ 26.  Both sides provided the mediator with their respective mediation statements and also exchanged multiple proposals and counter-proposals with each other concerning potential settlement terms.  *Id.* ¶ 27.

The posture of both the CHE and Trinity cases was uncertain at the time the Parties negotiated the Settlement and remained uncertain when agreement was reached.  The district court in the CHE case had delayed ruling on the motion to dismiss until after discovery was completed on the question of whether CHE is a church. In Plaintiffs' view, this implied that, even if Plaintiffs were right on the threshold statutory question and only a church may establish an exempt Church Plan, CHE may still be entitled to the exemption because CHE claimed it was a "church."  Joint Decl. ¶ 29.  In the Trinity case, this Court ruled against Plaintiffs, reasoning that it was bound by the Fourth Circuit's opinion in *Lown* suggesting that a non-church could establish a Church Plan.  *Id.* Accordingly, at the time the Settlement was reached in CHE and Trinity, a victory for Plaintiffs was by no means certain and the prospect of trial in both cases was real.

Prior to and during the course of these negotiations, Class Counsel investigated the facts, circumstances, and legal issues associated with the allegations and defenses in the action.  The investigation included, *inter alia*: (a) inspecting, reviewing, and analyzing documents produced by or otherwise relating to the Defendants, the Plans, and the administration and funding of the Plans, including documents that Defendants produced for settlement purposes; (b) researching the applicable law with respect to the claims asserted in the case and the possible defenses thereto; and (c) researching and analyzing governmental and other publicly-available sources

---

[13] Shortly after Plaintiffs filed suit against CHE in Pennsylvania in 2013, CHE merged with Trinity and the merged organization later proposed settling both cases together.  *See* Ex. 1 at § 1.22.  During the settlement negotiations, it was decided to resolve both the CHE and Trinity matters simultaneously. Joint Decl. ¶ 25.

2238044.1

concerning Defendants, the Plans, and the industry.  Ex. 1 at § 2.11; Joint Decl. ¶ 30.

Furthermore, during the litigation, Class Counsel consulted three of their experts, Ian Altman

(actuarial issues), Father Becket Soule (canon law issues), and Woody Spackman (certain

hospital administration issues), and also undertook confirmatory discovery as to the facts and

circumstances related to (a) the individuals listed in Group B who will receive a Lump Sum

Payment and (b) the individuals in Group C who will receive a Vesting Payment pursuant to the

Settlement. This confirmatory discovery included analysis of documentary information provided

by Defendants and communications with Trinity's benefits counsel about the determination of

the appropriate individuals included in Groups B and C.  Ex. 1 at § 2.12; Joint Decl. ¶ 30.  This

process verified that each person included in Group B received a lump sum benefit calculated on

an interest rate higher than that specified under ERISA, and that all individuals in Group C

accrued between three and five years of vesting service using proper metrics related to a final

average pay formula and annual service hours worked.  Ex. 1 at § 2.12; Joint Decl. ¶ 32.

After intensive negotiations with the mediator, the Parties agreed upon the key terms of

the settlement, and memorialized those terms in a Term Sheet executed on December 7, 2015. *Id.*

¶ 28.  On December 9, 2015, the Parties filed a status report in both cases informing the

respective district courts they had signed a Term Sheet containing the preliminary terms

resolving this matter.  *Trinity* Dkt. # 68; *CHE* Dkt. # 81.  The Parties also agreed to jointly move

to transfer the CHE case to this Court in order to consolidate the CHE case with the Trinity case

for purposes of settlement. *CHE* Dkt. # 98; *Trinity* Dkt. # 73.  On May 24, 2016, this Court

granted the Parties' motion to consolidate.  Dkt. # 74.

During this period, the Parties drafted and finalized a comprehensive Settlement

Agreement based on the Term Sheet, which was executed by all Parties on April 26, 2016.  *See*

Ex. 1. The Settlement is the result of lengthy and contentious arm's-length negotiations between

the Parties.  Joint Decl. ¶¶ 5, 26-28.  The process was thorough, adversarial, and professional,

and took into account the great uncertainty existing in the law relating to the ERISA Church Plan

9

exemption at the time (which still exists).  *Id.* ¶ 9.

On August 1, 2016, Plaintiffs filed their Motion for Preliminary Approval of the Class Action Settlement Agreement.  Dkt. # 75.  The Court held a Preliminary Settlement Approval Hearing on October 26, 2016, and thereafter directed the Parties to file a joint memorandum providing (1) clarification on how each contingent carve out included in the Settlement Agreement's release affects class members; and (2) the effect of these carve outs on attorneys' fees.  Dkt. # 83, 84.

The Parties complied with the Court's Order and on December 19, 2016, filed their Joint Memorandum explaining the carve outs, which would become effective should the following possible future positive developments in the law occur: (1) the United States Supreme Court holds that only churches can establish Church Plans or that the exception is unconstitutional; (2) the IRS determines that the Plans do not qualify as a Church Plan; (3) ERISA is amended eliminating the Church Plan exception; or (4) the Roman Catholic Church dissociates itself from Trinity Health Corporation. Dkt. # 85 at 7-9.[14]

These carve outs from the Settlement release position the Class to take advantage of any increase in rights presented by positive legal or factual developments by allowing the Plans' participants to pursue their ERISA claims prospectively.  The Joint Memorandum further explained that, because these contingencies allow participants to take advantage of positive developments in the law that preserve their right to seek full prospective ERISA compliance for the Plans (while losing no settlement benefits should later developments be adverse to their interests), Class Counsel's attorneys' fees are not impacted.  Dkt. # 85.  In addition, in an effort to further effectuate the intent of the Parties in settling this matter, the Parties negotiated an

---

[14] Conversely, as explained in the Joint Memorandum, if the law changes in Defendants' favor (e.g., the Supreme Court interprets the ERISA Church Plan exemption as Defendants do), Plaintiffs and the Settlement class retain all of the benefits outlined in the Settlement Agreement, and Defendants' obligations under the Settlement Agreement would remain in effect. Dkt. # 85 at 10.

addendum to the Settlement Agreement, providing that Defendants will make their first annual $25 million Plan contribution without regard to how the Supreme Court resolves the pending Church Plan cases or if the IRS determines that the Plans are not church Plans (i.e., even if the Supreme Court or IRS carve outs are triggered).  *See* Ex. 2 at 8.1.7.  The addendum also provides for Class Counsel's attorneys' fees to be paid concurrent with the first $25 million contribution to the Plans and after payments are made to class members in Groups B and C, assuring that the Plans receive their first installment of funding and Groups B and C benefit from the settlement before Class Counsel is paid.  *Id.*

Following review of the Parties' joint memorandum, the Court issued a January 6, 2017, Memorandum Order explaining its goal of ensuring clarity and transparency of the settlement's terms and carve-outs in the Settlement Agreement and Class Notice.  Dkt. # 86.  The Court also conveyed its concerns about the amount to be paid to Group B members (at that time, $550 to each, as indicated in the original Settlement Agreement), and  sought further clarification of how the payment to Group C members was determined.  *Id.*

At the Parties' request, the Court held a status conference on January 23, 2017.  There, the Parties informed the Court that subsequent to further negotiations prompted by the Court's concerns, the Parties agreed that the payments to Group B members would be increased from $550 to $1,600.  Joint Decl. ¶ 39.  The Parties also explained in further detail how the settlement amount to Group C members was determined, and outlined the revisions to be made to the Settlement Agreement and Class Notice.  *Id.* Finally, the Parties again described the details of the contingent carve outs.

Pursuant to the Court's January 9, 2017 Memorandum Opinion and Order and January 23, 2017 Status Conference, on January 30, 2017, the Parties filed the following in support of their Motion for Preliminary Approval of the Class Action Settlement Agreement (Dkt. # 75): (1) a revised First Addendum to the Settlement Agreement; (2) schedules listing the members of Groups B and C; (3) a revised Class Notice; (4) revised letters to Group B and C members; and

11

(5) a revised Proposed Order.  Dkt. # 90.  Final versions of the Class Notice and letters to Groups B and C were filed on February 6, 2017.  Dkt. # 100.  On that date, the Court preliminarily approved the Settlement and Notice Procedures.  Dkt. # 101.

## C.   Terms of the Settlement Agreement.

The following summarizes the principal terms of the Settlement:[15]

### 1.   Non-Monetary Equitable Consideration

The key concept of the Settlement Agreement is that the participants in the Plans listed on Schedule A to the Settlement Agreement will receive certain ERISA-like protections, such as: (1) provided that Trinity (or an entity controlled by Trinity) continues to sponsor the Plans, Trinity will guarantee the Plans have sufficient funds to pay the accrued benefits payable to participants under the terms of the Plans for fifteen years commencing on the Effective Date of Settlement (Ex. 1 ¶ 9.2); (2) this fifteen year financial commitment will continue should there be a plan termination or merger during that time period; and (3) during this fifteen year period, Trinity will not amend any of the Plans to decrease the accrued benefit of any participant in that Plan. *Id*. ¶¶ 9.2 to 9.4. These commitments are crucial because the promised benefits under the Plans, like most Church Plans, are "fund-specific," meaning that the Plans' financial responsibility for benefits is limited solely to the amount of assets held in the Plans' trust fund.[16]

---

[15] *See* Exs. 1 and 2.

[16] Prior to the enactment of ERISA, the sponsor of a defined benefit plan could limit its responsibility for benefit levels to whatever assets were contained in the trust fund; these are thus called "fund-specific plan[s]." John Langbein *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 187-88 (6th ed. 2015). As explained in the *Lann v. Trinity* Complaint, among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the fund-specific plan for employees of Studebaker Corporation, an automobile manufacturing company which defaulted on its pension obligations in 1965. Trinity Compl. ¶ 25 (citing John Langbein *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 78-83, (5th ed. 2010)).

This Settlement also provides the Plans' participants with equitable protections ensuring the fair and open administration of the Plans going forward. Many of these protections mimic the provisions of ERISA itself. For instance, under this Settlement, Trinity must comply with some of the same notice procedures provided for in ERISA. Specifically, Trinity must issue annual summary plan descriptions (SPDs), which it may produce in electronic form; provide annual pension benefits statements to the Plans' participants in electronic form; and quickly respond to participants' requests for current information about the value of their benefits. *Id*. ¶¶ 9.6, 9.7. These notice procedure requirements will ensure that the Plans' participants have a communications infrastructure in place so that they may stay informed about any changes or developments in their benefits.

Similarly, the Settlement requires Trinity to form and maintain a clear claims review procedure, which it must set forth in the electronic version of the annual SPDs. *Id*. ¶ 9.8. Moreover, Trinity must provide a procedure for establishing and carrying out funding policies and methods, and for making plan amendments. *Id*. ¶ 9.5.  As part of this requirement, Trinity must detail the basis on which payments are made to and from the Plans. *Id*.  These requirements will help demystify the claims review process and allow the Plans' participants to play an active role in managing and monitoring their pension benefits.

 Finally, Trinity must allow for one or more joint and survivor annuity payment options for participants and their spouses, as is required by ERISA. This provision will help participants to plan for and protect the future financial well-being of their families. *Id.* Accordingly, the

---

ERISA was enacted, in part, to prohibit the fund-specific defined benefit promise which failed the Studebaker employees. *Id.*  Plaintiffs allege that in claiming the Church Plan exemption, the Plan is, in essence, a Studebaker-esque pre-ERISA plan.

Settlement's non-monetary, equitable consideration provides the Plans' participants and beneficiaries with several important ERISA like protections for the next fifteen years that they otherwise would lack.

### 2. Monetary Consideration

The monetary consideration provided under this Settlement is substantial, totaling **$76,650,400**. Trinity will make an annual $25 million contribution to the Plans for three years, yielding a $75 million contribution. Ex. 1 ¶ 8.1.1. The first $25 million payment will be made 30 days after the Court's Final Approval Order becomes final and is non-appealable, regardless of whether the carve outs relating to the pending Supreme Court cases or potential IRS written rulings regarding the Plans become effective. Ex. 2 ¶ 8.1.1. The second and third annual payments of $25 million each will occur on the date of the first and second anniversary of the first payment, although Trinity may pre-pay these Plan contributions with no penalty. *Id.* In addition to the $75 million total contribution to the Plans, Trinity will also pay $1,600 each to 219 individuals who were among the participants who elected and received a lump sum distribution during the lump sum window period in 2014 (as defined by the Plans). Ex. 2 ¶ 8.1.3. Finally, Trinity will pay $1,300,000, on a pro rata basis, to the 7,371 former participants in the Plans who left covered service under the Plans after completing at least three but less than five years of vesting service and who, as a result, allegedly forfeited a benefit accrued under a cash balance or pension equity formula. Ex. 1 ¶ 8.1.4.

### 3. Class

The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2). Ex. 1 § 3.2.6. The Settlement Class is defined as: All who were participants (whether vested or non-vested) in or beneficiaries of the Plans identified in Schedule A of the Settlement Agreement, on or before the Effective Date of the Settlement. *Id.* § 1.14, 1.19.

**4.     Released Claims**

Section 4 of the Settlement Agreement generally defines the Released Claims as claims brought by Plaintiffs, or claims that could have been asserted by Plaintiffs, arising out of the allegations in the CHE and Trinity Complaints.  As noted above, there are four significant carve outs from the Released Claims.  *See* Ex. 1 §§ 4.1.3, 4.1.4 and Schedule D.

**5.     Notice**

The Preliminary Approval Order provided for the following notices: (a) a mailed notice, sent to the last known address of members of the Settlement Class; (b) for members of Groups B and C, a letter stating that the individual is a member of Group B or Group C (whichever is applicable) and explaining the unique terms and circumstances of the Settlement as it relates to those class members, including the amount of payment to each (Group B: $1,600 and Group C: $176.36); and (c) internet publication of the Settlement Agreement and Class Notice on www.cohenmilstein.com/update/trinity-che-settlement.  Defendants paid the cost for notice, and the notice was sent out on March 17, 2017.  *See* Ex. 1 at 8.2; Affidavit of Abigail Schwartz for Rust Consulting, Inc. ("Rust Aff."), filed contemporaneously herewith, at ¶ 11.

**6.     Attorneys' Fees**

By separate application, Class Counsel seeks an award of attorneys' fees, expenses, and a class representative incentive award for Plaintiffs (Anita Lann, Jean Atcherson, Albert R. Chavies, Thomas Holland and Mary Beth Henrick),[17] in an amount not to exceed $7,885,025. The Settlement Class was notified of these details in the Class Notice.  The attorneys' fees are separate from the $75 million contribution to the Plans and the $1.65 million pro rata payments to class members in Groups B and C.  Importantly, the attorneys' fees, expenses, and class

---

[17] As discussed in more detail in Plaintiffs' Motion for Awards of Attorneys' Fees and Expenses, and Incentive Fees to the Named Plaintiffs, filed contemporaneously herewith, Plaintiffs seek an award of $10,000 for each of the four Named Plaintiffs and Ms. Henrick for their services in this litigation and on behalf of the Class.

representative Incentive Fees to the Named Plaintiffs **will not reduce** the $76,650,400 Class Settlement Amount.  Ex. 1 § 8.1.5.

## D.    Reasons for the Settlement

Plaintiffs entered into this proposed Settlement based on the risks associated with continued litigation at the time the Term Sheet was signed (December 2015).  The Settlement takes into account the strengths and weaknesses of Plaintiffs' claims. In negotiating the Settlement, Class Counsel assessed several factors, including: (1) the uncertain and rapidly changing interpretation and application of the ERISA Church Plan exemption, including the possibility that the Third Circuit could rule against plaintiffs on the threshold statutory at issue in the two cases here; (2) the CHE district court's order to undertake discovery on the question of whether CHE is a church, which, in Plaintiffs' view, implied that CHE may be entitled to the exemption based on its claim that it was a "church;" (3) this Court's ruling that it was bound by *Lown,* which suggested that a non-church could establish a Church Plan; (4) ongoing investigation and research regarding the claims and defenses; (5) discovery conducted in the CHE case; (6) the likelihood that Plaintiffs would prevail at trial of the respective cases; (7) the range of possible recovery; (8) the substantial complexity, expense, and duration of litigation necessary to prosecute these actions through appeal, and if successful there, through trial, post-trial motions, and likely additional appeals, and the significant uncertainties in predicting the outcome of this complex litigation; and (9) Defendants' determination to fight and contest every aspect of these cases. Having undertaken an analysis of all of these factors, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate, and that it should be approved. This conclusion is especially warranted given that the Settlement allows class members the benefits of the carve outs discussed above.

## E.    Preliminary Approval

Class Counsel moved for preliminary approval of the Settlement Agreement on August 1,

16

2016, Dkt. # 75, and the Court entered the Preliminary Approval Order on February 6, 2017. In the Preliminary Approval Order, the Court found that the proposed Class met all the requirements of Rules 23(a) and (b), and preliminarily certified the Class defined above pursuant to Rules 23(b)(1) and/or (2) and 23(e). *Id.* at 2-4. The Court further appointed Anita Lann, Jean Atcherson, Albert R. Chavies and Thomas Holland, the Named Plaintiffs, as the Class representatives for the Settlement Class, and appointed Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P., as Class Counsel for the Settlement Class. *Id.*

## F.     Notice to the Class

In paragraph 5 of the Preliminary Approval Order, the Court approved the form of the proposed Notice and set deadlines for mailing and publishing the Notice and Group B and C letters, and for posting the Notice on the settlement website created and maintained for this litigation. *Id.* at 5-6. In accordance with the Court's Order, Defendants issued the Court-approved Notice and letters on March 17, 2017. The Rust Affidavit, submitted contemporaneously herewith, demonstrates compliance with this Court's Order for Class Notice. The Rust Affidavit attests to the mailing of 253,742 individual Notices to the Settlement Class (including 219 letters to Group B and 7,371 letters to Group C), wherein May 3, 2017 was established as the deadline for objecting to the proposed Settlement and Plaintiffs' motion for attorneys' fees and other relief. Rust Aff. ¶ 11. Further, Rust created a dedicated telephone line for the Settlement Class. *Id.* ¶ 15. As of April 13, 2017, Rust had received approximately 1,088 phone inquiries. *Id.* ¶ 15.

By March 20, 2017, as required by the Preliminary Approval Order, Class Counsel also posted and linked the Complaint, the Settlement Agreement, the Class Notice, the Preliminary Approval Motion, and the Preliminary Approval Order on www.cohenmilstein.com/update/trinity-che-settlement, the dedicated Settlement website through which the Settlement Class could access Settlement-related information and materials. *See* Joint

17

Decl. ¶ 45.  As of April 17, 2017, these sites had recorded 2,498 page views and Class Counsel has responded to 340 email, letter and phone inquiries. *Id*. ¶ 46.

## III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

## A.    The Settlement Meets the Judicial Standards for Final Approval

Courts in this Circuit have a strong presumption in favor of class action settlement. *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (emphasizing "the unassailable premise that settlements are to be encouraged" in class actions). This position stems from this Circuit's recognition that class action "settlements generally are favored" because "disputes are resolved; [and] the resources of litigants and courts are saved," *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).  In class actions, the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See* Herbert Newberg & Alba Conte*, Newberg on Class Actions* § 13.44 (5th ed. 2014).  Thus, "'[t]he law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.'" *In re A.H. Robins Co., Inc.*, 173 F.3d 423 (4th Cir. 1999) (quoting *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988)). The Fourth Circuit has also emphasized that class certification in a proposed settlement not only inures to Plaintiffs' benefit, but also "protects *the defendant* from inconsistent adjudications." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427 (4th Cir. 2003) (emphasis in original). This is because "[c]lass certification…promotes consistency of results, giving defendants the benefit of finality and repose." *Id.*

Recognizing that a settlement represents an exercise of informed judgment by the negotiating parties, this Court has uniformly held that the function of the judge reviewing the settlement is not to resolve issues that the parties intentionally left unresolved, nor to "'turn the settlement hearing into a trial or a rehearsal of the trial,'" nor to make dispositive conclusions on unsettled legal issues.  *Flinn v. FMC Corp.,* 528 F.2d  1169, 1172-73 (4th Cir. 1975) (internal

18

citation omitted). Instead, the role of the Court is to ensure that a "settlement represents a reasonable compromise" of disputed issues. *See, e.g., Lafarge Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 935 F. Supp. 675, 679 (D. Md. 1996) ("The settlement represents a reasonable compromise of Lafarge's potential liability in light of the numerous claims asserted by Lone Star and the possibility that the Fourth Circuit might again reverse and remand for a third trial."); *Hernandez v. La Flor De Mayo Bakery, Inc., No*. CV CBD-15-1430, 2016 WL 25886, at *1 (D. Md. Jan. 4, 2016) (in a Fair Labor Standards Act class action case, the role of the Court is to ensure that the "settlement reflects a 'reasonable compromise of disputed issues'") (citing *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013)).

Now that the Court has preliminarily approved the Settlement and caused notice to issue to Settlement Class members consistent with Federal Rule of Civil Procedure 23(e)(1) (*see also* section III(B), *infra*), the Court must decide whether final approval is warranted.  Ultimately, the Court should finally approve the settlement if it determines that the settlement is "fundamentally fair, adequate, and reasonable."  Federal Rule of Civil Procedure 23(e)(2); *see In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991) ("*Jiffy Lube*"); *Abbasi,* 299 F.R.D. at 478.

Courts in the Fourth Circuit engage in a bifurcated analysis to determine whether a proposed settlement is fair, reasonable and adequate.  *Jiffy Lube,* 927 F.2d at 158-59. Accordingly, this includes separate analysis of the "fairness" and the "adequacy" of the settlement.  A settlement is found to be fair if it "was reached as a result of good faith bargaining at arm's length, without collusion."  *Whitaker v. Navy Fed. Credit Union,* No. 09-2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010) (quoting *Jiffy Lube,* 972 F.2d at 159).  The four *Jiffy Lube* fairness factors are:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [ERISA] class action litigation.

*Jiffy Lube,* 927 F.2d at 159.

19

Next, the "adequacy" determination is undertaken based on the substance of the settlement, and is evaluated based on the following five *Jiffy Lube* factors:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Id.*

This settlement is "fair and adequate" under the criteria set forth in *Jiffy Lube,* especially given the significant relief provided in the Settlement Agreement, including the dual protections where Class members receive significant monetary and equitable protections in the event that the law develops negatively with respect to the Class's claims and the ability to benefit from any positive legal or factual developments impacting the Class's claims by allowing class members to seek prospective, full ERISA compliance.

**1.     The *Jiffy Lube* "Fairness" Factors All Support Approval of This Settlement.**

**a.     The Posture of the Case and the Amount of Discovery Completed Support Settlement Approval.**

The posture of this case and the information obtained by Class Counsel in the course of investigation and litigation support the approval of the Settlement.  This consolidated litigation commenced against the CHE Defendants more than four years ago, and in both that action and in the case against the Trinity Defendants, the Parties have engaged in hotly contested litigation including three fully briefed motions to dismiss and months of fact and expert discovery.  At the time the Settlement Term Sheet was executed, there was significant uncertainty for all Parties because it was unknown whether the pending appeals would result in decisions supporting Plaintiffs' theory that only churches could establish a Church Plan, or whether the Circuits would interpret the ERISA Church Plan exemption as Defendants do.  Further, this Court had already granted the Trinity Defendants' partial motion to dismiss, finding that a Church Plan could be

20

established by a church agency, and *Daubert* and Summary Judgment motions had been prepared and were ready to be filed in CHE. Such uncertainty still exists with the Church Plan cases pending before the Supreme Court.

Given this history, the uncertain status of the law played a significant role in encouraging a settlement.  Under such circumstances, courts readily find settlements to be fair and adequate. *See, e.g.,  Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 229 (N.D. Ill. 2016) (potential adverse legal developments, including Supreme Court's pending decision in *Spokeo* at time of settlement negotiations, properly considered in reaching settlement); *DeWitt v. Darlington Cty., S.C.*, No. 11-00740, 2013 WL 6408371, at *5 (D.S.C. Dec. 6, 2013) (settlement approved given uncertainty in "current Fourth Circuit precedent" on central issue in case); *Singer v. Becton Dickinson & Co.*, No. 08-821, 2009 WL 4809646, at *7 (S.D. Cal. Dec. 9, 2009) (approval where risk of higher court adopting Defendants' position on statute exists); *see also Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 532 (W.D. Pa. 2008) (change in law subsequent to preliminary approval affecting plaintiffs' claims does not warrant denial of final approval)

Likewise, the cases included substantial informal and formal discovery, as detailed above.  Therefore the facts were sufficiently developed to permit an accurate assessment of the cases' merits in reaching the Settlement.  Settlement of these cases avoids further time-consuming litigation, and allows the Class to receive substantial equitable and monetary consideration without undue difficulty or delay while at the same time allowing Class members to receive the benefit of positive developments in the law.  Accordingly, the first two *Jiffy Lube* fairness factors favor approval of the Settlement.

> **b.    The Circumstances Surrounding Settlement Negotiations Weigh in Favor of Settlement Approval.**

The third *Jiffy Lube* "fairness" factor, the circumstances surrounding the negotiations, also weighs heavily in favor of approval of this Settlement.  The Parties agreed to settle after nearly five months of negotiations, involving multiple in-person mediation sessions and a

21

number of telephone and written communications, all facilitated by the tireless mediator, Mr. Meyer. Significantly, the negotiations occurred while the threshold Church Plan exemption issue was pending in the Third Circuit – an adverse ruling in which would have rendered the protections (at least as to the CHE Plans' participants) in this Settlement nearly impossible.  This lengthy process culminated in the Term Sheet. After months of confirmatory discovery regarding the populations in Groups B and C, the Parties executed the Settlement Agreement. Following submission of the Parties' Motion for Preliminary Approval, the Court made multiple suggestions, including changes to payments made to Group B class members and inclusion of the Court's chart summarizing the effects of the contingent carve out provisions as Schedule D to the Settlement Agreement.  The Settlement Agreement thus is a detailed and comprehensive agreement based on the Term Sheet which incorporates the Court's directives.

Given the stage of proceedings, the hotly contested litigation, the substantial monetary and equitable relief provided for the benefit of the Plans and Class, and the Court's meticulous oversight of settlement terms, the Court can be confident that the Agreement is not a result of collusion, but rather is the result of intensive mediation and arms-length negotiations. Accordingly, the third factor supports approval.

> ### c.    The Experience of Counsel Supports Settlement Approval.

The forth *Jiffy Lube* "fairness" factor, the experience of counsel, similarly supports approval of this settlement.  Class Counsel are recognized nationally as leading and skillful practitioners in class action ERISA cases, including ERISA Church Plan litigation.  Joint Decl. ¶ 49.  Class Counsel represent participants and beneficiaries in numerous pension plans like the Plans here, similarly involving non-profit hospital claims of Church Plan exemption from

ERISA's protections. *Id*. In this case, like others, Class Counsel conducted an extensive investigation; engaged in motion practice, including briefing on the motions to dismiss; and participated in numerous negotiations concerning the issues in this litigation. *Id*. at ¶ 13. Accordingly, Class Counsel possess a comprehensive understanding of both the strengths and weaknesses of the claims, and believe that the Settlement is fair, reasonable and is in the best interests of the Plans and the Settlement Class. This factor weighs heavily in favor of the Settlement's final approval.

### 2. The Applicable *Jiffy Lube* "Adequacy" Factors Likewise Are Satisfied Here.

#### a. The Relative Strength of Plaintiffs' Case and the Difficulties Associated With Potential Trials Weigh in Favor of Approval.

The first and second *Jiffy Lube* "adequacy" factors, the strength of the case on the merits, and any difficulties likely to be encountered at trial, favor final approval.   Plaintiffs' case is strong and they have pursued it vigorously, but the litigation is not without risk or uncertainty, as explained above.  Moreover, the U.S. Supreme Court recently heard argument on the three consolidated appellate Church Plan cases, and will be deciding whether, as Plaintiffs contend, Church Plans must be established by churches; or whether, as Defendants contend, organizations "controlled by" or "associated with" churches may establish their own Church Plans. *See Advocate*, *Saint Peter's*, *Dignity*, Nos. 16-74, 16-86, 16-258 (certiorari granted Dec. 2, 2016).

The pendency of proceedings in the Supreme Court on one of the fundamental issues in this case poses risks for both sides in continuing with this litigation.[18] First, the pendency of such proceedings means that this case could have been delayed for months.  Second, a decision from

---

[18] The Supreme Court's review also highlights the merits of this unique Settlement, which not only provides substantial monetary and equitable relief regardless of the outcome in the Supreme Court, but also preserves any rights to pursue full prospective ERISA compliance for the Plans in the event the Supreme Court rules that only churches, and not hospitals or other church-related entities, can establish a Church Plan.  Joint Decl. ¶ 10.

the Supreme Court will not necessarily resolve all the issues in the litigation.  The Parties would still need to litigate how the Supreme Court's ruling applies to the facts of each case, as well as continue with fact and expert discovery in Trinity and merits discovery in CHE, class certification, preparation of witnesses and exhibits for trial, pre-trial memoranda and procedures, presentation of witnesses and evidence at trial, and a near-certain appeal of any judgment.

Though Class Counsel remain confident in the merits of Plaintiffs' claims, there is risk in any litigation, and especially here, where the area of the law is one of the most nuanced, unpredictable, and rapidly developing in ERISA jurisprudence, as evidenced by (i) this Court's granting of the Trinity Defendants' first motion to dismiss; (ii) the CHE court ordering discovery to inform its decision on the CHE Defendants' motion to dismiss, and (iii) the proceedings in the Supreme Court.  Moreover, presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay.  Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary.  The monetary and non-monetary consideration to the Plans is far better for the Class than the possibility of a more significant recovery, if any, after an expensive and protracted trial and appeal.

Class Counsel believes that the Settlement will provide the Class with many of the protections they would have received if the cases had been litigated to a conclusion and Plaintiffs had prevailed, and provides protection in the event legal developments favor Plaintiffs' claims by allowing them to pursue full prospective ERISA compliance.  Given the potential risks and delays, a Class Settlement of over $75 million, along with significant other administrative and equitable protections, should likewise be regarded by the Court as a highly favorable recovery that warrants final approval. *See* Ex. 1 §§ 2.14, 8.1.2, 9.1-9.9; Ex. 2 §§ 2.13, 8.1.1, 8.1.3, 8.1.7.

> **b.  The Anticipated Duration and Expense of Additional Litigation Supports Settlement Approval.**

The third *Jiffy Lube* "adequacy" factor, the anticipated duration and expense of additional

24

litigation, also supports the proposed settlement.  Although trial of these cases certainly would be manageable and would be superior to other means of adjudicating the controversy, the issue presented by this factor is the extent to which the anticipated complexity and costs of proceeding to trial favor settlement, particularly if the Supreme Court adopts Defendants' position on the ERISA Church Plan exemption.

As outlined above, this case presents complex issues relating to (i) ERISA statutory construction, (ii) potential determination of whether Defendants and their benefits committees are controlled by or associated with the Roman Catholic Church (should the Supreme Court rule in petitioners' favor and find that hospitals can in certain circumstances establish Church Plans) and (iii) statutory compliance with other provisions of ERISA. Continued litigation to judgment would involve separate trials in this Court and the Eastern District of Pennsylvania.  The expense of taking these cases through trial would be considerable.  It would require, among other things, a substantial amount of formal discovery (including many important depositions) and extensive motions practice.  Trial preparation would require great effort, both by the Parties and the Court (particularly here, as these would be bench trials).

Avoiding the delay and risk of protracted litigation is a primary reason for counsel to recommend and courts to approve a settlement.  *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation).  Here, that delay and risk would be substantial. Accordingly, the anticipated complexity, costs, and time necessary to try these cases – in comparison with the substantial cost and time savings achieved through the settlement proposed here – favors settlement approval.

### c.    The Lack of Opposition to the Settlement Supports Settlement Approval.

Plaintiffs fully support the proposed Settlement, but full consideration of the fifth[19] *Jiffy Lube* "adequacy" factor, the "degree of opposition to the settlement," cannot occur until after the deadline to file objections, which is May 3, 2017.  Dkt. # 101 at ¶ 6.  Class Counsel will address objections, if any, in their Reply in Support of Final Approval (the "Reply"), due on May 24, 2017.  The Settlement Class appears to agree that the Settlement is fair, reasonable and adequate. Class Counsel have already spoken with over 300 Class members about the Settlement, and to date have received no substantive objections. Joint Decl. ¶ 45-46.[20]  If objections are later received, Class Counsel will respond to them in the Reply.

### B.    The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process

In accordance with the Preliminary Approval Order, the Settlement Class has been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections.  The notice plan fully informed Settlement Class members of the lawsuit and the proposed Settlement, and enabled them to make informed decisions about their rights.  Joint Decl. ¶ 43.

Due process requires that "the proposed form of notification be reasonably certain to inform those affected."  *Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*, 820 F.2d

---

[19] The fourth *Jiffy Lube* "adequacy" factor, the "solvency of the defendants and the likelihood of recovery on a litigated judgment" is not relevant here. Trinity did not raise any issues regarding its solvency or ability to withstand a judgment; thus this factor is neutral.

[20] Attached as Exhibits I and J to the Joint Declaration are the two immaterial objections received to date; both reflect a measure of confusion about the class action process and the Fairness Hearing. *See* Ex. I, March 27, 2017 Letter from Marilyn Bowman (asking to be excused from attending the Fairness Hearing); Ex. J, March 22, 2017 Letter from Richard Siebel (requesting removal from the action and stating "I do not know the facts and I have no legal support for this case."). Class Counsel have reached out to these class members to explain that they do not need to attend the Fairness Hearing, and that the Settlement Class is a non-opt-out class.

26

1359, 1364 (4th Cir. 1987).  For the due process standard to be met, where, as here, all class members are known, the "best practicable notice" is the method approved by the Court in its Preliminary Approval Order, direct mail notice to each class member's last known address.  *See Abbasi,* 299 F.R.D. at 479; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (to satisfy Rule 23, "[f]or non-opt out cases, such as the ERISA Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct[.]'" (quoting Fed. R. Civ. P. 23(c)(2)(A)).  Here, the form and methods of notice of proposed Settlement provided pursuant to the Preliminary Approval Order satisfy all due process considerations and Rules 23(c)(2) and (e)(1).

The mailed class notice provided detailed information about the Settlement to approximately 253,742 individual members of the Settlement, including: (1) a comprehensive summary of the Settlement's terms; (2) notice of Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and class representative Incentive Fees for the services performed by Named Plaintiffs; (3) detailed information about the Released Claims; and (4) separate letters to Groups B and C Class Members explaining in detail about Settlement terms affecting them.  Rust Aff. ¶ 11, Joint Decl. ¶ 43. In addition, the notice provided information about the Fairness Hearing date, rights of members of the Settlement Class to object (and deadlines and procedures for objecting), and the procedure to receive additional information. Joint Decl. ¶ 43.  The mailed class notice provided members of the Settlement Class with contact information for Class Counsel, information on the toll-free phone number for inquiries, and website addresses for further information.  *Id.*, *see also* Rust Aff. Exs. A, B and C.

The notice form and methods employed here are substantially similar to those successfully used in many other ERISA class settlements and "fairly, accurately, and neutrally describe the claims and parties in the litigation[,] . . . the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990) (citation omitted). In

addition, as detailed, *supra,* the Court's direct oversight of the language in the notice and letters to Groups B and C resulted in clear and transparent communications to the Class about the Settlement's terms. Accordingly, the notice provided to the Settlement Class satisfies the requirements of due process and Rule 23.

**C.      Certification of the Settlement Class Is Appropriate**

To proceed with the settlement approval process, it is necessary for the Court to certify a class for Settlement.  Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b).  Courts in this jurisdiction have consistently found that class certification is appropriate in ERISA cases. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014); *see also* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (certification under Fed. R. Civ. P. 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries). Congress has similarly embraced the use of representative actions to enforce ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' clearly expressed intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). Moreover, in a similar Church Plan case, the district court for the Western District of Washington recently certified a settlement class. *Griffith v. Providence Health & Servs.,* No. 14-1720, 2017 WL 1064392 (W.D. Wash. March 21, 2017). Thus this Action, which seeks relief on behalf of the Plans, is precisely the type of case that Federal Rule of Civil Procedure 23 was enacted to address. Furthermore, the Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997).  As set forth below, the Class easily satisfies the requirements of Rule 23(a), (b)(1) and (b)(2) and thus certification of the Settlement Class is appropriate.

28

1.      **The Requirements of Rule 23(a) Are Easily Satisfied**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Defendants have identified, and the Class Notice has been sent to, approximately 253,742 members of the Settlement Class.  *See* Rust Aff. ¶ 11.  Thus, the element of numerosity is met.  *See, e.g., Boyd*, 299 F.R.D. at 458 (certifying an ERISA class of more than 20,000 individuals and noting that the class was substantially larger than other classes that have been certified in the Fourth Circuit (citing cases)).

Rule 23(a)(2) requires that a class action raise "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To establish commonality, the class members must "have suffered the same injury," and "their claims must depend upon a common contention." *Abbasi,* 299 F.R.D. at 477 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). In the instant case, members of the Settlement Class share multiple issues of law and fact, such as whether the Plans are exempt from ERISA as Church Plans, and, if not, whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA.  All of these questions and issues are common to the Settlement Class.  *See, e.g., Boyd*, 299 F.R.D. at 458 (identifying similar common issues in an ERISA breach of fiduciary duty case) (citing *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (same); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (same)). Thus, commonality is satisfied.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  When evaluating typicality, a court must analyze whether the plaintiff "is part of the class and possess[es] the same interest and suffer[s] the same injury as the class members."  *Boyd*, 299 F.R.D. at 458 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)). The typicality requirement focuses on "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Boyd*, 299 F.R.D. at 458 (citing *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997)).  Here, Plaintiffs'

29

claims arise from the same course of events as the claims of the Settlement Class—Defendants' alleged failure to maintain the Plans in accordance with ERISA.  Moreover, each member of the Settlement Class asserts the same claims arising from the same conduct by Defendants and seeking the same relief on behalf of the Plan—compliance with ERISA.  Accordingly, typicality is met.

Rule 23(a)(4) requires "representative parties [who] will fairly and adequately protect the interests of the class."  Representation is adequate where "(1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable."  *Boyd*, 299 F.R.D. at 459 (citing *Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006)).  The "adequacy" test is easily met in this case, particularly in the context of the Settlement Class.  The claims and interests of the Named Plaintiffs were congruent with those of the other members of the Settlement Class: all seek to enhance their retirement security under this Plan, whether through monetary or non-monetary relief.  There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class and that they have retained qualified counsel with extensive experience representing plaintiffs in class litigation, including ERISA cases and Church Plan cases specifically.  Accordingly, this class action satisfies all the requirements of Rule 23(a).

### 2.      The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)

#### a.      Individual Actions Would Create Inconsistent Adjudications or be Dispositive of the Interests of Absent Members

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members.  Fed. R. Civ. P. 23(b)(1)(A) & (B).  Here, the risk of inconsistent adjudications and incompatible standards is obvious: in the absence of

30

certification, two participants could bring identical actions and achieve different results, with one court holding that the Plans are ERISA-regulated and the other holding that they are not.  Courts have certified classes under Rule 23(b)(1) in ERISA cases for those very reasons.  *See Boyd*, 299 F.R.D. at 459 (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009)) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"); *DiFelice v. U.S. Airways*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ( "Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1) . . . . [G]iven the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a(b)(1) class"). As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

### b.   Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole is Appropriate

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis and seek declaratory relief that the Plan is not a Church Plan as well as injunctive relief requiring that the Plan comply with ERISA.  The available remedies include monetary relief and remedial equitable relief to the Plan as a whole.  ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3).

Remedies under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), are by definition plan-wide, a classic example of equitable relief.  *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, at 140-41 (1985).  While the Settlement includes monetary consideration to the Plans, that consideration is incidental to and flows directly from Plaintiffs' prayer for injunctive and declaratory relief.

31

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (certifying Fed. R. Civ. P. 23(b)(2) class where ERISA plaintiffs sought declaratory relief); *see also In re Mut. Funds Inv. Litig.*, MDL No. 1586, 2010 WL 2307568, at *4 (D. Md. May 19, 2010) (same); *In re Glob. Crossing*, 225 F.R.D. at 453 (same).  Accordingly, Plaintiffs' claims are also properly certified under Rule 23(b)(2).

   **3.**  **The Requirements of Rule 23(g) Are Met**

   Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of Class Counsel.  Class Counsel have detailed the claims brought in this action, and the time and effort already expended in connection with this litigation.  *See* Section II, *supra*; *see also* Joint Decl. ¶ 19-33; 43-47.  Moreover, Class Counsel are among the leading ERISA plaintiffs' firms, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit.  Joint Decl. ¶ 48.  Class Counsel thus satisfy the requirements of Rule 23(g).

## IV.  CONCLUSION

   For the reasons discussed herein, Named Plaintiffs respectfully submit that the Settlement should be granted final approval because it is a fair and reasonable result when viewed against the governing standard.  Moreover, the Settlement Class meets all the requirements of Rule 23 and should be finally certified.

Dated: April 17, 2017     Respectfully submitted,

           COHEN MILSTEIN SELLERS & TOLL PLLC


           /s/ Michelle C. Yau
           Michelle C. Yau (admitted *pro hac vice*)
           Karen L. Handorf (admitted *pro hac vice*)
           Mary J. Bortscheller (admitted *pro hac vice*)
           1100 New York Avenue, N.W.
           Suite 500
           Washington, D.C. 20005

32

Tel: (202) 408-4600
Fax: (202) 408-4699
Email: myau@cohenmilstein.com
khandorf@cohenmilstein.com
mbortscheller@cohenmilstein.com

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Havila Unrein
Matthew Gerend
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
hunrein@kellerrohrback.com
mgerend@kellerrohrback.com

KELLER ROHRBACK L.L.P.
Ron Kilgard
Laurie B. Ashton
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email: rkilgard@kellerrohrback.com
lashton@kellerrohrback.com

***Counsel for Plaintiffs***

33

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 17, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Michelle C. Yau         
Michelle C. Yau
