IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

ANITA LANN, et al.,

                               *

             Plaintiffs,         *

                               *                Case No. 14-CV-2237 (PJM)

       v.                           *

TRINITY HEALTH
CORPORATION, et al.,         *

            Defendants.       *

**JOINT DECLARATION OF MICHELLE C. YAU AND LYNN LINCOLN SARKO
IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGREEMENT; AND (2) PETITION OF CLASS COUNSEL FOR
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
<u>AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS</u>**

Michelle C. Yau and Lynn Lincoln Sarko respectfully submit this Joint Declaration in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement; and (2) Petition of Class Counsel for Award of Attorneys' Fees and Reimbursement of Expenses and for Incentive Awards to Named Plaintiffs. This Settlement,[1] if approved by the Court, will resolve in its entirety this Consolidated Class Action of *Lann et al. v. Trinity Health Corp.* ("*Trinity*") and the Action consolidated hereinto of *Chavies et al. v. Catholic Health East*, No. 8:16-cv-01417 (D.Md. filed Nov. 7, 2014) ("*CHE*") (together, also referred to as "Present Actions").

**Pursuant to 28 U.S.C. § 1746, we declare as follows:**

1.      Michelle C. Yau is a Partner at Cohen Milstein Sellers & Toll, PLLC, one of the two firms preliminarily approved as Class Counsel for Anita Lann, Jean Atcherson, Albert R. Chavies, and Thomas Holland ("Named Plaintiffs"), by the Court, Dkt. No 101.  Ms. Yau is also one of the attorneys personally involved in the litigation of the Present Actions, and is responsible for its prosecution.  Ms. Yau has personal knowledge of the facts set forth below and, if called as a witness, could and would testify competently thereto.

2.      Lynn Lincoln Sarko is the Managing Partner of Keller Rohrback L.L.P., also one of the two firms preliminarily approved as Class Counsel, and he is also one of the attorneys personally involved in this Present Actions, and is responsible for its prosecution.  Mr. Sarko has

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the same meaning ascribed to them in the Class Action Settlement Agreement, attached as Exhibit 1 ("Ex. 1"), and the First Addendum to the Settlement Agreement, attached as Exhibit 2 ("Ex. 2) to Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class ("Final Approval Motion"), filed contemporaneously herewith.

1

personal knowledge of the facts set forth below and, if called as a witness, could and would testify competently thereto.

3.      Class Counsel have been solely responsible for the prosecution of the Present Actions, and for negotiation of the Settlement Agreement.

4.      The Court preliminarily approved the Settlement Agreement and Notice Procedures on February 3, 2017 ("Preliminary Approval Order"), Dkt. 101. The Settlement Agreement affects the Settlement Class, which consists of participants and beneficiaries of the defined benefit pension plans sponsored by Trinity Health Corporation and Catholic Health East listed on Schedule A to the Settlement Agreement (collectively the "Plans").[2] *See also* Ex. 1 at § 1.19 (defining Settlement Class).

5.      The Settlement was reached only after vigorous arm's-length negotiations by experienced counsel with the assistance of a third-party mediator who has significant experience mediating ERISA and Church Plan cases.

6.      The Settlement provides total monetary relief of $76,650,400 and non-monetary relief to three separate, non-overlapping groups of Class members.

7.      The $76,650,400 in monetary relief consists of (i) contributions to the Plans totaling $75 million over three years to benefit "Group A" class members, (ii) cash payments of $1,600 to each of the 219 former participants ("Group B" class members) who elected and received a lump sum distribution during the 2014 lump sum window period (totaling $350,400), and (iii) cash payments of $176.36 to each of the 7,371 former participants ("Group C" class members) who terminated with insufficient years of service to vest under the current Plans'

---

[2] *See* Schedule A to the Settlement Agreement, Ex. 1 to the Final Approval Motion.

terms, but who would have been entitled to vested benefits under ERISA (totaling $1.3 million). Ex. 1 at §§ 8.1.2 and 8.1.4; Ex. 2 at § 8.1.3.

8.      Trinity also guarantees that the Plans will have sufficient funds to pay the accrued benefits payable to participants under the terms of the Plans for fifteen years commencing on the Effective Date of Settlement.  Ex. 1 at §§ 9.2.  The Settlement also includes significant provisions that will enhance the retirement security of the members of the Settlement Class. These protections are comparable to some of ERISA's key provisions and will enable the Plans' participants and beneficiaries to receive important notices and disclosures concerning the Plans and their benefits.  Ex. 1 at §§ 9.3-9.8.

9.      Class Counsel negotiated this Settlement under challenging circumstances between August and December 2015.  At that time, district courts were evenly divided on the key threshold question presented in the Actions here: Must a church plan be established by a church?[3] No appellate court had squarely addressed the issue, though Defendants contended that two older cases, including one in the Fourth Circuit, supported their argument that a non-church, specifically a church related hospital, could establish its own church plan.[4] However, this key threshold issue was pending in three Circuits: the Third, the Seventh, and the Ninth Circuit. The cases in the Third and Seventh Circuits had already been argued and a decision was expected at any time. These cases were settled in the face of that uncertainty, which persists as these three appellate decisions are now under review by the Supreme Court.

---

[3] *Compare Overall v. Ascension Health,* No. 13-11396 (E.D. Mich.) (granting defendants' motion to dismiss), *Lann v. Trinity* (granting defendants' partial motion to dismiss) *and Chavies, v. Catholic Health East*, No. 16-1417  (ordering jurisdictional discovery on whether CHE was a church) *with Rollins v. Dignity Health*, No. 13-1450 (N.D. Cal.), *Stapleton v. Advocate Health Care Network & Subsidiaries,* No. 14-1873 (N.D. Ill.), and *Kaplan v. Saint Peter's Healthcare Sys*., No. 13-2941 (D.N.J.) (denying motions to dismiss).

[4] *Lown v. Continental Cas. Co.,* 238 F.3d 543 (4th Cir. 2001), *Chronister v. Baptist Health.,* 442 F.3d 648 (8th Cir. 2006).

10.     Class Counsel were ideally situated to evaluate that uncertainty, because they also represent the plaintiffs in the three cases on appeal.  Class Counsel's goal, of course, was to achieve a settlement that provided significant relief to the Class *and* protected the Class from the risk of adverse decisions in the appellate courts.

11.     In light of this uncertainty, Class Counsel incorporated into the Settlement – in the nature of "carve outs" from the release – specific protections should any one of four potential events[5] occur which would enhance the strength of Plaintiffs' claims, as detailed in Schedule D to the Settlement Agreement.  *See* Ex. 2 at Schedule D. The occurrence of any one of these carve outs would allow Class Members to pursue any prospective claims for relief. At the same time, the Class will receive all of the benefits of the Settlement unless one of two of the contingencies occur (a ruling by the Supreme Court or IRS changing the law in Plaintiffs' favor). The other two contingencies – the Roman Catholic Church disassociating from Trinity Health, or an amendment of Congress to ERISA – would not impact or reduce the benefits provided to the Settlement Class.

12.     Defendants have agreed to pay up to $7,885,025 for Class Counsel's attorneys' fees and expenses, as well as potential class representative Incentive Awards to the Named Plaintiffs and Plaintiff Mary Beth Henrick, subject to Court approval.  These amounts are separate from the $76,650,400 Class Settlement Amount and will not reduce that recovery or otherwise abridge non-monetary relief. After resolving the key Settlement provisions that provide relief to the Settlement Class, the neutral third-party mediator came up with a mediator's

---

[5] These carve outs could be triggered by one of four possible events: (1) a decision by the United States Supreme Court holding either that (i) Church Plans must be established by a church or a convention or association of churches or (ii) that the Church Plan exemption is unconstitutional; (2) the Internal Revenue Service ("IRS") issues a written ruling that the Plans do not qualify as Church Plans; (3) ERISA is amended to eliminate the Church Plan exception; or (4) the Roman Catholic Church dissociates itself from Trinity Health Corporation.

4

proposal detailing Defendants' payment of Class Counsel's fees, expenses and Plaintiffs' Incentive Awards, to which the Parties ultimately agreed.

13.     Class Counsel reached this Settlement after conducting extensive legal and factual research to develop the legal theories and factual bases for the Trinity and CHE Complaints, fully briefing two motions to dismiss in Trinity and one in CHE, arguing two of these motions, taking broad discovery, and preparing summary judgment motions. The parties engaged in arm's-length negotiations with third-party JAMS mediator, Robert Meyer, Esq., and through this mediation arrived at this Settlement. Named Plaintiffs and Class Counsel are pleased to present this Settlement to the Court for its consideration, and believe strongly that it should be approved.

## I.     PROCEDURAL & FACTUAL BACKGROUND

14.     Class Counsel committed considerable time and resources to develop and prosecute this matter without any guarantee of payment.  As detailed below, these cases were hard fought and involved extensive investigation, consultation with experts, review of documents, and legal research and briefing, all of which were necessary to achieve a positive result for the Class.

### A.     Initial Investigation into the ERISA Church Plan Exemption.

15.     These cases are a part of a number of cases pending around the country that challenge whether hospital systems like Trinity and CHE are entitled to claim that their pension plans are exempt from ERISA as "Church Plans," defined in 29 U.S.C. § 1002(33).

16.     Class Counsel discovered and developed this area of the law with the assistance of the main public interest organization concerned with pension rights, the Pension Rights Center ("PRC"). Through the PRC, Class Counsel learned that thousands of hospital employees were

5

being denied the rights and protections of ERISA, including funding, vesting, and disclosure rules, because hospitals claimed their pension plans were exempt Church Plans.

17.     Class Counsel devoted many hours to researching the definition of a "Church Plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the U.S. Code, the legislative history of the statute, and agency and court interpretations of the statute. Class Counsel concluded, based upon their investigation, that this was a narrow exemption intended for ***churches***, and that hospitals like Trinity and CHE were improperly claiming the exemption.

18.     Class Counsel also understood, based upon their research, that filing Church Plan cases such as these would challenge private letter rulings from the IRS and informal Advisory Opinions of the U.S. Department of Labor.  They also knew that the defense would maintain that the small amount of Church Plan case law then in existence would favor a defense reading of the Church Plan exemption.  And they knew that once even a few of the cases were filed, the major hospitals claiming religious ties, which employ hundreds of thousands of people, would be arrayed against them.

19.     Nevertheless, Class Counsel decided to take on this high-stakes, high-risk litigation. Class Counsel were the only lawyers to do so at that time.  Class Counsel are now defending Church Plan litigation victories[6] before the Supreme Court; oral argument was heard March 27, 2017 in three consolidated Church Plan cases. *See Dignity Health v. Rollins, 137 S. Ct. 547 (Dec. 2, 2016); Saint Peter's Healthcare Sys. v. Kaplan, 137 S. Ct. 546 (Dec. 2, 2016);*

---

[6] *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

*Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (Dec. 2, 2016).  The Settlement achieved here could not have been achieved but for Class Counsel's total immersion in the issue, which is described in detail next.

      **B.**    **Class Counsel's Vigorous Prosecution of *CHE* and *Trinity*, and Settlement Negotiations.**

           **1.**    **The Complaint, Motions to Dismiss, and Discovery.**

      20.    Before filing the Complaints in these cases, Class Counsel developed the legal theories outlined above, consulted with constitutional experts and analyzed the facts relating to CHE and Trinity, and the Plans at issue.  Class Counsel examined certain documents related to the Plans, public disclosures by CHE and Trinity, financial statements, and information supplied by the Plaintiffs themselves. Ultimately, this research resulted in a carefully drafted 44-page Complaint filed in the Eastern District of Pennsylvania in 2013 against CHE asserting 8 counts against 3 Defendants (not including John Doe defendants), and a 70-page Complaint filed in this District in 2014 against Trinity asserting 9 counts against 5 Defendants (also not including John Doe defendants).

      21.    After the CHE Complaint was filed, Defendants filed a motion to dismiss.  CHE Dkt. # 33.  That motion focused on nuanced factual and legal issues, such as whether CHE is "controlled by" or "associated with" a church under ERISA, and constitutional issues.  It also raised subject matter jurisdiction arguments stemming from Defendants' assertion that, as claimed Church Plans, Defendants' Plans were not covered by ERISA.  *See* Dkt. # 33, 44.  The CHE Defendants submitted over 710 pages of documents in support of their motion to dismiss, all of which were reviewed by Class Counsel. Class Counsel invested many hours responding to that motion and Defendants' arguments, including motion practice seeking to strike the exhibits

7

attached to Defendants' motion, a sur-reply brief in opposition to the motion to dismiss and oral argument before the court in the Eastern District of Pennsylvania.  *See CHE* Dkt. # 36, 38, 41, 53-54, 56, 61.  Following argument, the Court denied the motion to dismiss without prejudice and ordered the Parties to engage in jurisdictional discovery on the issue of whether CHE is a "church" within the meaning of ERISA. *CHE* Dkt. # 67.

22.     For several months thereafter, the Parties engaged in fact and expert discovery and prepared for summary judgment motions.  Discovery entailed Plaintiffs propounding 43 requests for documents, 2 sets of detailed, multi-part interrogatories and 82 requests for admission, which resulted in Defendants' production of over 10,000 pages of documents, all reviewed by Class Counsel in preparation for summary judgment motions.  Plaintiffs also responded to 16 requests for production of documents from the CHE Defendants and produced over 2,000 pages. In addition, Class Counsel deposed eleven CHE fact witnesses (including five Rule 30(b)(6)) witnesses, and two of Defendants' experts. In turn, Defendants deposed Named Plaintiffs Albert Chavies and Thomas Holland, and Plaintiff Mary Beth Henrick, and two of Plaintiffs' experts.   At the time the Parties reached Settlement, they had largely completed briefing on summary judgment regarding whether CHE is a church and had prepared to file *Daubert* motions. *CHE* Dkt # 78.

23.     In the Trinity case, Defendants – at the direction of the Court – filed a partial motion to dismiss on the threshold statutory construction issue, arguing that a Church Plan could be established by a non-church entity and still qualify as an ERISA-exempt Church Plan. *See* Dkt. ## 40, 46.  The Trinity Defendants submitted 169 pages in support of their partial motion to dismiss. Class Counsel responded to that motion and the arguments raised by Defendants.  *See* Dkt. # 43. As part of their response on behalf of the Trinity Plaintiffs, Class Counsel invested

8

many hours responding to the motion and Defendants' arguments, including a review and analysis of Plan-related documentation and other supporting documents, and prepared for oral argument.  On February 23, 2015, following oral argument on the motion, the Court granted the Trinity Defendants' partial motion to dismiss. *See* Dkt. # 54.

24.     The Trinity Defendants then filed a second partial motion to dismiss on April 10, 2015, arguing that Trinity and the Trinity Benefits Committee are associated with and controlled by the Roman Catholic Church as a matter of law and that Plaintiffs' challenge to the constitutionality of the Church Plan exemption fails as a matter of law. *See* Dkt. # 60, 65. Class Counsel responded in opposition on June 12, 2015.  *See* Dkt. # 63. The scheduled oral argument on this motion, which was fully briefed, was delayed by the Court pursuant to the Parties' joint request to allow the Parties to engage in and complete Settlement negotiations.  *See* Dkt. # 61, 64, 66, 67.

2.     **Settlement Negotiations.**

25.     The Parties prepared for, and participated in, their first formal mediation on August 18, 2015, overseen by a third-party JAMS mediator, Robert Meyer, Esq., who has substantial experience mediating cases concerning ERISA and retirement plan issues, including cases involving the Church Plan exemption in ERISA.  Ex. 1 at § 2.11.  Trinity (which now includes CHE) participated in settlement negotiations with Class Counsel for the Plaintiffs in both lawsuits.  During the negotiations, the Parties agreed to resolve the CHE and Trinity matters simultaneously.

26.     These settlement negotiations included two all day in-person mediation sessions in Los Angeles, California (August 18, 2015; October 12, 2015), and a third in Detroit, Michigan (Sept. 16, 2015).

9

27.     The settlement negotiations, lasting from August through December of 2015, also involved numerous calls and meetings between the Parties.  Counsel for the Class and Defense provided the mediator with their respective mediation statements and also exchanged multiple proposals and counter-proposals with each other concerning potential settlement terms. The mediator was in constant contact with the Parties both orally and in writing.

28.     In the weeks following the last in-person mediation session, the Parties engaged in continued negotiations regarding the key terms of the agreement, and memorialized those terms on December 7, 2015 in a Term Sheet.  On December 9, 2015, the Parties filed a status report in both cases informing the respective district courts they had signed a Term Sheet containing the preliminary terms resolving this matter.  *Trinity* Dkt. # 68; *CHE* Dkt. # 81.

29.     The posture of both the CHE and Trinity cases was uncertain at the time the Parties negotiated the Settlement, and remained uncertain when agreement was reached and the Term Sheet was signed.  The CHE district court had delayed ruling on the motion to dismiss until after discovery was completed on the question of whether CHE is a church, implying that, even if Plaintiffs were right on the threshold statutory question and only a church may establish a Church Plan, CHE may still be entitled to the Church Plan exemption because CHE claimed it was a "church."  In *Trinity*, this Court ruled that it was bound by the Fourth Circuit's opinion in *Lown v. Continental Cas. Co.*, 238 F.3d 543 (4th Cir. 2001), which suggested that a non-church could establish a Church Plan, and thus ruled against Plaintiffs. Dkt. # 40.

30.     During the course of litigation and settlement negotiations, Class Counsel investigated the facts, circumstances, and legal issues associated with the allegations and defenses in the action.  The investigation included, *inter alia*: (a) inspecting, reviewing, and analyzing documents produced by or otherwise relating to the Defendants, the Plans, and the

10

administration and funding of the Plans, including documents that Defendants produced for settlement purposes; (b) researching and learning facts and relevant law related to the CHE and Trinity cases, as well as to the broader Church Plan litigation ongoing in federal courts across the country; (c) researching and analyzing governmental and other publicly-available sources concerning Defendants, the Plans, and the industry; and (d) consulting with their experts in the fields of Roman Catholic Canon law, hospital-based pastoral care, and actuarial science.  Ex. 1 § 2.11.

31.     Class Counsel also engaged in extensive discovery in CHE, and briefed three and argued two dispositive motions across the two cases. As a result, Class Counsel were well informed about Defendants and the strengths and weaknesses of the cases.

32.     After executing the Term Sheet and before drafting and executing the comprehensive Settlement Agreement, Class Counsel undertook confirmatory discovery as to the facts and circumstances related to (i) the individuals who are part of Group B who will receive a Lump Sum Payment and (ii) the individuals who are part of Group C who will receive a Vesting Payment pursuant to the Settlement. This confirmatory discovery lasted approximately four months and consisted of documentary information provided by Defendants and communications with the individuals most knowledgeable about the determination of appropriate individuals included in Groups B and C, particularly Trinity's benefits counsel.  Settlement Agreement § 2.12.  This discovery verified the process by which Defendants ensured that the specific Class members included in Groups B and C were accurate. *Id.*

33.     The Settlement Agreement was executed on April 26, 2016. The Parties agreed to jointly move to transfer the CHE case to this Court in order to consolidate the CHE case with the

11

Trinity case for purposes of settlement. *CHE* Dkt. # 98; *Trinity* Dkt. # 73.  On May 24, 2016, this

Court granted the Parties' motion to consolidate.  Dkt. # 74.

34.     Only *after* the Parties reached agreement on the key terms for the Settlement

Class did they turn to negotiations concerning attorneys' fees.  Those negotiations were overseen

by the mediator, who devised a mediator's proposal on attorneys' fees, which was ultimately

accepted by the Parties (*see* Settlement § 8.1.5), subject to the Court's approval.  *Id*.

35.     Class Counsel drafted and filed Plaintiffs' Unopposed Motion for Preliminary

Approval of Settlement Agreement ("Preliminary Approval Motion") on August 1, 2016, Dkt. #

75.  As part of this process, Class Counsel developed the Class Notice materials to be sent to

current and former Plan participants.

36.     The Court held a Preliminary Settlement Approval Hearing on October 26, 2016,

and thereafter directed the Parties to jointly file amended versions of the Settlement Agreement

and Class Notice in addition to a joint memorandum providing (1) clarification on how each

contingent carve out included in the Settlement Agreement's release affects class members; and

(2) the effect of these carve outs on attorneys' fees.  Dkt. # 83, 84.   The Parties complied with

the Court's Order and on December 19, 2016, filed their Joint Memorandum, explaining the

contingencies, and that the Class will receive all of the benefits of the Settlement unless one of

two of the contingencies occur (a ruling by the Supreme Court or IRS changing the law in

Plaintiffs' favor). The other two contingencies – the Roman Catholic Church disassociating from

Trinity Health, or an amendment of Congress to ERISA – would not impact or reduce the

benefits provided to the Settlement Class.  However, if any one of the four carve outs is triggered

(signifying a positive development in the law for Plaintiffs and the Class), this will allow

participants to seek full prospective ERISA compliance for the Plans.  Dkt # 85, 10-13.

12

37.     As explained in the Joint Memorandum Regarding Contingent Carve Outs in the Settlement Agreement Release filed December 19, 2016, Class Counsel's attorneys' fees will not be affected by the Supreme Court and IRS contingencies because fees will not be paid until after the first installment of $25 million and the payments to class members in Groups B and C are made.   Dkt. # 85, 14-17; *see also* Dtk. 90 at Revised Draft First Addendum to the Settlement Agreement. Moreover, as noted above, occurrence of the other two contingencies – related to action by the Roman Catholic Church, or Congress – would not at all impact or reduce the consideration provided to the Settlement Class.

38.     Following review of the Parties' Joint Memorandum, the Court issued a January 6, 2017, Memorandum Order explaining its goal of ensuring clarity and transparency of the Settlement's terms and carve outs in the Settlement Agreement and Class Notice.  Dkt. # 86.  In connection with the January 6 Order, the Court also created a chart depicting the four contingencies and the impact of each, if any, on the members of Groups A, B, and C. The Court also conveyed its concerns about the amount to be paid to Group B members (at that time, $550 to each, as indicated in the original Settlement Agreement), and sought further clarification of how the payment to Group C members was determined.  *Id.*  In response, the Parties filed a joint letter confirming the accuracy of the Court's chart – which is now incorporated into the Settlement Agreement as Schedule D - which showed how the contingencies would affect class members.  Dkt. # 87, *see also* Dkt # 90-4 (Schedule D).  The Parties also requested an in-person conference with the Court to address the Court's concerns regarding the payments to Groups B and C.

39.     The Court held a status conference on January 23, 2017, at which the Parties informed the Court that, given its concerns about the amount provided to each member of Group

13

B, the Parties undertook further negotiations and agreed to increase payments to Group B

members from $550 to $1,600.  The Parties also explained in further detail how the Parties

reached agreement as to the settlement amount to Group C members, and described the proposed

revisions to the Settlement Agreement and Class Notice reflecting the renegotiated Group B

payment and addressing the Court's concerns regarding clarity.  *Id.*

40.     After this status conference, with permission of the Court, the Parties submitted

several additional documents in support of the Motion for Preliminary Approval of the Class

Action Settlement Agreement (Dkt. # 75): (1) a revised First Addendum to the Settlement

Agreement; (2) schedules listing the members of Groups B and C; (3) a revised Class Notice; (4)

revised letters to Group B and C members; and (5) a revised Proposed Order.  Dkt. # 90.

### 3.     **Preliminary Approval.**

41.     The Court preliminarily approved the Settlement on February 3, 2017, Dkt. # 101.

42.     Pursuant to the Preliminary Approval Order, Class Notice was mailed on March

17, 2017 to 253,742 current and former Plan participants. *See* Affidavit of Abigail Schwartz for

Rust Consulting, Inc. ("Rust Aff."), filed contemporaneously herewith, at ¶ 11.

43.     In accordance with the Preliminary Approval Order, the Settlement Class has

been provided with ample and sufficient notice of this Settlement, including an appropriate

opportunity to voice objections.  The Class Notice detailed information about the Settlement,

including: (1) a comprehensive summary of the Settlement's terms; (2) notice of Class Counsel's

intent to request attorneys' fees, reimbursement of expenses, and class representative Incentive

Awards for the services performed by Named Plaintiffs and Mary Beth Henrick; and (3) detailed

information about the Released Claims and how the carve outs void these releases.  In addition,

the Class Notice provided information about the Fairness Hearing date, rights of members of the

Settlement Class to object (and deadlines and procedures for objecting), and the procedure to

14

receive additional information.  The mailed Class Notice provided members of the Settlement Class with contact information for Class Counsel, information on the toll-free phone number for inquiries, and a website for further information: www.cohenmilstein.com/update/trinity-che-settlement).  Thus, the Class Notice fully informed Settlement Class members of the lawsuit and proposed Settlement, and enabled them to make an informed decision about their rights.

44.     By the deadline set forth in the Preliminary Approval Order, or March 20, 2017, Class Counsel also posted the Settlement Agreement, the Class Notice, the preliminary approval motion and order, and other case documents on a website identified in the Class Notice: www.cohenmilstein.com/update/trinity-che-settlement.

45.     As of April 17, 2017, Class Counsel had received and responded to 340 e-mail, letter and phone inquiries from members of the Settlement Class.  Furthermore, the website identified in the Class Notice has recorded 2,948 page views.

46.     To date, Class Counsel have not received any substantive objections to the proposed Settlement.  Class Counsel have received two immaterial objections to date; both reflect a measure of confusion about the class action process and the Fairness Hearing. *See* March 27, 2017 Letter from Marilyn Bowman (asking to be excused from attending the Fairness Hearing) (attached hereto as Exhibit I); March 22, 2017 Letter from Richard Siebel (requesting removal from the action and stating "I do not know the facts and I have no legal support for this case.") (attached hereto as Exhibit J). Class Counsel have reached out to these class members to explain that they do not need to attend the Fairness Hearing, and that the Settlement Class is a non-opt-out class. If there are any substantive objections, Class Counsel will address them in their reply in support of Final Approval.

2237940.1

47.     As this case moves ahead through final approval proceedings, Class Counsel expects that they will continue to devote at least another one hundred hours to this matter. Indeed, Class Counsel still need to: (1) prepare for and attend the final approval hearing; (2) research, draft, and prepare any additional submissions requested by the Court; (3) assist Settlement Class members with their inquiries; (4) respond to objections, if any; and (5) handle any resulting appeal.

## II.     CLASS COUNSEL'S EXPERIENCE

48.     The two law firms representing the Plaintiffs and proposed Settlement Class in this case—Cohen Milstein and Keller Rohrback—are well-versed in class action litigation, are among the leading litigators of ERISA actions on behalf of plaintiffs, and are only law firms in the country that—for over six years—have been involved in Church Plan litigation.  As a result of their experience litigating the recent wave of Church Plan cases, they have a deep knowledge of the applicable law.  These firms *alone* have pioneered all the recent positive developments in Church Plan law, including three appellate victories on the key threshold issue in all Church Plan cases—that only a church can establish a Church Plan. Further, Class Counsel are now actively involved in the consolidated Church Plan ERISA cases pending before the Supreme Court, (including arguing before the Court March 27, 2017), providing them a more intimate knowledge of the applicable law.  For these reasons, Judge Bennett of this Court appointed Class Counsel Cohen Milstein as lead counsel over competing counsel in another ERISA Church Plan case against Bon Secours Health System, alleging many of the same ERISA violations as those found in the Present Actions. *See Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016) (finding that Class Counsel "have the most experience

16

litigating this complicated issue of statutory and constitutional interpretation," citing counsel's success in the Circuit courts and the pending cases before the U.S. Supreme Court).[7]

49.     Keller Rohrback and Cohen Milstein currently act, or have acted, as co-counsel in roughly 20 cases pending across the country involving claims by hospital systems that their plans qualify as "Church Plans." These cases are:

- *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich.);

- *Rollins v. Dignity Health*, No. 13-1450 (N.D. Cal.);

- *Kaplan v. Saint Peter's Healthcare Sys.,* No. 13-2941 (D.N.J.);

- *Medina v. Catholic Health Initiatives*, No. 13-1249 (D. Colo.);

- *Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 14-1873 (N.D. Ill.);

- *Owens v. St. Anthony Med. Ctr., Inc.,* No. 14-4068 (N.D. Ill.);

- *Griffith v. Providence Health & Servs.,* No. 14-1720 (W.D. Wash.);

- *Carver v. Presence Health Network*, No. 15-2905 (N.D. Ill.);

- *Feather v. SSM Health*, No. 16-1669 (E.D. Mo.);

- *Hodges v. Bon Secours Health Sys., Inc.,* No. 16-1079 (D. Md.);

- *Jewett v. Franciscan All., Inc.,* No. 16-4589 (N.D. Ill.);

- *Smith v. OSF HealthCare Sys*., No. 16-467 (S.D. Ill.);

- *In re Mercy Health ERISA Litig.*, No. 16-441 (S.D. Ohio);

- *Sanzone v. Mercy Health*, No. 16-923 (E.D. Mo.);

- *Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, No. 16-2740 (D.N.J.);

- *Butler v. Holy Cross Hosp.*, No. 16-5907 (N.D. Ill.);

---

[7] Class Counsel Cohen Milstein and Keller Rohrback both represent lead plaintiffs in *Hodges*, but Judge Bennett agreed with defendants' objection to the appointment of more than one qualified law firm as co-lead counsel, and, accordingly, appointed Cohen Milstein as sole lead counsel for the Class.

17

- *In re: Wheaton Franciscan ERISA Litig.*, No. 16-6782 (N.D. Ill.)

- *Holcomb v. Hosp. Sisters Health Sys.,* No. 16-3282 (C.D. Ill.).

50.     As noted previously, three of these Church Plan cases are currently pending in the Supreme Court, and Cohen Milstein and Keller Rohrback serve as co-counsel for plaintiffs and the putative class in all three of those cases.  *See Dignity Health*, 137 S. Ct. 547; *Saint Peter's*, 137 S. Ct. 546; *Advocate*, 137 S. Ct. 546 (consolidated with *Saint Peter's*).

51.     In addition to their specific experience litigating Church Plan cases, Class Counsel also have many years of experience litigating ERISA and non-ERISA class actions, and have negotiated numerous class settlements that have been approved by courts throughout the country.

52.     Cohen Milstein has extensive class action experience in federal courts throughout the country.  For example, Cohen Milstein has been Lead or Co-Lead Counsel in the following cases: *Redington v. Goodyear Tire & Rubber Co.*, No. 07-1999 (N.D. Ohio); *Chesemore v. All. Holdings, Inc.*, No. 09-413 (W.D. Wis.); *In re Merrill Lynch & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 07-10268 (S.D.N.Y.); *Hans v. Tharaldson*, No. 05-115 (D.N.D.); *Beam v. HSBC Bank USA*, No. 02-682 (W.D.N.Y.); *Hargrave v. TXU Corp.*, No. 02-2573 (N.D. Tex.); *Dynegy, Inc. ERISA Litig.*, No. 02-3076 (S.D. Tex.); *Wagener v. SBC Pension Benefit Plan – Nonbargained Program*, No. 03-769 (D.D.C.); *Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*, No. 08-4058 (N.D. Cal.); *Mehling v. N.Y. Life Ins. Co.*, No. 99-5417 (E.D. Pa.); *Zhu v. Fujitsu Grp. 401(k) Plan*, No. 03-1148 (N.D. Cal.); *Simpson v. Fireman's Fund Ins. Co.*, No. 05-225 (N.D. Cal.); *Tuten v. United Airlines, Inc.*, No. 12-1561 (D. Colo.); *Slipchenko v. Brunel Energy, Inc.*, No. 11-1465 (S.D. Tex.).  Cohen Milstein has also been appointed to leadership roles in *Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, 2016 WL

18

4447047, at *2 (D. Md. Aug. 24, 2016); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 05-2369 (D.N.J.) (member of the Merck Lead Counsel Committee) and *In re Marsh ERISA Litig.*, No. 04-8157 (S.D.N.Y.) (member of the Executive Committee).

53.     Keller Rohrback has been named Lead or Co-Lead Counsel for plaintiffs in numerous breach of fiduciary duty class actions across the nation: *In re CMS Energy ERISA Litig.*, No. 02-72834 (E.D. Mich.); *In re The Goodyear Tire & Rubber Co. ERISA Litig.*, No. 03-2182 (N.D. Ohio); *In re Visteon ERISA Litig.*, No. 05-71205 (E.D. Mich.); *In re Ford Motor Co. ERISA Litig.*, No. 06-11718 (E.D. Mich.); *In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, MDL No. 1725 (E.D. Mich.); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816 (S.D.N.Y.); *In re Enron ERISA Litig.*, MDL No. 1446 (S.D. Tex.).  Keller Rohrback has also been appointed to leadership roles in these church plan cases: *Sanzone v. Mercy Health*, No. 16-923 (E.D. Mo.); *Bowen v. Wheaton Franciscan Services, Inc.*, No. 16-6782 (N.D. Ill.); *Holcomb v. Hospital Sisters Health System*, No. 16-3282 (C.D. Ill.).

54.     A true and correct copy of the firm resume detailing the experience of Cohen Milstein in ERISA cases and Church Plan cases is attached hereto as Exhibit A.

55.     A true and correct copy of the firm resume detailing the experience of Keller Rohrback in ERISA cases and Church Plan cases is attached hereto as Exhibit B.

56.     Having prosecuted numerous ERISA cases, Class Counsel possess extensive litigation experience.  They fully support this Settlement and have concluded, based upon their experience and the facts of this case, that it is fair, reasonable, and adequate.

**III.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

57.     As noted above, pursuant to the Settlement Agreement, Defendants have agreed to pay up to $7,885,025 million for Class Counsel's attorneys' fees and expenses and potential class representative Incentive Awards to the Named Plaintiffs, subject to Court approval.

58.     When measured against the readily-ascertainable value of the Settlement ($76,650,400), the requested attorneys' fees of $7,621,179.72 represent just 9.9% of the relief obtained.  More importantly, this percentage does not take into account the significant non-monetary relief provided by the Settlement, such as the benefit guarantee provided by Trinity, anti-cutback protections, claims procedures, required participant notices, etc.  *See* Ex. 1 § 9.2-9.8.  Thus, the requested amount is fair and reasonable, and far below fees typically awarded in Fourth Circuit courts.  *See Fangman v. Genuine Title, LLC,* No. 14-0081, 2017 WL 86010, at *3 (D. Md. Jan. 10, 2017); *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 462, 465 (D. Md. 2014).

59.     Moreover, Class Counsel seek only a modest 1.6 multiplier on their lodestar.  This multiplier is justified given the time and labor required to prosecute this Action; the novelty and difficulty of the questions involved; the requisite legal skill; the preclusion of other employment during the pendency of this case; the customary fees charged; the contingent nature of this case; the reasonableness of the hourly rates billed; the experience and ability of the attorneys involved; and the excellent results obtained for the Settlement Class.

60.     The requested attorneys' fee amount is fair and reasonable even if the Supreme Court or the IRS carve out is triggered.  If one of these carve outs is triggered before the first $25 million contribution is due (or anytime up until the second $25 million installment is due), the Settlement Agreement guarantees a total monetary consideration to the Class of $26,650,400 (consisting of the first $25 million installment payment and the payments to Groups B and C).  The requested attorneys' fee amount would thus represent 28.5% of the monetary relief obtained for the Class.

20

61.     If the Supreme Court or IRS carve out is triggered after the second $25 million installment is due but before the last $25 million installment is due, the total monetary consideration obtained for the class will be $51,650,400 (consisting of a total of $50 million in plan contributions plus the payments to Groups B and C).  The requested attorneys' fee amount would thus represent 14.7% of the monetary relief obtained for the Class.

62.     Further, if either carve out is triggered at any time, participants in the Plans could then take advantage of such positive development in the law by pursuing their ERISA claims for prospective relief.  Thus, the requested attorneys' fees award, if approved, is reasonable when viewed as a percentage of the total Settlement consideration under any potential scenario that could result from the triggering of a carve out.

A.     **The Time and Labor Class Counsel Devoted to this Case was Reasonable.**

63.     Class Counsel have expended a total of 7,527.75 attorney and professional hours to develop, investigate, and prosecute this Action over the course of the last several years.

64.     Class Counsel kept files contemporaneously documenting all time spent developing, investigating, and prosecuting the claims in the Present Actions.  These time and expense reports for our respective firms are summarized herein and attached as Exhibits C (Cohen Milstein fees); D (Keller Rohrback fees); G (Cohen Milstein expenses) and H (Keller Rohrback expenses) hereto.

65.     The 7,527.75 hours Class Counsel collectively expended on these cases were reasonably spent, especially given the high-stakes, high-risk nature of this litigation and the excellent results obtained.  At Class Counsel's hourly rates, which are comparable to those of other class action attorneys, this amounts to a lodestar of $4,753,801.50.  Plaintiffs' total requested award of $7,885,025 is inclusive of unreimbursed litigation costs totaling $213,845.28, plus the requested awards for Plaintiffs in the amount of $50,000 total.  After reimbursement of

21

expenses and awards for Plaintiffs, the requested attorneys' fees total $7,621,179.72 and amount to a modest 1.6 multiplier on the combined lodestar of $4,753,801.50.

66.     Work was allocated in the Present Actions to maximize efficiency.  Class Counsel carefully assigned work to minimize the fees in this case; thus, senior attorneys did not do the work that could be accomplished by more junior attorneys, and attorneys did not do the work that could be completed by paralegals.  Class Counsel assigned tasks depending on a number of considerations, with the goal of minimizing duplication of effort.  If Class Counsel had not been stringent in these efforts, the number of hours devoted to the case would have been much higher.

67.     The hours expended on this case are reasonable in light of the complexity of the work performed and the results obtained.  All of Class Counsel's efforts were conducted efficiently and with cost-savings in mind.  Because Class Counsel were working on a contingency fee basis, they had an incentive to do whatever they could to flatten the learning curve in these cases, and to likewise take significant precautions to avoid duplication of efforts.  Class Counsel also aimed to prevent unauthorized work.  Work was assigned to lawyers in areas in which they had experience, and where professionally feasible, work was assigned to associates and paralegals with lower billing rates, to provide quality work at the lowest cost.  Class Counsel's extensive efforts toward developing, prosecuting, and eventually settling this action are detailed in sections I(A) and (B) above.

68.     Presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay.  Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary.  Their counsel, Proskauer Rose LLP, is highly

2237940.1

experienced in defending complex ERISA class actions.  They presented a formidable opposition, which further required sufficient devotion of time and resources to this case.

69.     Class Counsel have served in leadership positions in the past, and the hours spent on this case are consistent with Class Counsel's experience in those cases.

70.     The schedule attached as Exhibit C is a summary of time spent by Cohen Milstein attorneys and other professional support staff in the CHE and Trinity cases respectively and the lodestar calculation based on the firm's current billing rates from the inception of the case through March 31, 2017.  For personnel who are no longer employed by the firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by Cohen Milstein.  The hourly rates charged by Cohen Milstein in this case are prevailing rates in the community, have been approved in many judicial settlement hearings, and are consistent with rates approved in this Circuit and others in many recent class action cases.

71.     The schedule attached hereto as Exhibit D is a summary of time spent by Keller Rohrback attorneys and other professional support staff in the CHE and Trinity cases respectively this litigation and the lodestar calculation based on the firm's current billing rates from the development and inception of this case through March 31, 2017.  For personnel who are no longer employed by the firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by Keller Rohrback.  The hourly rates charged by Keller Rohrback in this case are prevailing rates in the community, have been approved in many judicial settlement hearings, and are consistent with rates approved in this Circuit and others in many recent class action cases.

72.     If these hours had been billed on a "straight" hourly basis (*i.e.*, no contingency and no risk of non-payment), the lodestar (hours times current billing rates) for the professional

23

time incurred by Class Counsel would be $2,893,975.40 on the CHE Action and $1,859,826.10

on the Trinity Action. On a firm-by-firm basis, the lodestar calculations for each case are as

follows:

| *Chavies v. CHE* | Hours | Lodestar |
|---|---|---|
| **Cohen Milstein Sellers & Toll, PLLC** | | |
| Attorneys | 3,500.25 | $2,417,952.50 |
| Professionals | 650.00 | $169,615.00 |
| Totals | 4,150.25 | $2,587,567.50 |
| | | |
| **Keller Rohrback L.L.P.** | | |
| Attorneys | 367.90 | $276,112.50 |
| Professionals | 120.00 | $30,295.40 |
| Totals | 487.90 | $306,407.90 |
| | | |
| **TOTAL:** | **4,638.15** | **$2,893,975.40** |

| *Lann v. Trinity* | Hours | Lodestar |
|---|---|---|
| **Cohen Milstein Sellers & Toll, PLLC** | | |
| Attorneys | 1,945.75 | $1,263,400.00 |
| Professionals | 253.25 | $67,175.00 |
| Totals | 2,119 | $1,330,575.00 |
| | | |
| **Keller Rohrback L.L.P.** | | |
| Attorneys | 627.90 | $512,999.50 |
| Professionals | 62.70 | $16,251.60 |
| Totals | 690.60 | $529,251.10 |
| | | |
| **TOTAL:** | **2,809.60** | **$1,859,826.10** |

## B. Class Counsel's Hourly Rates Are Reasonable.

73. The lodestar figures provided in ¶ 73 above are based on the given firm's current

billing rates and contemporaneous time records regularly prepared and maintained by our

respective firms.  Expense items are billed separately and such charges are not duplicated in a

firm's billing rates.

24

74.     Cohen Milstein's rates range from $250 to $900 for 6,349.25 hours performed; Keller Rohrback's rates range from $210 to $940 for 1,178.50 hours performed. *See* Exhibits C, D.  The lower end represents rates charged by support staff such as paralegals, while the higher end represents rates charged by the senior partners.

75.     These rates are reasonable given the size of the Present Actions, which, as mentioned previously, involved nuanced factual and legal issues against the backdrop of a fast-developing and hotly disputed area of the law.

76.     The rates are justified when considering the host of risks present to Plaintiffs in this contingent litigation.  Plaintiffs recognize that the fundamental issues in this case—the scope and meaning of ERISA's Church Plan exemption—are currently pending before the Supreme Court, and it is impossible to predict the outcome of those proceedings.  Class Counsel believe that pursuant to ERISA only a church can establish a Church Plan, and therefore these Plans are not exempt because they were established by CHE and Trinity, which are hospital systems. However, Plaintiffs are aware that the Supreme Court could disagree with Plaintiffs on this threshold statutory argument.  Additionally, Plaintiffs recognize that regardless of the outcome of the proceedings in the Supreme Court, additional factual and legal issues could remain in this litigation, including how the Supreme Court's ruling will apply to the specific facts of this case; class certification; liability; and damages.

77.     Class Counsel's rates have been approved in other cases.  Most recently, Class Counsel submitted fee petitions in two other Church Plan cases in which they reported hourly rates at amounts comparable to those sought herein, and the courts approved the fee awards. *See Griffith v. Providence Health & Services,* Pls. Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, No. 14-01720 (W.D. Wash. Feb. 3, 2017) (seeking fees at

25

identical rates to the Present Actions), Dkt # 57; Order Finally Approving Class Settlement ¶ 10,

*Griffith v. Providence Health & Services*, No. 14-cv-1720 (W.D. Wash. Mar. 21, 2017), Dkt. #

69, attached hereto as Ex. E; *Overall v. Ascension Health,* Pl.'s Mot. for Awards of Att'ys' Fees,

Expenses & Incentive Fee, No. 13-11396 (E.D. Mich. Aug. 17, 2015), Dkt. # 97; Order and Final

Judgment ¶ 8, *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015), Dkt.

# 115 attached hereto as Ex. F).

78.    District courts granted final approval and awarded fees to Cohen Milstein based

on the firm's then-current rates in several ERISA cases.  *See, e.g.*, *Redington v. Goodyear Tire &*

*Rubber Co.*, No. 07-1999 (N.D. Ohio Sept. 22, 2008), Dkt. ## 109, 113 (awarding then-current

attorneys' rates between $575 and $625); *Chesemore v. All. Holdings, Inc.*, No. 09-413, 2014

WL 4415919 (W.D. Wis. Sept. 5, 2014) (awarding then-current attorneys' rates between $395

and $895); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014) (awarding then-

current attorneys' rates between $395 and $570); *In re Beacon Assocs. Litig.*, No. 09-777

(S.D.N.Y. May 29, 2013), Dkt. # 485 (awarding attorneys' rates between $295 and $895); *In re*

*Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-8093 (S.D.N.Y. May 27, 2015),

Dkt. ## 271, 287 (awarding attorneys' rates between $210 and $915); *N.J. Carpenters Health*

*Fund v. RALI Series 2006-Q01 Trust*, No. 08-8781 (S.D.N.Y. July 31, 2015), Dkt. ## 347, 353

(awarding attorneys' rates between $240 and $915); *Me. State Ret. Sys. v. Countrywide Fin.*

*Corp.*, No. 12-5125 (C.D. Cal. Dec. 5, 2013), Dkt. ## 182, 320 (awarding attorney's rates

between $330 to $835); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-2063 (D.

Colo. July 31, 2014), Dkt. ## 505, 527 (awarding attorneys' rates between $250 and $895).

79.    Similarly, district courts granted final approval and awarded fees to Keller

Rohrback based on the firm's then-current rates in several ERISA cases.  *See, e.g.*, *In re Ford*

26

*Motor Co. ERISA Litig.*, No. 06-11718 (E.D. Mich. Feb. 15, 2011), Dkt. ## 285, 291 (awarding then-current attorneys' rates between $331 and $740); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-1725 (E.D. Mich. May 12, 2010), Dkt. ## 472, 493 (awarding then-current attorneys' rates between $300 and $675); *In re CMS Energy ERISA Litig.*, No. 02-72834 (E.D. Mich. June 27, 2006), Dkt. ## 208, 226 (awarding then-current rates between $300 and $640); *In re State St. Bank & Trust Co. ERISA Litig.*, No. 07-8488 (S.D.N.Y. Feb. 19, 2010), Dkt. ## 187, 191 (awarding then-current attorneys' rates between $300 and $740); *In re Bear Stearns Cos. ERISA Litig.*, No. 08-2804 (S.D.N.Y. Sept. 20, 2012), Dkt. # 158, 163 (awarding then-current attorneys' rates between $295 and $785); *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015), Dkt. # 115 (awarding then-current attorneys' rates between $395 and $895); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, MDL No. 2335 (S.D.N.Y. Sept. 24, 2015), Dkt. # 637 (awarding then-current attorneys' rates between $475 and $895); *Griffith v. Providence Health & Servs.*, No. 14-1720 (W.D. Wash. Mar. 21, 2017, Dkt. # 69 (awarding then-current attorneys' rates between $400 and $940).

80. Additionally, Class Counsel's rates are on a par with, or even below, plaintiffs' firms with whom they have litigated cases. For example, on May 27, 2015, the Southern District of New York approved fees for attorneys at Bernstein Litowitz Berger & Grossmann ranging from $340 to $975 per hour.[8] And, as a further example, on March 3, 2015, the Southern District of New York approved fees for attorneys at Labaton Sucharow LLP and Berman DeValerio ranging from $425 to $975 and $300 to $835 per hour, respectively.[9] And on June 4, 2014, the

---

[8] *See* Stickney Decl. at 4-6, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-08903 (S.D.N.Y), Dkt. # 273-6.

[9] *See* Tubbs Decl. at Ex. A & DeValerio Decl. at Ex. A, *In re Fannie Mae 2008 Sec. Litig.*, No. 08-7831 (S.D.N.Y.) Dkt. ## 542-9 & 542-10.

District of West Virginia approved fees for attorneys at Labaton Sucharow LLP and Robbins Geller Rudman & Dowd LLP ranging from $275 to $975 per hour.[10]

81.     Class Counsel's rates are also below those of defense firms that are defending Church Plan cases. The *National Law Journal*'s annual survey of law firm billing rates in 2014 shows that the 2014 billing rates for attorneys at Proskauer Rose LLP, defense counsel in this case, ranged from $295 to $950.[11] Similarly, the 2014 billing rates for attorneys at Arnold & Porter LLP, defense counsel in the *Dignity* Church Plan case, ranged from $345 to $950.[12]

## IV.    CLASS COUNSEL'S EXPENSES

82.     Class Counsel have advanced significant unreimbursed expenses in these Actions.

83.     Class Counsel have advanced or incurred $213,845.28 in expenses to date. Summaries of each firms' expenses are attached hereto as Exhibits G (Cohen Milstein's expenses by case), H (Keller Rohrback's expenses by case).[13] The expenses incurred in developing and prosecuting these two Actions are commercially reasonable and are reflected on

---

[10] *See* Bernstein Decl. at Ex. B & Reise Decl. at Ex. B, *In re Massey Energy Co. Sec. Litig.*, No. 10-00689 (S.D. W.Va.) Dkt. ## 197-7 & 197-8.

[11] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/ Billing-Rates-Across-the-Country?slreturn=20150704133227.

[12] *See Billing Rates at the Nation's Priciest Firms*, Nat'l L. J. (Jan. 5, 2015), http://www.nationallawjournal.com/id=1202713889426?slreturn= 20150703191412 (last accessed Aug. 3, 2015).

[13] The expenses incurred prosecuting these complex class actions include filing fees; travel expenses, court appearances and mediation; copying, delivery and telecommunications charges; computer legal research charges; expert fees; deposition and transcript costs; document hosting fees; mediator's charges; and similar litigation expenses.  These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Class Counsel maintains appropriate back-up documentation for each expense.

28

the books and records of each firm.  These books and records are prepared from expense

vouchers, check records, and other source materials and represent an accurate recordation of the

expenses incurred.

84.     The categories of expenses for which Class Counsel seek reimbursement are the

type of expenses routinely charged to hourly clients and should therefore be reimbursed here.

These costs included, *inter alia*: filing fees; travel expenses, court appearances and mediation;

copying, delivery and telecommunications charges; computer legal research charges; expert fees;

deposition and transcript costs; document hosting fees; mediator's charges; and similar litigation

expenses.  These expenses are typically billed by attorneys to paying clients, and are calculated

based on the actual expenses of these services in the markets in which they have been provided.

Counsel maintains appropriate back-up documentation for each expense.  These expenses

incurred were necessary to secure the resolution of this litigation.

85.     On a firm-by-firm basis, the expenses incurred are as follows:

*Chavies v. CHE*

| Firm | Expenses |
| --- | --- |
| Cohen Milstein Sellers & Toll, PLLC | 125,133.29 |
| Keller Rohrback L.L.P | $26,940.94 |
| **TOTAL** | **$152,074.03** |

*Lann v. Trinity*

| Firm | Expenses |
| --- | --- |
| Cohen Milstein Sellers & Toll, PLLC | $37,122.27 |
| Keller Rohrback L.L.P | $24,648.98 |
| **TOTAL** | **$61,771.25** |

86.     These expenses were advanced with no guarantee of recovery.  As a result, Class

Counsel had a strong incentive to keep costs to a reasonable level and did so.

29

## V.     INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS AND MARY BETH HENRICK

87.     Class Counsel also wish to note the considerable efforts made on behalf of the Class by the four Named Plaintiffs— Anita Lann, Jean Atcherson, Albert R. Chavies, and Thomas Holland, as well as Plaintiff Mary Beth Henrick.  Like the Named Plaintiffs, Ms. Henrick participated actively in the CHE litigation. She retained Class Counsel after the initiation of the lawsuit in connection with a denial of benefits and information grounded in CHE's claimed Church Plan status. She assisted Class Counsel with their investigation of the case, and was deposed at length by CHE defense counsel.  Class Counsel intended to add Ms. Henrick as a Named Plaintiff in the CHE case via amendment had the litigation progressed. Accordingly, the term "Plaintiffs" is defined in the Settlement Agreement to include all Named Plaintiffs, as well as Mary Beth Henrick.

88.     The Named Plaintiffs came forward to file a Complaint in this Action, and thereafter remained in frequent contact with Class Counsel.  They actively worked with Class Counsel on the CHE Action for more than four years and the Trinity Action for more than two years.  The Named Plaintiffs collected numerous documents relating to their employment at CHE and Trinity and their participation in the Plans; reviewed drafts of the Complaints and approved the filing of the final version; stayed abreast of the pleadings, motions to dismiss, and settlement negotiations; monitored developments in the other Church Plan cases pending in the courts of appeal and the Supreme Court; and were actively involved in the mediation and ultimate settlement of this litigation.  The Named Plaintiffs met in person with Class Counsel and communicated with them by telephone throughout this lawsuit.  They contributed time that could otherwise have been devoted to work and family obligations, and did so in order to help the

30

members of the Settlement Class achieve significant relief—a total of $75 million in contributions to the Plans; $1,600 each to the 219 individuals who were among the participants who elected and received a lump sum distribution during the lump sum window period in 2014; and $1.3 million, on a pro rata basis, to the 7,371 former participants in the Plans who left covered service under the Plans after completing at least three but less than five years of vesting services and who, as a result, allegedly forfeited a benefit accrued under a cash balance or pension equity formula; and significant other, non-monetary relief, as detailed *infra*, ¶¶ 7-8.

89.     Class Counsel accordingly asks the Court to recognize their efforts by awarding Incentive Awards to the Named Plaintiffs and to Plaintiff Mary Beth Henrick, in the amount of $10,000 each.

90.     The Class Notice sent to the members of the Settlement Class disclosed that Class Counsel would seek Incentive Awards for these Plaintiffs, payable by Defendants from the additional monetary contribution described in § 8.1.5 of the Settlement Agreement.  The Incentive Fees to the Named Plaintiffs and to Plaintiff Henrick, if awarded, will not reduce the Class Settlement Amount and will be paid separate and apart from that relief.  To date, no objections to these awards have been received.

91.     Class Counsel believes that payment of Incentive Awards to these Plaintiffs is justified in this case, and that the amounts are fair and reasonable in light of the benefits that Plaintiffs helped achieve for the Settlement Class.

## VI.     CONCLUSION

92.     For the reasons discussed herein, Class Counsel has concluded that the Settlement is a fair, reasonable, and an adequate resolution of the claims against Defendants in this hard-fought ERISA class action.  The requested fees, expenses, and class representative Incentive Awards to the Named Plaintiffs and Plaintiff Henrick are warranted as well.  Thus, Named

31

Plaintiffs and Class Counsel respectfully request that the Court grant their Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class and approve attorneys' fees and expenses, grant Incentive Awards to the Named Plaintiffs and to Plaintiff Henrick, and enter the final order and judgment in its entirety.

93.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct.

Executed this 17th day of April, 2017.

COHEN MILSTEIN SELLERS & TOLL, PLLC

By: s/ Michelle Yau
    Michelle Yau, Pro Hac Vice
    1100 New York Avenue, N.W.
    Suite 500, West Tower
    Washington, D.C.  20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    Email: myau@cohenmilstein.com

KELLER ROHRBACK L.L.P.

By: s/ Lynn Lincoln Sarko
    Lynn Lincoln Sarko, WSBA #16569
    1201 Third Avenue, Suite 3200
    Seattle, WA  98101
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    Email: lsarko@kellerrohrback.com

*Attorneys for Plaintiffs*

32

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 17, 2017, I electronically filed the foregoing Joint Declaration of Michelle C. Yau and Lynn Lincoln Sarko In Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement; and (2) Petition of Class Counsel for Award of Attorneys' Fees and Reimbursement of Expenses and for Incentive Awards to Named Plaintiffs with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/    Michelle C. Yau