# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

ANITA LANN, et al.,                )
                                 )
           Plaintiffs,         )      Civil Action No.: 14-cv-2237(PJM)
                                 )
           v.                         )
                                 )
TRINITY HEALTH                     )
CORPORATION, et al.,               )
                                 )
           Defendants.       )
_____ )

## AFFIDAVIT OF ABIGAIL SCHWARTZ
## FOR RUST CONSULTING, INC.

**STATE OF MINNESOTA**     )
                             ) **ss.**
**HENNEPIN COUNTY**      )

I, Abigail Schwartz, declare as follows :

1.     I am a Program Manager for Rust Consulting, Inc. ("Rust").  My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469.  My telephone number is (612) 359-2078.  I am over twenty-one years of age and am authorized to make this affidavit on behalf of Rust and myself.

2.     I submit this Affidavit in connection with the class action settlement administration related to *Anita Lann, et al. v. Trinity Health Corporation, et al.*, Case No. 14-cv-2237(PJM), pending in the United States District Court for the District of Maryland, Greenbelt

Division (the "Action"), at the request of Counsel for the Plaintiffs and Counsel for the Defendants (collectively the "Parties").

3.      This Affidavit is based on my personal knowledge and upon information provided by my associates and staff.

4.      Rust has extensive experience in class action matters, having provided services in class action settlements involving ERISA, antitrust, securities fraud, property damage, employment discrimination, employment wage and hour, product liability, insurance and consumer issues.  We have provided notification and/or claims administration services in more than 4,500 cases.  Of these, more than 2,000 were Labor & Employment cases.

5.      Rust was engaged by the Parties to provide administration services in the *Anita Lann, et al. v. Trinity Health Corporation, et al.*, Settlement (the "Settlement").  Rust was responsible for the implementation of the notice administration in this Action, which included: a) preparing, printing and mailing of the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Expenses (the "Class Notice"); b) establishing a toll-free telephone number with interactive voice response to answer frequently asked questions; c) issuing payments to qualified class members; and d) completing such other tasks as the Parties mutually agreed upon.

**NOTIFICATION:**

6.      Rust obtained a mailing address of Lann v. Trinity Health ERISA, c/o Rust Consulting, Inc. - 5309, P.O. Box 2580, Faribault, Minnesota 55021-9580 to receive undeliverable Class Notices and other communications regarding the Settlement.

7.      On or about August 1, 2016, Counsel for the Defendants provided Rust with a mailing list containing the Class Members' names, last known addresses, and/or Social Security Numbers (the "Class List").

9.      The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database (the "NCOA") maintained by the U.S. Postal Service.  The NCOA contains requested changes of address filed with the U.S. Postal Service.  In the event that an individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Class Notice.

10.      On or about February 7, 2017, Rust received the Court-approved Class Notice from Counsel.  Rust formatted the Class Notice for printing and mailing.  Counsel for the Parties approved the formatted Class Notice prior to mailing.

11.      In accordance with the Order Granting Motion for Preliminary Approval of Settlement, (the "Preliminary Order"), on March 17, 2017, Rust mailed Class Notices to 253,742 Class Members contained in the Class List via First Class mail.  The Class Notice advised Class Members that they could submit an objection by May 3, 2017.  The Class Notice (attached as Exhibit A) was mailed to 246,152 members of Group A.  The Class Notice, along with the additional enclosure notifying the individuals that they were in Group B (attached as Exhibit B), was mailed to 219 members of Group B.  The Class Notice, along with the additional enclosure notifying the individuals that they were in Group C (attached as Exhibit C), was mailed to 7,371 members of Group C.

12.      As of April 13, 2017, 17,753 Class Notices have been returned to Rust as undeliverable.  Of the 17,753 Class Notices returned to Rust as undeliverable, Rust performed

address traces on 17,499 Class Notices returned to Rust as undeliverable for the first time. The address trace utilizes the Class Member's name and previous address for locating a current address. Of the 17,499 traces performed, 13,783 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class mail. Of the 17,499 traces performed, Rust did not obtain updated address for 3,716 undeliverable Class Notices.

13.    As of April 13, 2017, 223 Class Notices have been returned by the Post Office with forwarding addresses attached. Rust promptly re-mailed Class Notices to those Class Members via First Class mail.

14.    As of April 13, Rust has received zero (0) objections.

**TELEPHONE SUPPORT:**

15.    Rust obtained a case-specific toll-free telephone number of 1-866-216-0278 for Class Members to call the Settlement Administrator with questions regarding the Settlement. Callers to the toll-free telephone number are prompted to listen to a recorded introductory message before selecting an option from an automated menu system (the Interactive Voice Recording, "IVR") designed to answer frequently asked questions about the Settlement. Callers can connect to a customer service representative by selecting the option available from the menu. As of April 13, 2017, Rust had received approximately 1,088 calls to the toll-free telephone number.

I declare, under penalty of perjury, under the laws of the State of Maryland, that the foregoing is true and correct to the best of my knowledge.  Executed this 12th day of April, 2017 in Minneapolis, Minnesota.



_____
Abigail Schwartz


Subscribed and sworn to me this 13 day of April, 2017.


_____
Notary Public


ROBERT NEIL JOSEPHSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2021

Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

ANITA LANN, et al.,

**Plaintiffs,**

v.

TRINITY HEALTH CORPORATION, et al.,

**Defendants.**

Civil Action No.: 14-cv-2237 (PJM)

## NOTICE OF PROPOSED SETTLEMENT OF ERISA CLASS ACTION LITIGATION, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This notice ("Notice") advises you of the Class Action Settlement Agreement and the First Addendum to April 26, 2016 Class Action Settlement Agreement (the "Settlement") of two class action lawsuits, *Chavies v. Catholic Health East* and *Lann v. Trinity Health Corporation*. In these lawsuits, the Plaintiffs allege that the Defendants did not comply with certain provisions of the Employee Retirement Income Security Act ("ERISA") with respect to certain defined benefit pension plans sponsored by Trinity Health Corporation and Catholic Health East. You are receiving this Notice because you may be a participant, or a beneficiary of a participant, in one of those plans.

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION.
### YOU HAVE NOT BEEN SUED.

The lawsuits allege that Catholic Health East ("CHE") and Trinity Health Corporation ("Trinity") improperly claim that their defined benefit pension plans are exempt from ERISA's protections because they are "Church Plans;" that the CHE and Trinity Plans violated ERISA in a variety of ways; and that alternatively, application of the Church Plan exemption to the CHE and Trinity Plans would violate the Establishment Clause of the Constitution. Defendants contend that based on the terms of ERISA and the Internal Revenue Code, and guidance and rulings by governmental authorities, CHE and Trinity may operate and administer these plans as "Church Plans" that are not subject to ERISA under the so-called "Church Plan" exemption.

The Settlement resolves all claims against Defendants and applies to all current and former, vested and non-vested, participants in the Plans and their beneficiaries. The Settlement provides specific benefits to three groups of people which are summarized below. These groups do not overlap. If you are covered by the Settlement, you can only be in one of the groups. Class members in Group B or C will receive a separate letter enclosed with this notice, indicating which group applies. IF YOU DID NOT RECEIVE A SEPARATE LETTER ENCLOSED WITH THIS NOTICE YOU ARE IN GROUP A.

| Group A |
| --- |
| **Group A consists of all the current participants in the CHE- and Trinity-sponsored Plans listed on Schedule A to the Settlement Agreement. Currently, there are approximately 249,077 current participants in these Plans.** This includes retirees currently receiving benefits and vested participants who are no longer employed by Trinity, CHE, or another participating employer in the Plans but are entitled to pension benefits under one of the Plans. |
| The Settlement provides that people in Group A will receive the benefit of a cash contribution to the Plans of $75,000,000 ($75 million), payable in equal installments of $25,000,000 over three years. Because the Plans are defined benefit pension plans, the aggregate total of the $75 million cash amount will be contributed to the Plans as a whole and will not increase any participant's accrued pension benefit. Rather, the $75 million contribution will benefit all members of Group A by increasing the retirement security of their individual benefits. With the $75 million contribution, the Plans will be well-funded on an ERISA basis. The Settlement also provides significant financial and administrative protections for the next fifteen years, such as a guarantee of benefits under the Plans, an anti-cutback provision, and requirements regarding information disclosure to participants in the Plans. These non-monetary protections are described in greater detail in Section 3 of this Notice, as well as in Sections 8.1.1 and 9 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement. |

- 1 -

## Group B

**Group B consists of 219 former participants who received lump sum distributions of their benefits during the 2014 Lump Sum Window.** In 2014, CHE and Trinity offered a Lump Sum Window. For participants who chose to take a lump sum distribution of their benefits at that time, their benefits were converted into a single lump sum using an interest rate and other actuarial factors. ERISA requires the use of certain interest rates for Plans calculating lump sum payments.

The interest rate used to compute the lump sum benefit of 219 participants who were former employees of the CHE System Office, Watertown, and the Sisters of Providence Health System was higher than the ERISA interest rates. This resulted in a lower lump sum amount than what ERISA requires. The median shortfall for members of Group B is $3,200. The Settlement will provide each of these 219 individuals with a one-time payment of $1,600 as consideration to release the alleged improper lump sum calculation claim, which represents a 50% recovery of the median shortfall. The Parties compromised on payments of $1,600.00 to release the lump sum claim in light of the uncertainty and risk of litigating the claim, and because an equal payment to all class members in Group B would be administratively feasible. Group B only includes former employees of the CHE System Office, Watertown, and the Sisters of Providence Health System, and does not include any participants in Trinity-sponsored plans. For more details about Group B, see Section 3 of this Notice, as well as Sections 2.12 and 8.1.3 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement.

## Group C

**Group C consists of 7,371 individuals who accrued more than three but less than five years of "vesting service" credit under the Plans.** Several of the plans covered by the Settlement have a cash balance or pension equity benefit formula which required that a participant have five years of "vesting service" in order to be 100% vested in their benefits. Under ERISA, cash balance and pension equity benefits typically must be 100% vested after three years of vesting service (one year of vesting service is 1,000 hours within a given calendar year). People in Group C left employment with participating employers in the CHE- and Trinity-sponsored plans with more than 3 years of vesting service, but fewer than 5 years of vesting service and thus before they became fully vested in their cash balance or pension equity benefit according to the terms of those plans.

As consideration for the release of this claim, Defendants will pay $1,300,000 ($1.3 million) in total to the members of Group C. The Parties compromised on $1.3 million to settle the improper vesting schedule claim because of the difficulty in valuing and litigating the claim as well as the time- and labor-intensive process of determining the accrued benefit of each of the 7,371 members of Group C, based on the following reasons: records for the former employees in Group C date back as far as the 1970s and involve multiple plans with differing benefit formulae from more than 70 separate employers. Additionally, when Plaintiffs' Counsel examined the list of these 7,371 class members, counsel saw that many individuals had multiple hire dates, termination dates, and re-employment dates. Moreover, while most ERISA plans contain a five-year "break in service" provision (so that if a participant has credited employment service, but then has a five-year break in service before becoming re-employed, the prior service credit is forfeited) the Plans here do not. Participants frequently were re-employed and never forfeited past service, even if that past service occurred more than five years ago. Given these significant challenges, it would have been prohibitively expensive and time consuming to calculate the accrued benefits for each of the individuals in Group C at the time the settlement was reached, rendering it effectively impossible to come up with a median lost benefit amount for the Group C class members. In light of these challenges and after hard-fought negotiation, the Parties agreed to $1.3 million as consideration for the release of this claim. Plaintiffs and Class Counsel believe the fairest way to settle the claim is to distribute the $1.3 million equally among the members in Group C. Each member of Group C will receive a single payment of approximately $176.36. This payment will be made after the Court issues its Final Approval Order in the case. For more details about Group C, see Section 3 of this Notice, as well as Sections 2.12 and 8.1.4 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement.

The Court in charge of these cases still has to decide whether to approve the Settlement. The payments described above will be made only if the Court approves the Settlement and that approval is upheld if there are any appeals. This process is explained in greater detail below.

Additionally, the Parties acknowledge that a ruling on ERISA's church plan exemption by the United States Supreme Court or the Internal Revenue Service ("IRS"), or action by the United States Congress or the Roman Catholic Church, is possible in the foreseeable future. Any one of these four potential events could impact the Action. In particular, on December 2, 2016 the Supreme Court decided to review three cases which could bear directly on the question of whether organizations like Trinity could establish an ERISA-exempt church plan: *Advocate Health Care Network v. Stapleton*, No. 16-74; *Saint Peter's*

*v. Kaplan*, No. 16-86; *Dignity Health v. Rollins*, No. 16-258. The Supreme Court will likely issue a decision in these cases by June 30, 2017. Mindful of these possibilities, Plaintiffs and Class Counsel sought to best protect the Settlement Class by allowing the Class to get the benefit of certain developments in the litigation landscape which would positively impact the Class's claims. These benefits are reflected in the release provision of the Settlement Agreement, which contains a series of specific carve outs that would be triggered prospectively by any one of the four possible contingencies. The carve outs from the release of claims allow all class members to pursue their prospective claims for relief if any of four developments occur:

- the U.S. Supreme Court holds that the church plan exemption is unconstitutional, or holds that the church plan exemption is constitutional but that a church plan must be established by a church, convention or association of churches;
- the Internal Revenue Service (IRS) issues a written ruling that the Trinity Health Plans do not qualify as church plans under the Internal Revenue Code;
- the Roman Catholic Church disassociates itself from Trinity Health Corporation; or
- the U.S. Congress amends ERISA to specify that a church plan must be established by a church or a convention or association of churches.

See Sections 4.1.3 and 4.1.4 of the Settlement Agreement, see also Section 4 of the Notice.

However, even if one of the carve outs above is triggered, Group A will receive the the first $25 million payment to the Plans and Groups B and C still will receive the payments described above as consideration to release their claims. None of these payments can be clawed back.

See Answer to Question #4, "**What happens if a contingency 'carve out' is triggered ?**" below and in Schedule D to the Settlement Agreement.

Notably, Plaintiffs and the entire Settlement Class will be in the same or better position with respect to their prospective benefits under the Plans, regardless of whether the contingent carve outs are triggered. In other words, the contingencies could only positively impact the prospective rights of the Plaintiffs and the Settlement Class as the occurrence of any one of them may require church-affiliated hospitals that establish church plans to comply with ERISA.

**Your Legal Rights Are Affected If You Are a Member of the Settlement Class Whether or Not You Act. "Settlement Class" means:** All persons (whether vested or non-vested) who were participants in or beneficiaries under the defined benefit pension plans maintained and/or sponsored by Trinity, CHE, or one of their subsidiaries, where these Plans have been operated and administered as Church Plans, including: Trinity Health Pension Plan, Trinity Health Pension Plan – Sisters of the Holy Cross Sponsored Ministries, Retirement Plan for Employees of the University of Detroit Mercy, Catholic Health East Employee Pension Plan, Pension Plan of Mercy Health System for Collectively Bargained Colleagues, Group Pension Plan for Employees of Mercy Center for Health Services, Pension Plan for Employees of St. Mary's Hospital Corporation, Pension Plan for Employees of Uihlein Mercy Center, Inc., and Mercy Life Center Corporation Pension Plan (collectively, the "Plans"), on or before the date this Settlement becomes Final. See also Schedule A of the Settlement Agreement for the list of plans covered by the Settlement.

**Identification of Key Terms:** This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Class Action Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement, and additional information with respect to this lawsuit and the Settlement, is available at http://www.cohenmilstein.com/update/trinity-che-settlement.

**Reasons for the Settlement:** The Settlement resolves all claims in the lawsuits against the Defendants regarding the Plans. The Settlement is not, and should not be construed as, an admission of any fault, liability or wrongdoing whatsoever by any of the Defendants, who continue to deny any and all of the allegations of the Complaints. Plaintiffs and Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement provides substantial benefits to all participants in and beneficiaries under the Plans as compared to the risks, costs and delays of proceeding with this litigation against Defendants.

**Identification of Claims Administrator and Class Counsel:** Any initial questions regarding the Settlement and, in particular, which Group you are a member of, should be directed to Rust Consulting at (866) 216-0278.

Class Counsel is available to respond to all other questions. Please contact: Mary Bortscheller, Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, N.W., Fifth Floor, Washington, D.C. 20005. Class Counsel has established a toll-free number, 1-888-347-4600 if you have questions or comments. Class Counsel may also be contacted via email at trinitysettlement@cohenmilstein.com. Please do not contact the Court. Its personnel will not be able to answer your questions.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
|---|---|
| NO ACTION IS NECESSARY. | If the Settlement is approved by the Court and you are a member of the Settlement Class, you do not need to do anything. |
| YOU CAN OBJECT NO LATER THAN MAY 3, 2017. | If you wish to object to any part of the Settlement, you can write to the Court and explain why you do not like the Settlement. |
| YOU CAN GO TO THE HEARING ON **MAY 31, 2017** BY FILING A NOTICE OF INTENTION TO APPEAR NO LATER THAN **MAY 3, 2017**. | If you have submitted a written objection to the Court, you can ask to speak in Court about the fairness of the Settlement. You may enter your appearance in Court through an attorney if you so desire. |

## WHAT THIS NOTICE CONTAINS

Summary of Settlement ........................................................................................................... 5

Basic Information ................................................................................................................... 6
   1. Why did I get this Notice package? ........................................................................ 6
   2. How do I know whether I am part of the Settlement? ......................................... 6
   3. What does the Settlement provide? ....................................................................... 7
   4. What happens if a contingency "carve out" is triggered? .................................... 10
   5. What is the lawsuit about? What has happened so far? ...................................... 10
   6. Why is this case a class action? ............................................................................ 10
   7. Why is there a Settlement? .................................................................................... 10
   8. How will the Settlement be distributed? ............................................................. 11
   9. What rights am I giving up in the Settlement? ................................................... 11
   10. Can I exclude myself from the Settlement? ........................................................ 11

The Lawyers Representing You ............................................................................................. 11
   11. Do I have a lawyer in the case? ........................................................................... 11
   12. How will the lawyers be paid? ............................................................................ 11

Objecting to the Settlement ................................................................................................. 11
   13. How do I tell the Court if I don't like the Settlement? ....................................... 11

The Court's Fairness Hearing ............................................................................................... 12
   14. When and where will the Court decide whether to approve the Settlement? ...... 12
   15. Do I have to come to the hearing? ....................................................................... 13
   16. May I speak at the hearing? ................................................................................. 13

If You Do Nothing ............................................................................................................... 13
   17. What happens if I do nothing at all? .................................................................. 13

Getting More Information .................................................................................................... 13
   18. How do I get more information? ......................................................................... 13

The Trinity case was filed in federal district court in Maryland against Trinity Health Corporation and CHE Trinity Inc. (collectively, "Trinity") and the following persons were named as defendants in the Complaint (defined below): James Bosscher; Debra Canales; Members of the Trinity Health Corporation Benefits Committee; and Members of the Trinity Health Human Resources and Compensation Committee.

Questions? Visit http://www.cohenmilstein.com/update/trinity-che-settlement
DO NOT CALL THE COURT as they cannot answer your questions.

The CHE case was filed in federal district court in Pennsylvania against Catholic Health East ("CHE") and the following persons were named as defendants in the Complaint (defined below): Anthony Camaratto and Clayton Fitzhugh.

In conjunction with this Settlement, Plaintiffs filed stipulations of dismissal without prejudice as to the individual defendants (James Bosscher, Debra Canales, Anthony Camaratto, and Clayton Fitzhugh), and transferred the CHE case to the U.S. District Court for the District of Maryland for consolidation with the Trinity case solely for purposes of settlement. The Plaintiffs and remaining Defendants are collectively referred to herein as the "Parties."

A copy of the Class Action Complaints ("Complaints") and other documents relevant to this Settlement are available at http://www.cohenmilstein.com/update/trinity-che-settlement.

## SUMMARY OF SETTLEMENT

The Settlement provides specific monetary and non-monetary benefits to three separate, non-overlapping groups of class members – Groups A, B and C – as described in detail in Section 3 of this Notice and Sections 8 and 9 of the Settlement Agreement. You can only be in one group, based on your particular situation.

As with any litigation, the Parties would face an uncertain outcome if the Trinity case and the CHE case (collectively, the "Action") were to continue. Continued litigation of these cases against the Defendants may result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or in no recovery at all. Throughout the litigation of both cases, the Plaintiffs and Defendants have disagreed on both liability and damages, and they do not agree on the amount that would be recoverable even if the Plaintiffs were to prevail at trial. Defendants, among other things, (1) maintain that the Plans have been and continue to be properly administered as Church Plans under the appropriate Plans' terms and as defined in ERISA § 3(33), exempt from coverage under ERISA and, therefore, deny any and all liability to Plaintiffs, members of the Settlement Class and the Plans, and deny any and all allegations of wrongdoing made in the Action based on the Plans being subject to ERISA; (2) maintain that all participants in and beneficiaries under the Plans have received and continue to receive all benefits they have been entitled to under the Plans and that disclosures to the Plans' participants have been comprehensive and continue to be consistent with the Plans' terms; (3) maintain that Trinity's financial statements reflect that the Plans have been well funded historically, with contributions in recent years averaging not less than one hundred seventy-five million dollars ($175,000,000) per year; and (4) maintain that Trinity and CHE take the administration of the Plans very seriously and have operated and continue to operate the Plans as Church Plans in the best interests of the Plans' participants and beneficiaries, consistent with Plan documents and the core values of the Trinity and CHE organizations.

Plaintiffs, among other things, (1) have conducted an extensive investigation into the facts, circumstances and legal issues associated with the allegations made in the Action, including confirmatory discovery as to the facts and circumstances related to the individuals in Groups B and C receiving the Lump Sum and Vesting Payments, respectively, (as detailed above); (2) believe, based on the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaints; the ability of Defendants to withstand judgment; and the benefit accruing to the Plans' participants and beneficiaries under the Settlement, that the Settlement will provide a benefit to the Settlement Class, and that, when that benefit is weighed against the risks of continuing the prosecution of the Action, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class; and (3) believe that the Settlement will provide the Settlement Class with the bulk of the protections they would have received if the cases had been litigated to a conclusion and Plaintiffs had prevailed. With the $75 million funding contributions under the settlement, the Plans will be well-funded on an ERISA basis.

Defendants have denied, and continue to deny, the validity of any and all claims asserted in the CHE and Trinity Complaints. The Settlement is not evidence of liability of any type. Plaintiffs deny any and all theories of defense asserted in Defendants' Motions to Dismiss. Nevertheless, the Parties have taken into account the uncertainty and risks inherent in the litigation of the Action, particularly their complex nature, and have concluded that it is desirable that the Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement, solely to avoid further cost, expense, and time associated with litigation.

Visit http://www.cohenmilstein.com/update/trinity-che-settlement if you have additional questions.

## BASIC INFORMATION

### 1. Why did I get this Notice package?

Either you or someone in your family may have been a participant in or beneficiary of one of the Plans during the Class Period. The Court has directed that this Notice be sent to you because, as a potential member of the Settlement Class, you have a right to know about the proposed Settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, the Defendants will provide specific monetary and non-monetary relief for the benefit of the members of Groups A, B, and C of the Class, as described in detail in Section 3 of this Notice and Sections 8 and 9 of the Settlement Agreement. This includes the aggregate contribution of $75,000,000 over three years to the Plans, as well as other specific monetary and non-monetary relief.

This Notice explains the Action, the Settlement, and your legal rights. The purpose of this Notice is to inform you of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness and adequacy of the proposed Settlement, and to consider the application of Class Counsel for their attorneys' fees and reimbursement of litigation expenses as well as an application for Incentive Awards for the Named Plaintiffs and Mary Beth Henrick ("Plaintiffs").

The Fairness Hearing will be held at 2 p.m. on May 31, 2017 before the Honorable Peter J. Messitte in the United States District Court for the District of Maryland, Greenbelt Division, 6500 Cherrywood Lane, Greenbelt, MD 20770, to determine:

(a) Whether the Settlement Agreement is fair, reasonable and adequate and should be approved by the Court;

(b) Whether final judgment approving the Settlement Agreement should be entered;

(c) Whether the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

(d) Whether the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class;

(e) Whether the requirements of the Class Action Fairness Act have been satisfied;

(f) Whether to award Incentive Awards to Plaintiffs, and if so, the amount; and

(g) Whether to award attorneys' fees and litigation expenses to Class Counsel and if so, the amounts.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, the payments by Defendants described above will be made after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year. Please be patient.

### 2. How do I know whether I am part of the Settlement?

The Court has certified both the CHE Action and the Trinity Action as a class action for settlement purposes only. You are a member of the Settlement Class if you are or were a vested or non-vested participant in or beneficiary of a defined benefit pension Plans maintained and/or sponsored by Trinity and claimed to be Church Plans including: Trinity Health Pension Plan, Trinity Health Pension Plan – Sisters of the Holy Cross Sponsored Ministries, Retirement Plan for Employees of the University of Detroit Mercy, Catholic Health East Employee Pension Plan, Pension Plan of Mercy Health System for Collectively Bargained Colleagues, Group Pension Plan for Employees of Mercy Center for Health Services, Pension Plan for Employees of St. Mary's Hospital Corporation, Pension Plan for Employees of Uihlein Mercy Center, Inc., and Mercy Life Center Corporation Pension Plan, on or before the date this Settlement becomes final.

### 3. What does the Settlement provide?

The Settlement provides specific monetary and non-monetary benefits to three separate groups of class members – Groups A, B and C – as described in detail in Sections 8 and 9 of the Settlement Agreement. You can only be in one group, based on your particular situation. The groups do not overlap.

**Group A Settlement Benefits.** Defendants will make an annual aggregate $25,000,000 contribution to the Plans over the course of three years, totaling a $75,000,000 contribution. The first $25,000,000 contribution will occur thirty days after the Order approving the Settlement becomes final and non-appealable. Trinity will make the second and third contributions on the one-year anniversary of the first payment, although Trinity may choose to pre-pay with no penalty. See Settlement Agreement Section 8.1.1. With the $75 million in contributions, the Plans will be well-funded on an ERISA basis. Additionally, the Settlement provides significant non-monetary protections for participants in the Plans over the next fifteen

years. The Plans will remain Church Plans, but Defendants will guarantee that the Plans will have sufficient funds to pay the accrued benefits payable to participants under the terms of the Plans. Defendants have made similar financial commitments with respect to the Plans should there be a plan termination or merger. In addition, the Defendants have agreed that for a period of fifteen years commencing on the Effective Date of Settlement, no amendment to a Plan shall decrease the accrued benefit of any participant in the Plan. The Settlement also includes equitable consideration, mimicking certain provisions of ERISA, concerning plan administration, summary plan descriptions, notices (pension benefits statements, current benefit values), and the Plans' claim review procedure. These payments, and the non-monetary terms of the Settlement, benefit the current participants in and beneficiaries under the Plans, including retirees. For more details, see Sections 8.1.1 and 9 of the Settlement Agreement.

**Group B Settlement Benefits.** Defendants will pay $1,600 each (the "Lump Sum Payment") to the 219 individuals in Group B who elected and received an improperly calculated lump sum distribution during the 2014 Lump Sum Window (as defined by the Plans). Defendants will make this payment within thirty days after the effective date of the Settlement Agreement. See Settlement Agreement Section 8.1.3. Any unused balances from the Group B payments will be paid to the Plans.

**Group C Settlement Benefits.** Defendants will pay $1,300,000 ($1.3 million) to the 7,371 former participants in the Plans who left covered service under the Plans after completing at least 3 but less than 5 years of vesting service and who, as a result, allegedly forfeited a benefit accrued under a cash balance or pension equity formula. The $1.3 million payment to Group C will be divided equally, so that each member of Group C will receive approximately $176.36 (the "Vesting Payment"). See Settlement Agreement Section 8.1.4. Any unused balances from the Group C payments will be paid to the Plans.

All of the monetary and non-monetary relief provided to Groups A, B, and C constitutes consideration for release of all claims against Defendants, subject to the carve outs described below. Further, in connection with the Settlement, Plaintiffs filed stipulations of dismissal without prejudice of the Individual Defendants.

Additionally, Defendants have agreed to pay up to $8,000,000 to be used to fund Class Counsel's requested attorneys' fees, out of pocket expenses, and incentive awards to the Named Plaintiffs and Mary Beth Henrick. The District Court has the sole discretion as to whether, and/or in what amounts up to $8,000,000, to make such an award. See Sections 8.1.5 and 8.1.6.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement and the First Addendum thereto, which are available at http://www.cohenmilstein.com/update/trinity-che-settlement.

| 4. What happens if a contingency "carve out" is triggered? | | | | |
|---|---|---|---|---|
| **Contingency** | **Impact on Released Claims**<br>**Groups A, B, C** | **Impact on Obligations** | | |
| | | **Group A** | **Group B** | **Group C** |
| The IRS issues a written ruling that the Trinity Health Plans do not qualify as church plans under the IRS Code | The Settlement Agreement's stipulated release of claims becomes void prospectively and participants are deemed to have not released ERISA claims prospectively against Defendants arising out of events taking place after such IRS action | • Defendants' continuing obligations are <u>terminated</u> including the equitable consideration tracking certain provisions of ERISA<br>• Defendants may decide to comply with ERISA. If not, participants <u>may need</u> to seek relief in court<br>• The first $25 million contribution will be made, even if the IRS rules as indicated before the first contribution is made<br>• If the IRS ruling is issued after the first payment is made, Defendants <u>cannot claw back</u> the $25 million<br>• If the IRS ruling is issued after the second payment is made, Defendants <u>cannot claw back</u> the $50 million<br>• If the IRS ruling is issued after the third payment is made, Defendants <u>cannot claw back</u> the $75 million | No impact | No impact |

| Contingency | Impact on Released Claims Groups A, B, C | Impact on Obligations Group A | Group B | Group C |
|---|---|---|---|---|
| The **IRS** issues a written ruling that the Plans do qualify as church plans under the IRS Code | No impact | No impact | No impact | No impact |
| The **Supreme Court** holds that the church plan exemption is unconstitutional | The Settlement Agreement's stipulated release of claims becomes void prospectively and participants are deemed to have not released ERISA claims prospectively against Defendants arising out of events taking place after such a Supreme Court decision | • Defendants' continuing obligations are terminated including the equitable consideration tracking certain provisions of ERISA<br>• Defendants may decide to comply with ERISA. If not, participants may need to seek relief in court<br>• The first $25 million contribution will be made no matter how or when the Supreme Court resolves the pending Church Plan cases<br>• If the ruling is issued after the first payment is made, Defendants cannot claw back the $25 million<br>• If the ruling is issued after the second payment is made, Defendants cannot claw back the $50 million<br>• If the ruling is issued after the third payment is made, Defendants cannot claw back the $75 million | No impact | No impact |
| The **Supreme Court** holds that the church plan exemption is constitutional but that a church plan must be established by a church, convention, or association of churches, which would have to be determined on a case-by-case basis | The Settlement Agreement's stipulated release of claims becomes void prospectively and participants are deemed to have not released ERISA claims prospectively against Defendants arising out of events taking place after such a Supreme Court decision | • Defendants' continuing obligations are terminated including the equitable consideration tracking certain provisions of ERISA<br>• Defendants may decide to comply with ERISA. If not, participants may need to seek relief in court<br>• The first $25 million contribution will be made no matter how or when the Supreme Court resolves the pending Church Plan cases<br>• If the ruling is issued after the first payment is made, Defendants cannot claw back the $25 million<br>• If the ruling is issued after the second payment is made, Defendants cannot claw back the $50 million<br>• If the ruling is issued after the third payment is made, Defendants cannot claw back the $75 million | No impact | No impact |

| Contingency | Impact on Released Claims Groups A, B, C | Impact on Obligations Group A | Group B | Group C |
|---|---|---|---|---|
| The **Supreme Court** holds that the church plan exemption is <u>constitutional</u> and that a church plan <u>need not be</u> established by a church, convention, or association of churches | No impact | No impact | No impact | No impact |
| The **Roman Catholic Church** <u>disassociates</u> itself from Trinity Health Corporation | The Settlement Agreement's stipulated release of claims becomes void prospectively and participants are deemed to have <u>not</u> released ERISA claims prospectively against Defendants arising out of events taking place after such action by the Roman Catholic Church | No impact | No impact | No impact |
| The **Roman Catholic Church** <u>confirms</u> its association with Trinity Health Corporation | No impact | No impact | No impact | No impact |
| **Congress** amends ERISA to specify that a church plan must be established by a church or a convention or association of churches, which would have to be determined on a case-by-case basis | The Settlement Agreement's stipulated release of claims becomes void prospectively and participants are deemed to have <u>not</u> released ERISA claims prospectively against Defendants arising out of events taking place after such Congressional action | No impact | No impact | No impact |
| **Congress** otherwise amends or does not amend ERISA | No impact | No impact | No impact | No impact |

- 9 -

Further, if any of the contingent events described above occur before or after the Settlement is finally approved by the Court and non-appealable, Defendants will a) make the first $25 million contribution to the Plans; b) pay the Lump Sum and Vesting Payments to Groups B and C; and c) pay the amounts awarded by the Court as attorney's fees and costs and incentive fees. There will be no claw-back as to any of these amounts.

## 5. What is the lawsuit about? What has happened so far?

On March 28, 2013, a putative class action complaint was filed in the United States District Court for the Eastern District of Pennsylvania against CHE and various other defendants ("CHE Defendants") alleging violations of ERISA. The complaint alleged that the CHE Defendants denied the Plans' participants and beneficiaries the protections of ERISA by claiming that the Plans qualified as ERISA exempt "Church Plans." The complaint also alleged that the Plans sponsored by CHE—a non-profit healthcare provider—did not qualify as ERISA exempt Church Plans.

The CHE Defendants moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a plausible claim to relief. Following the oral argument on the CHE Defendants' motion to dismiss, the court ordered the parties to engage in jurisdictional discovery on the issue of whether CHE is a "church" pursuant to the ERISA Church Plan exemption. For several months, the parties engaged in fact and expert discovery, and were prepared to file various motions regarding whether CHE is a church. The Third Circuit granted interlocutory appeal of a related case, *Kaplan v. St. Peter's Health System*, and the court in CHE ordered a stay of the case pending the Third Circuit's decision in *Kaplan*.

On July 11, 2014, a similar complaint was filed in the United States District Court for the District of Maryland against Trinity, also a non-profit healthcare provider, and various other defendants ("Trinity Defendants"). The Trinity Defendants filed a partial motion to dismiss in the fall of 2014, arguing that a Church Plan could be established by a non-church entity and still qualify as an ERISA-exempt Church Plan, which the court granted. The Trinity Defendants filed a second partial motion to dismiss arguing that Trinity and the Trinity Benefits Committee are associated with and controlled by the Roman Catholic Church as a matter of law and that Plaintiffs' challenge to the constitutionality of the Church Plan exemption fails as a matter of law. This motion was fully briefed but then was stayed while the Parties participated in mediation.

CHE merged with Trinity as of July 1, 2014. Although the lawsuits initially were filed in different jurisdictions, the CHE case has been transferred to the District of Maryland and consolidated with the Trinity case solely for purposes of reviewing and approving (or disapproving) the Settlement. The Settlement is the product of intensive, arm's-length negotiations between Class Counsel and Defendants' Counsel, with the assistance of a mediator.

## 6. Why is this case a class action?

In a class action, one or more plaintiffs, called "Named Plaintiffs," sue on behalf of people who have similar claims. In the CHE litigation, the Named Plaintiffs are Albert R. Chavies and Thomas Holland; in the Trinity litigation, the Named Plaintiffs are Anita Lann and Jean Atcherson. All of the individuals on whose behalf the Named Plaintiffs in this Action are suing are "Class members," and they are also referred to in this Notice as members of the Settlement Class. The Court resolves the issues for all Class members. The Honorable Peter J. Messitte, United States District Judge, is presiding over this case.

## 7. Why is there a Settlement?

Under the proposed Settlement, the Court will not decide the merits of the Action in favor of either the Plaintiffs or the Defendants. By agreeing to a Settlement, both the Plaintiffs and the Defendants avoid the costs, risks and delays of litigating the Action.

This Settlement is the product of extensive arm's-length negotiations between Plaintiffs' Counsel and the Defendants' Counsel, including utilizing the services of an experienced mediator. Throughout the Settlement negotiations, the Plaintiffs and the Defendants were advised by various consultants and experts, including individuals with expertise in ERISA fiduciary liability issues, insurance coverage issues, and potential damages evaluations in cases involving ERISA.

Plaintiffs' Counsel believes that the proposed Settlement is fair, reasonable and adequate, and in the best interest of the Class.

## 8. How will the Settlement be distributed?

Members of the Settlement Class do not need to do anything with respect to the Settlement in this Action. Thirty (30) days after the Final Approval Order approving the Settlement becomes Final and non-appealable, Trinity will make the first of three annual $25,000,000 contributions to the Plans, totaling a $75,000,000 contribution, in the aggregate, to the Plans, for the benefit of members of **Group A**.

Trinity, through a claims administrator, Rust Consulting, will issue checks to members of **Groups B** and **C**, who are not current participants in the Plans, at the time set forth in Section 3 of this Notice.

## 9. What rights am I giving up in the Settlement?

If the Settlement is approved, the Court will enter a judgment. Subject to the carve outs described in the table in Section 4 of this Notice, this judgment will fully, finally, and forever release, relinquish, and discharge all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaints that were brought or could have been brought as of the date of the Settlement Agreement by any member of the Settlement Class, including any current or prospective challenge to the "Church Plan" status of the Plans. See Section 4 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement.

## 10. Can I exclude myself from the Settlement?

You do not have the right to exclude yourself from the Settlement. For settlement purposes, the Action was certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) (non-opt-out class) because the Court determined the requirements of that rule were satisfied. Thus, it is not possible for any of the members of the Settlement Class to exclude themselves from the Settlement. As a member of the Settlement Class, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action against the Defendants or are otherwise included in the release under the Settlement.

Although members of the Settlement Class cannot opt-out of the Settlement, they can object to the Settlement and ask the Court not to approve the Settlement.

## THE LAWYERS REPRESENTING YOU

## 11. Do I have a lawyer in the case?

The law firms of Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P. represent the Plaintiffs and the Settlement Class ("Class Counsel"). You will not be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 12. How will the lawyers be paid?

At the Fairness Hearing, Class Counsel will apply for an award of attorneys' fees and expenses. Such application for attorneys' fees will not exceed the $8,000,000 contribution for attorneys' fees and litigation expenses and Incentive Awards for certain of the Plaintiffs; this amount will be paid entirely by the Defendants. See Sections 8.1.5 and 8.1.6 of the Settlement Agreement. The attorneys' fees are separate from the $75,000,000 contribution to the Plans for the benefit of **Group A** and the payments to members of **Groups B** and **C** – attorneys' fees will not reduce these amounts.

To date, Class Counsel have not received any payment for their services in prosecuting this Action on behalf of the Settlement Class, nor have Class Counsel been reimbursed for their out-of-pocket expenses. The fees requested by Class Counsel would compensate all of Plaintiffs' counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class and for their risk in undertaking this representation on a contingency basis. The Court will determine the actual amount of the award.

## OBJECTING TO THE SETTLEMENT

## 13. How do I tell the Court if I don't like the Settlement?

Any member of the Settlement Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to any term of the Settlement Agreement, to the application for payment of attorneys' fees and expenses, or to the application for Incentive Awards for Plaintiffs, may file an "Objection" in writing. If you wish to file an Objection, the written Objections and supporting papers must: (1) clearly identify the case name and number "*Lann v. Trinity Health Corporation*, Case No. 14:cv-02237 (PJM)" (2) be filed with the Court and *Chavies v. Catholic Health East*, Case No.: 16-cv-1417 (PJM)" (2) be filed with the Court and postmarked and mailed to Class Counsel and Defendants' Counsel at the addresses below on or before twenty-eight (28) days before the Fairness Hearing; (3) set forth your full name, current address, and telephone number; (4) set forth the names statement of the position you wish to assert, including the factual and legal grounds for the position; (5) set forth the names and a summary of testimony of any witnesses that you might want to call in connection with the Objection; (6) provide copies of all documents that you wish to submit in support of your position; (7) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; (8) state the name, court, and docket number of any class action litigation in which you and/or your attorney(s) has previously appeared as an objector or provided legal assistance with respect to an objection; and (9) include your signature.

- 11 -

The addresses for filing Objections with the Court and service on counsel are listed below. **Your written Objection must be filed with the Court, and mailed to the counsel listed below, postmarked (and sent via facsimile) by no later than May 3, 2017:**

**File with the Clerk of the Court:**

> Clerk of the Court
> United States District Court
> District of Maryland
> Greenbelt Division
> 6500 Cherrywood Lane
> Greenbelt, MD 20770

**And, by the same date, serve copies of all such papers by mail and fax to each of the following:**

CLASS COUNSEL:

Karen L. Handorf
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.
Fifth Floor
Washington, D.C. 20005
Fax: (202) 408-4699

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Fax: (206) 623-3384

DEFENDANTS' COUNSEL:

Howard Shapiro
PROSKAUER ROSE, LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
Fax: (504) 310-2022

Brian T. Ortelere
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Fax: (215) 963-5001

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY MEMBER OF THE SETTLEMENT CLASS WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS TO CERTAIN PLAINTIFFS.**

## THE COURT'S FAIRNESS HEARING

### 14. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 2 p.m. on May 31, 2017, at the United States District Court for the United States District Court, District of Maryland, Greenbelt Division, 6500 Cherrywood Lane, Greenbelt, MD 20770.

**IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS TO THE PLAINTIFFS, YOU NEED NOT ATTEND THE FAIRNESS HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and incentive awards to the Plaintiffs. We do not know how long these decisions will take.

### 15. Do I have to come to the hearing?

Class Counsel will answer questions Judge Messitte may have. You are welcome to come at your own expense. If you send an Objection, you do not have to come to Court to talk about it. As long as you mailed your written Objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable and adequate. At your own expense, you may also have your own lawyer attend the Fairness Hearing, but such attendance is not necessary.

Questions? Visit http://www.cohenmilstein.com/update/trinity-che-settlement
**DO NOT CALL THE COURT as they cannot answer your questions.**

### 16. May I speak at the hearing?

If you are a member of the Settlement Class and you have filed a timely Objection, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *Lann v. Trinity Health Corporation*, Case No. 14:cv-02237 (PJM) and *Chavies v. Catholic Health East*, Case No.: 16-cv-1417 (PJM)." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be served on the attorneys listed above, postmarked and sent via facsimile no later than May 3, 2017, and must be filed with the Clerk of the Court, postmarked no later than May 3, 2017.

The Fairness Hearing may be delayed by the Court without further notice to the Class. If you wish to attend the Fairness Hearing, you should confirm the date and time with a member of Class Counsel.

## IF YOU DO NOTHING

### 17. What happens if I do nothing at all?

If you do nothing and you are a Class member, you will participate in the Settlement as described above in this Notice if the Settlement is approved.

## GETTING MORE INFORMATION

### 18. How do I get more information?

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to a member of Class Counsel listed above under item 12. Copies of the Settlement Agreement, as well as the Preliminary Motion seeking preliminary approval of the Settlement Agreement, and the Preliminary Approval Order, may also be viewed at http://www.cohenmilstein.com/update/trinity-che-settlement.

DATED        February 6, 2017

By Order of the Court
Hon. Peter J. Messitte
United State District Judge

# Exhibit B

Lann v Trinity Health ERISA
c/o Rust Consulting Inc - 5309
PO Box 2580
Faribault, MN  55021-9580

## IMPORTANT LEGAL MATERIALS

||||||||||||||||||||||| - UAA LB <<SequenceNo>>
* C L M N T   I D N O *

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

*Lann v. Trinity Health Corporation*, 8:14-cv-02237-PJM
Letter to Group B Class Members

Dear Class Member:

You are receiving this letter, along with the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement (hereinafter, "Notice"), because the records from your former employer indicate that **you would be or would qualify as a Class Member in Group B** of the proposed Settlement Class. As a member of Group B, you are not entitled to the benefits of Group A or Group C.

**Group B includes 219 former participants who received lump sum distributions of their benefits during the 2014 Lump Sum Window.** In 2014, CHE and Trinity offered a Lump Sum Window. For participants who chose to take a lump sum distribution of their benefits at that time, their benefits under the Plans were converted into a single lump sum amount using an interest rate and other actuarial factors. ERISA requires the use of certain interest rates for Plans calculating lump sum payments.

The interest rates used to compute the lump sum benefit of 219 participants who were former employees of the CHE System Office, Watertown, and the Sisters of Providence Health System, were higher than the ERISA interest rates. This resulted in a lower lump sum than what ERISA requires. The Settlement will provide each of these 219 individuals with a one-time payment of $1,600.00 as consideration for the release of the alleged improper lump sum calculation claim.

The Plaintiffs and Defendants compromised on payments of $1,600.00 following extensive settlement negotiations. For these 219 Group B class members, the median lump sum benefit shortfall is estimated to be $3,200.00. Given the risks and challenges associated with litigating the lump sum claim, **the Plaintiffs and Defendants agreed upon a $1,600 distribution to each of these 219 participants because it represented a 50% recovery of the median shortfall.**

**Group B only includes former employees of the CHE System Office, Watertown, and the Sisters of Providence Health System, and does not include any participants in Trinity-sponsored plans.** The lump sum payment will be made to members of Group B within 30 days after the Final Approval Order is entered by the Court and is non-appealable. For more details about Group B, see Section 3 of the Notice, as well as Sections 2.12 and 8.1.3 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement.

The Settlement Agreement contains certain carve outs that allow all class members to pursue their prospective claims if any of four developments occur:

- the U.S. Supreme Court holds that the church plan exemption is unconstitutional, or holds that the church plan exemption is constitutional but that a church plan must be established by a church, convention or association of churches;

- the Internal Revenue Service (IRS) issues a written ruling that the Trinity Health Plans do not qualify as church plans under the Internal Revenue Code;

- the Roman Catholic Church disassociates itself from Trinity Health Corporation; or

- the U.S. Congress amends ERISA to specify that a church plan must be established by a church or a convention or association of churches.

See Sections 4.1.3 and 4.1.4 of the Settlement Agreement, and Section 4 of the Notice. However, even if one of the carve outs above is triggered, you will still each receive the $1,600.00 payment as consideration to release your claim. That payment cannot be clawed back.

## Questions Regarding Group B Should Be Directed to the Claims Administrator

If you believe that you are not a member of Group B, you can call the claims administrator, Rust Consulting at (866) 216-0278.  Rust Consulting can answer any questions you have regarding which Group you belong to.  If you have any questions regarding the Settlement Agreement, please contact Class Counsel at trinitysettlement@cohenmilstein.com or 1-888-347-4600 (ask for Mary Bortscheller).  Do not contact the court regarding the Settlement, as court personnel cannot answer your questions.

# Exhibit C

Lann v Trinity Health ERISA
c/o Rust Consulting Inc - 5309
PO Box 2580
Faribault, MN  55021-9580

## IMPORTANT LEGAL MATERIALS

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

*Lann v. Trinity Health Corporation*, 8:14-cv-02237-PJM
Letter to Group C Class Members

Dear Class Member:

You are receiving this letter, along with the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement (hereinafter, "Notice"), because the records from your former employer indicate that **you would be or would qualify as a Class Member in Group C** of the proposed Settlement Class. As a member of Group C you are not entitled to the benefits of Group A or Group B.

**Group C consists of 7,371 individuals who accrued more than three but less than five years of "vesting service" credit under the Plans.** Several of the plans covered by the Settlement have a cash balance or pension equity benefit formula which required that a participant have five years of "vesting service" in order to be 100% vested in their benefits. Under ERISA, cash balance and pension equity benefits must be 100% vested after three years of vesting service (one year of vesting service is 1,000 hours within a given calendar year). People in Group C left employment from a participating employer in the CHE- and Trinity-sponsored plans with more than 3 years of vesting service, but fewer than 5 years of vesting service and thus were not fully vested in their cash balance or pension equity benefit according to the terms of those plans.

As consideration for the release of the improper vesting schedule claim, Defendants will pay $1,300,000 ($1.3 million) in total to the members of Group C. The Plaintiffs and Defendants compromised on $1.3 million to release the claim due to the difficulty in valuing and litigating the improper vesting schedule claim, as well as the time- and labor-intensive process of determining the accrued benefit of each of the 7,371 members of Group C, for the following reasons: records for the former employees in Group C date back as far as the 1970s and involve multiple plans with differing benefit formulae from more than 70 separate employers. Additionally, when Plaintiffs' Counsel examined the list of these 7,371 class members, counsel saw that many individuals had multiple hire dates, termination dates, and re-employment dates. Moreover, while most ERISA plans contain a five-year break in service provision (so that if a participant has credited employment service, but then has a five-year break in service before becoming re-employed, the prior service credit is forfeited) the Plans here do not. Participants frequently were re-employed and never forfeited past service, even if that past service occurred more than five years ago. Given these significant challenges, it would have been prohibitively expensive and time consuming to calculate the accrued benefits for each of the individuals in Group C at the time the settlement was reached, rendering it effectively impossible to come up with a median lost benefit amount for the Group C class members.

In light of these challenges and after hard-fought negotiation, the Parties agreed to $1.3 million as consideration for the release of this claim. Plaintiffs and Class Counsel believe the fairest way to distribute the $1.3 million among the members in Group C is to do so equally, given the lack of information about the value of each individual's claim. **Each member of Group C will receive a single payment of approximately $176.36.** This payment will be made after the Court issues its Final Approval Order in the case. For more details about Group C, see Section 3 of the Notice, as well as Sections 2.12 and 8.1.4 of the Settlement Agreement, available at http://www.cohenmilstein.com/update/trinity-che-settlement.

The Settlement Agreement contains certain carve outs that allow all class members to pursue their prospective claims for relief if any of four developments occur:

- the U.S. Supreme Court holds that the church plan exemption is unconstitutional, or holds that the church plan exemption is constitutional but that a church plan must be established by a church, convention or association of churches;
- the Internal Revenue Service (IRS) issues a written ruling that the Trinity Health Plans do not qualify as church plans under the Internal Revenue Code;
- the Roman Catholic Church disassociates itself from Trinity Health Corporation; or
- the U.S. Congress amends ERISA to specify that a church plan must be established by a church or a convention or association of churches.

See Sections 4.1.3 and 4.1.4 of the Settlement Agreement, see also Section 4 of the Notice. However, even if one of the carve outs above are triggered, you will still each receive the $176.36 payment as consideration to release your improper vesting schedule claim. That payment cannot be clawed back.

**<u>Questions Regarding Group C Should Be Directed to the Claims Administrator</u>**

If you believe that you are not a member of Group C, you can call the claims administrator, Rust Consulting at (866) 216-0278. Rust Consulting can answer any questions you have regarding which Group you belong to. If you have any questions regarding the Settlement Agreement, please contact Class Counsel at trinitysettlement@cohenmilstein.com or 1-888-347-4600 (ask for Mary Bortscheller). Do not contact the court regarding the Settlement, as court personnel cannot answer your questions.