**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| **ANITA LANN, et al.,** | | |
| | \* | |
| **Plaintiffs,** | \* | |
| | \* | **Case No. 14-CV-2237 (PJM)** |
| **v.** | \* | |
| **TRINITY HEALTH** | | |
| **CORPORATION, et al.,** | \* | |
| **Defendants.** | \* | |

_____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED ......................... 3

    A.   Initial Investigation into the ERISA Church Plan Exemption. ............................ 4

    B.   Class Counsel's Vigorous Prosecution of These Cases. ...................................... 6

    C.   The Mediator Oversaw Settlement Negotiations and Made a Mediator's
        Proposal on Attorneys' Fees, to Which the Parties Agreed (Subject to
        Court Approval). ......................................................................................... 8

III. THE COURT SHOULD AWARD THE REQUESTED FEES AS A
    MEDIATOR-PROPOSED, MARKET-SET FEE AGREEMENT ................................. 9

IV.  THE AWARD IS REASONABLE .......................................................................... 10

    A.   The Requested Fees and Expenses Are Reasonable Under the Percentage-
        of-the-Fund Method. .................................................................................... 10

    B.   The Fee Award Is Reasonable Based on the Lodestar Method. ......................... 11

        1.   The Benefits to the Settlement Class. ..................................................... 12

        2.   Time and Labor Expended/Similar Complex Class Actions. ................. 14

        3.   The Novelty and Difficulty of the Questions Involved, and the
            Skill Required to Properly Perform the Legal Services Rendered. ........ 15

        4.   Attorneys' Opportunity Costs in Pressing the Litigation. ....................... 16

        5.   The Customary Fee. ............................................................................. 16

        6.   The Contingent Nature of These Cases Supports an Award of Fees. ...... 17

        7.   Class Counsel's Experience and Reputation Weighs in Favor of the
            Award. ................................................................................................. 17

V.   THE COURT SHOULD AWARD THE REQUESTED EXPENSES ........................... 18

VI.  THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS ........ 19

VII. CONCLUSION .................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnold v. Burger King Corp.*,
719 F.2d 63 (4th Cir. 1983) ................................................................................12

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ..............................................................................12

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ............................................................................9, 10

*Blum v. Stenson*,
465 U.S. 886 (1984)...........................................................................................15, 18

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014)......................................................................11, 15, 19

*In re Continental Illinois Securities Litig.*,
962 F. 2d 566 (7th Cir. 1992) ..........................................................................3, 10

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .........................................................................10, 19

*Decohen v. Abbasi, LLC, et al.*,
299 F.R.D. 469 (D. Md. 2014).....................................................................17, 19, 20

*Deloach v. Phillip Morris Cos.*,
No. 00-01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003).......................10, 17

*Evans v. Jeff D.*,
475 U.S. 717 (1986)..........................................................................................2, 9

*Fangman v. Genuine Title, LLC*,
No. 14-0081, 2017 WL 86010 (D. Md. Jan. 10, 2017)....................................10, 11

*In re Fine Paper Antitrust Litig.*,
751 F. 2d 562 (3d Cir. 1984)............................................................................3, 9

*Goldenberg v. Marriott PLP Corp.*,
33 F. Supp. 2d 434 (D. Md. 1998) (Messitte, J.) .................................................17

*Griffith v. Providence Health & Services*,
No. 14-cv-1720 (W.D. Wash. Mar. 21, 2017) ......................................................15

*Hensley v. Eckherhard,*
    461 U.S. 424 (1983)................................................................2, 9, 12

*Hodges v. Bon Secours Health Sys., Inc.,*
    No. 16-1079, 2016 WL 4447047 (D. Md. Aug. 24, 2016) ....................18

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) .........................................................12

*Johnston v. Comerica Mortgage Corp.,*
    83 F.3d 241 (8th Cir. 1996) ...........................................................10

*Jones v. Dominion Res. Servs., Inc.,*
    601 F. Supp. 2d 756 (S.D. W. Va. 2009).........................................20

*Kaplan v. Saint Peter's Healthcare Sys.,*
    810 F.3d 175 (3d Cir. 2015).............................................................5

*Kaplan v. Saint Peter's Healthcare Sys.,*
    No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014) ......................5

*McDonnell v. Miller Oil Co.,*
    134 F.3d 638 (4th Cir. 1998) ..........................................................13

*Medina v. Catholic Health Initiatives,*
    No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014)...................5

*In re Microstrategy, Inc.,*
    172 F. Supp. 2d 778 (E.D. Va. 2001) ..............................................15

*In re The Mills Corp. Securities Litigation,*
    265 F.R.D. 246 (E.D.Va. 2009) ......................................................17

*Overall v. Ascension,*
    23 F. Supp. 3d 816 (E.D. Mich. 2014)...............................................5

*Rollins v. Dignity Health,*
    19 F. Supp. 3d 909 (N.D. Cal. 2013) .................................................5

*Rollins v. Dignity Health,*
    830 F.3d 900 (9th Cir. 2016) ............................................................5

*In re Royal Ahold N.V. Securities & ERISA Litig.,*
    461 F. Supp.2d 383 (D. Md. 2006) .............................................17, 18

*Savani v. URS Prof'l Sols. LLC,*
    121 F. Supp. 3d 564 (D.S.C. 2015)...................................................20

*Spell v. McDaniel*,
    852 F.2d 762 (4th Cir.1988) ......................................................................18

*Stapleton v. Advocate Health Care Network*,
    817 F.3d 517 (7th Cir. 2016) .....................................................................5

*Stapleton v. Advocate Health Care Network*,
    76 F. Supp. 3d 796 (N.D. Ill. 2014) ...........................................................5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .....................................................................19

Plaintiffs Anita Lann, Jean Atcherson, Albert R. Chavies, and Thomas Holland ("Named Plaintiffs"), and Plaintiff Mary Beth Henrick[1] respectfully file this memorandum in support of their motion for an Order[2] approving awards of attorneys' fees and expenses to their attorneys Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P. ("Class Counsel"), and the grant of Incentive Awards to themselves as class representatives.

## I.    INTRODUCTION

These cases have involved more than four years of high-risk, difficult work in one of the most nuanced, unpredictable, and rapidly developing areas of ERISA jurisprudence  – ERISA Church Plan litigation.  Following almost five months of hard-fought negotiations, the Parties to the present action entered into a comprehensive Settlement Agreement that achieves superior results for the Settlement Class members, including many of the protections they would have received if the cases has been litigated to a conclusion and Plaintiffs had prevailed as well as certain contingent protections that are triggered if the legal landscape were to change in Plaintiffs' favor subsequent to the Settlement's Final Approval.

Specifically, the Settlement[3] provides total monetary relief of **$76,650,400** and significant non-monetary equitable relief to three separate groups of class members.[4] In addition to this monetary and non-monetary relief, the Settlement also allows class members the ability to take

---

[1] As discussed at Section VI, *infra*, Class Counsel seek incentive awards for all Named Plaintiffs, which is defined in the Settlement Agreement to include Mary Beth Henrick, who was expected to be added as a Named Plaintiff in the CHE case via amendment had the litigation progressed.

[2] A proposed order granting the relief sought herein is attached as Exhibit 3 to Plaintiffs' Memorandum in Support of the Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class ("Final Approval Motion"), filed contemporaneously herewith.

[3] A copy of the Settlement Agreement is attached to the Final Approval Motion as Exhibit 1 and the First Addendum to the Settlement Agreement is attached as Ex. 2. The Settlement Agreement and First Addendum are referred herein as "Settlement" or "Settlement Agreement."  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

[4] The Settlement consideration is described in greater detail in Section II(B)(1) and (2) of Plaintiffs' Memorandum in Support of the Motion for Final Approval, filed concurrently with this Motion; Plaintiffs incorporate this section by reference.

advantage of any increase in rights created by developments in the law or facts relating to the Plans by allowing the Plans' participants to pursue their ERISA claims prospectively. *See* Ex. 2 at Schedule D (outlining the contingent carve outs from the Settlement release).

After resolving the key Settlement provisions that provide relief to the Settlement Class, the Parties negotiated, based upon a proposal by the third-party mediator (Robert Meyer, Esq.), an agreement for payment of attorneys' fees, expenses, and class representative incentive awards to Named Plaintiffs.[5]  This compromise provides that, if approved by the Court, Defendants will pay up to $7.885 million in attorneys' fees and expenses to Class Counsel and potential incentive awards to Named Plaintiffs. Ex. 1 at § 8.1.5.  If awarded, these amounts **will in no way reduce** the $76,650,400 in monetary recovery to the Settlement Class, or otherwise abridge non-monetary relief.  *Id.*

The parties to a class action may negotiate not only the settlement of the action, but also the payment of attorneys' fees.  *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 n. 30 (1986). Rule 23(h) of the Federal Rules of Civil Procedure specifically authorizes the Court to award "reasonable attorney fees and nontaxable costs… by agreement of the parties."  In cases that do not produce a "common fund" (where attorneys' fees are deducted from recovery achieved), settlements concerning the payment of attorneys' fees should be encouraged and respected.  It is only in circumstances where parties *fail* to reach agreement that courts should scrutinize the fee request:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.  Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

*Hensley v. Eckherhard*, 461 U.S. 424, 437 (1983).

The Seventh Circuit's Judge Posner observed that there ought to be a presumption of

---

[5] Joint Declaration of Michelle C. Yau and Lynn Lincoln Sarko in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class; and (2) Plaintiffs' Motion for Awards of Attorneys' Fees and Expenses, and Incentive Fees to the Named Plaintiffs ("Joint Decl.") ¶¶ 12-13, submitted contemporaneously herewith.

reasonableness where there has been an adversarial negotiation of attorneys' fees (by defendants who must pay the fee and want to minimize the payment and on behalf of lawyers who wish to receive it) because the negotiated amount acts as a market check on the propriety of the fee.  *In re Continental Illinois Securities Litig.,* 962 F. 2d 566, 574 (7th Cir. 1992).  As the Third Circuit succinctly explained, "a court can, [generally,] assume that the defendants closely scrutinized the [plaintiffs'] fee requests, and agreed to pay no more than was reasonable."  *In re Fine Paper Antitrust Litig.*, 751 F. 2d 562, 582 (3d Cir. 1984).  This is particularly the case where the fees were decided in a negotiated settlement with the oversight of an experienced, neutral mediator.

Even if there were not a presumption of reasonableness, the requested fee satisfies the Court's standards in considering the reasonableness of a fee request whether as a percentage of the common fund (which this is not) or with a lodestar method.  As discussed below, the negotiated attorneys' fees, expenses, and Named Plaintiff awards are reasonable given (i) the work performed by Class Counsel, (ii) their skill and efficiency, (iii) the excellent results they obtained, (iv) the contingent and highly risky nature of the representation, and (v) the time and effort they expended during the more than four years of litigating these cases, and which they will continue to devote in completing the settlement process. The fees and expenses are consistent with the benefits the Settlement confers on the Settlement Class; the negotiated award totals less than 10% of the readily-quantifiable monetary component of the Settlement ($76,650,400); and the requested award represents a modest multiplier of 1.6 on the actual lodestar $4,753,801.50 that Class Counsel expended developing and pursuing these Actions. The incentive awards to the Named Plaintiffs are also fair and reasonable in light of their substantial commitment of time and effort which has made the Settlement possible.

Indeed, although the objection date has not yet run, so far no material objections to the attorneys' fees, expenses nor incentive awards have been filed.

## II.    CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED

As detailed in the Joint Declaration and *infra*, Class Counsel committed considerable

time and resources to develop and prosecute this matter – without any guarantee of payment. *See, e.g.,* Joint Decl. ¶¶ 14-19. This litigation was hard fought and involved extensive investigation, consultation with experts, propounding several rounds of discovery requests, taking multiple depositions and defending multiple deponents, review of thousands of pages of documents, and legal research and briefing on three motions to dismiss and motions for summary judgment, all of which were necessary to achieve this excellent result for Plaintiffs and the Class. *Id.* ¶¶ 20-24.

**A.     Initial Investigation into the ERISA Church Plan Exemption.**

These cases are very different from the typical class action brought under the securities laws, consumer protection statutes, or even the statute at issue here, ERISA. These cases are representative of a number of cases pending around the country that challenge whether hospital systems like CHE and Trinity are entitled to claim that their pension plans are exempt from ERISA as "Church Plans," as defined in 29 U.S.C. § 1002(33).

Class Counsel discovered and developed this area of the law with the assistance of the main public interest organization concerned with pension rights, the Pension Rights Center ("PRC"). Joint Decl. ¶ 16.  Through the PRC, Class Counsel learned that thousands of hospital employees were being denied ERISA's protections, including funding, vesting, and required disclosures, because hospitals claimed their defined benefit pension plans were exempt Church Plans. *Id.*

Class Counsel devoted many hours to researching the definition of a "Church Plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the U.S. Code, the legislative history of the statute, and agency and court interpretations of the statute. Joint Decl. ¶ 17. Class Counsel concluded, based upon their investigation, that ERISA contained only a narrow exemption intended for ***churches***, and that hospital systems like CHE and Trinity were improperly claiming the exemption.  *Id.*; CHE Complaint ¶¶ 63–81, CHE Dkt. # 1; Trinity

Complaint ¶¶ 96-122, Trinity Dkt. # 1.

Class Counsel also understood, based upon their research, that filing Church Plan cases such as this one would challenge many years of private letter rulings from the IRS and informal Advisory Opinions of the Department of Labor.  Joint Decl. ¶ 18; CHE Complaint ¶ 37; Trinity Complaint ¶ 38.  They also knew that the defense would maintain that the small amount of Church Plan case law then in existence would favor a defense reading of the Church Plan exemption.  Joint Decl. ¶ 18.  And they knew that once even a few of the cases were filed, the major hospitals claiming the exemption, which employ hundreds of thousands of people, would be arrayed against them.  *Id.*

Nevertheless, Class Counsel decided to take on this high-stakes, high-risk litigation. Class Counsel were the only lawyers to do so at that time.  *Id.* ¶ 19.  The early results in the district courts were mixed,[6] including an adverse decision by this Court on Defendants' partial motion to dismiss, but when the first three cases reached the appellate courts, Class Counsel (the very same counsel in these cases) achieved major victories.[7]  All three courts ruled unanimously in favor of the plaintiffs.[8]  The defendants then sought review in the United States Supreme Court, which was granted in December.[9]  Class Counsel are now defending those results in the Supreme Court (oral argument was held March 27, 2017).  *Id.*  The settlement achieved here could not have been achieved without Class Counsel's total immersion in and commitment to the issue.  *Id.*

---

[6] *Compare, e.g.*, *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014); *Rollins v. Dignity Health*, 19 F. Supp. 3d 909 (N.D. Cal. 2013); *and Stapleton v. Advocate Health Care Network*, 76 F. Supp. 3d 796 (N.D. Ill. 2014), *with Overall v. Ascension*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic Health Initiatives*, No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014).

[7] *See Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

[8] *See supra* note 4.

[9] *Dignity Health v. Rollins*, 137 S. Ct. 547 (Dec. 2, 2016); *Saint Peter's Healthcare Sys. v. Kaplan*, 137 S. Ct. 546 (Dec. 2, 2016); *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (Dec. 2, 2016).

**B.      Class Counsel's Vigorous Prosecution of These Cases.**

Before filing the Complaints in these cases, Class Counsel developed the legal theories outlined above, consulted with constitutional experts and analyzed the facts relating to CHE and Trinity, and the Plans at issue. Class Counsel examined certain documents related to the Plans, public disclosures by CHE and Trinity, financial statements, and information supplied by the Plaintiffs themselves. Joint Decl. ¶ 20. Ultimately, this research resulted in a carefully drafted 44-page Complaint filed in the Eastern District of Pennsylvania in 2013 against CHE asserting 8 counts against 3 Defendants (not including John Doe defendants), and a 70-page Complaint filed in this District in 2014 against Trinity asserting 9 counts against 5 Defendants (also not including John Doe defendants).[10]  *Id.*

After the CHE Complaint was filed, Defendants filed a motion to dismiss. CHE Dkt. # 33. That motion focused on an asserted lack of subject matter jurisdiction because, as claimed Church Plans, Defendants' Plans were not covered by ERISA. It also raised other nuanced factual and legal issues, such as whether CHE is "controlled by" or "associated with" a church under ERISA, and constitutional issues. *See* Dkt. # 33, 44. The CHE Defendants submitted over 700 pages of documents in support of their motion to dismiss, all of which were reviewed by Class Counsel. Class Counsel invested many hours responding to that motion and Defendants' arguments, including motion practice seeking to strike the exhibits attached to Defendants' motion, a sur-reply brief in opposition to the motion to dismiss and oral argument before the court in the Eastern District of Pennsylvania. *See CHE* Dkt. # 36, 38, 41, 53-54, 56, 61; *see also* Joint Decl. ¶ 21. Following argument, the Court denied the motion to dismiss without prejudice and ordered the Parties to engage in jurisdictional discovery on the issue of whether CHE is a "church" within the meaning of ERISA. *CHE* Dkt. # 67.

For several months thereafter, the Parties engaged in fact and expert discovery and prepared for dispositive motions. Discovery entailed Plaintiffs propounding 43 requests for

---

[10] On July 1, 2014, CHE merged with Trinity. The CHE case was transferred to this Court and consolidated with the Trinity case solely for purposes of reviewing and ruling on approval of the Settlement.

documents, two sets of detailed, multi-part interrogatories and 82 requests for admission, which resulted in Defendants' production of over 10,000 pages of documents, all reviewed by Class Counsel in preparation for summary judgment motions.  Joint Decl. ¶ 22.

Plaintiffs also responded to 16 requests for production of documents from the CHE Defendants and produced over 2,000 pages.  Joint Decl. ¶ 22.  In addition, Class Counsel deposed eleven fact witnesses (including five Rule 30(b)(6) witnesses) and two of Defendants' experts. *Id.*   In turn, Defendants deposed Named Plaintiffs Albert Chavies and Thomas Holland, and Plaintiff Mary Beth Henrick (who was to be added as a Named Plaintiff if the litigation progressed in light of her role assisting Class Counsel with their investigation), and two of Plaintiffs' experts.   *Id.*  At the time the Parties reached Settlement, they had largely completed briefing on summary judgment regarding whether CHE is a church and had prepared to file *Daubert* motions. *CHE* Dkt # 78; *see also* Joint Decl. ¶ 22.

In the Trinity case, Defendants – at the direction of the Court – filed a partial motion to dismiss on the threshold statutory construction issue, arguing that a Church Plan could be established by a non-church entity and still qualify as an ERISA-exempt Church Plan. *See* Dkt # 40, 46.  The Trinity Defendants submitted 169 pages in support of their partial motion to dismiss. Class Counsel responded to that motion and the arguments raised by Defendants.  *See* Dkt. # 43; *see also* Joint Decl. ¶ 23.  As part of their response on behalf of the Trinity Plaintiffs, Class Counsel invested many hours responding to the motion and Defendants' arguments, including a review and analysis of Plan-related documentation and other supporting documents, and prepared for oral argument.  On February 23, 2015, following oral argument on the motion, the Court granted the Trinity Defendants' partial motion to dismiss. *See* Dkt. # 54.

The Trinity Defendants then filed a second partial motion to dismiss on April 10, 2015, arguing that Trinity and the Trinity Benefits Committee are associated with and controlled by the Roman Catholic Church as a matter of law and that Plaintiffs' challenge to the constitutionality of the Church Plan exemption fails as a matter of law. *See* Dkt. # 60, 65. Class Counsel responded in opposition on June 12, 2015.  *See* Dkt. # 63; *see also* Joint Decl. ¶ 24.    The

scheduled oral argument on this motion, which was fully briefed, was delayed by the Court pursuant to the Parties' joint request to allow the Parties to engage in and complete Settlement negotiations.  *See* Dkt. # 61, 64, 66, 67.

**C.     The Mediator Oversaw Settlement Negotiations and Made a Mediator's Proposal on Attorneys' Fees, to Which the Parties Agreed (Subject to Court Approval).**

Parties prepared for, and participated in, their first formal mediation on August 18, 2015, overseen by a third-party JAMS mediator, Robert Meyer, Esq., who has substantial experience mediating cases concerning ERISA and retirement plan issues, including cases involving the Church Plan exemption in ERISA.  Ex. 1 at § 2.11; Joint Decl. ¶ 25.  These negotiations included two in-person mediation sessions in Los Angeles, and a third in Detroit, as well as numerous calls and meetings between the Parties, between August and December of 2016.  *Id.* ¶ 26.  Both sides provided the mediator with their respective mediation statements and also exchanged multiple proposals and counter-proposals with each other concerning potential settlement terms. *Id.* ¶ 27.

As discussed above, prior to and during these negotiations, Class Counsel undertook a thorough investigation of the facts and relevant law related to the CHE and Trinity cases, as well as to the broader Church Plan litigation ongoing in federal courts across the country. Class Counsel also engaged in extensive discovery in CHE, and briefed three and argued two dispositive motions across the two cases. As a result, Class Counsel were well informed about Defendants and the strengths and weaknesses of the cases. Furthermore, throughout the litigation, Class Counsel consulted with their experts in the fields of Roman Catholic Canon law, hospital-based pastoral care, and actuarial science.

Only ***after*** the Parties reached agreement on the key terms for the Settlement Class did they turn to negotiations concerning attorneys' fees.  Joint Decl. ¶ 34.  Those negotiations were overseen by the mediator, who assisted the Parties in reaching an agreement on attorneys' fees (*see* Ex. 1 at § 8.1.5), subject to the Court's approval.  Joint Decl. ¶ 34.

After memorializing the central provisions of the Settlement in a Term Sheet, and before

executing the comprehensive Settlement Agreement, Class Counsel undertook the substantial work of preparing the Settlement for final approval. This included consolidating the two cases in this Court, with Defendants' consent; undertaking confirmatory discovery as to the facts and circumstances related to the individuals in Group B and Group C; and obtaining Preliminary Approval of the Settlement under the careful scrutiny of the Court. Joint Decl. ¶¶ 28, 32-33, 35-41.[11]

### III.    THE COURT SHOULD AWARD THE REQUESTED FEES AS A MEDIATOR-PROPOSED, MARKET-SET FEE AGREEMENT

The parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 734–35, 738 n.30 (1986).  In cases outside the "common fund" context, the Supreme Court has made clear that settlements of requests for attorneys' fees should be encouraged and respected; indeed, it is only where parties *fail* to reach agreement on fees that courts should scrutinize fee requests:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.  Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Rule 23(h) of the Federal Rules of Civil Procedure specifically authorizes the Court to award "reasonable attorney's fees and nontaxable costs . . . by the parties' agreement."  Thus, "the court can, [generally,] assume that the defendants closely scrutinized the [plaintiffs'] fee requests, and agreed to pay no more than was reasonable."  *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 582 (3d Cir. 1984).

Recently, in *Berry v. Schulman*, 807 F.3d 600, 618, n.10 (4th Cir. 2015), the Fourth Circuit explained that a court's scrutiny of a fee award should be diminished where fees are not deducted from a common fund that reduces the class's overall recovery:

> "Other features of this case further diminish any concern about the fee award and, accordingly, any need for heightened scrutiny by the district court. Because class counsel's fee is to be paid entirely by Lexis, it does not reduce the (b)(2) Class's

---

[11] *See also* Section II(B) of Plaintiffs' Final Approval Brief, incorporated herein by reference.

recovery. *Cf. Cook v. Niedert*, 142 F.3d 1004, 1011 (7th Cir. 1998) (when attorneys' fee reduces amount of common fund, court must carefully scrutinize fee application)."

In *Berry*, the Fourth Circuit further noted that because class counsel negotiated their fee with defendants only *after* the substantive terms of settlement had been achieved, it was "far less likely that counsel could have traded off the interests of class members to advance their own ends." *Id.*; *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 570 (7th Cir. 1992) (the virtue in the negotiation of attorneys' fees by the adversarial parties to the settlement is that the "[m]arkets know market values better than judges do.").

Like in *Berry*, here, the fees were negotiated **after** agreement was reached on the key terms of the Settlement for the class and a well-respected and neutral mediator oversaw the negotiations; and the fees were based upon the mediator's proposal, to which the Parties ultimately agreed (subject to Court approval). Given that this agreement has been closely scrutinized by all sides—Plaintiffs, Defendants, and the mediator—the fee agreement should be respected and awarded.

## IV.    THE AWARD IS REASONABLE

The requested award fully comports with the approach adopted by Fourth Circuit courts. In this jurisdiction, courts may use two methods to determine whether a request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *See Fangman v. Genuine Title, LLC*, No. 14-0081, 2017 WL 86010, at *3 (D. Md. Jan. 10, 2017) (using percentage of fund method with lodestar as cross-check where, like here, attorney fee is agreed-to by parties and is paid by defendants to plaintiffs' counsel in addition to, and not out of a common fund); *Deloach v. Phillip Morris Cos.,* No. 00-01235, 2003 WL 23094907, at *3-4 (M.D.N.C. Dec. 19, 2003) (percentage of fund or lodestar may be used where parties agree to direct payment of attorney fees by defendant) (citing *Johnston v. Comerica Mortgage Corp.,* 83 F.3d 241, 246 (8th Cir. 1996). Under either method, the requested fees and expenses are reasonable and should be awarded.

**A.    The Requested Fees and Expenses Are Reasonable Under the Percentage-of-the-Fund Method.**

As indicated above, courts in the Fourth Circuit may choose to cross-check a negotiated fee by evaluating it in relation to settlement benefits to the Class. *See, e.g.*, *Fangman*, 2017 WL 86010, at *3. Typically, this is done by evaluating the award as a percentage of the fund. *Id.*; *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 462 (D. Md. 2014). Here, the Class Settlement Amount is $76,650,400, not including equitable and other relief.  Accordingly, Class Counsel's request of a total of $7,672,653 million total for attorneys' fees, expenses, and incentive awards represents just over 10% of the settlement value, which is far below fees typically awarded in Fourth Circuit courts. *See Boyd,* 299 F.R.D. at 465 (noting that courts compare percentages awarded in cases of similar size, finding that "under the 'percentage-of-recovery' method in settlements under $100 million, [attorney fees] have ranged from 15% to 40%") (citation omitted); *Fangman*, 2017 WL 86010, at *3 (granting attorney fees constituting 25% of monetary relief to Class); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008,* 7 J.Emp.L.Studies 248, 265 T.7 (June 2010) (attorney fees in cases with recovery between $69.6 million and $175.5 million range from 19.4% to 19.9%).[12]

**B.     The Fee Award Is Reasonable Based on the Lodestar Method.**

The lodestar method can also be used to cross-check a negotiated fee amount. *Fangman*, 2017 WL 86010, at *3 ("using the percentage of fund method and supplementing it with the lodestar cross-check ... take[s] advantage of the benefits of both methods.") (internal quotations and citations omitted); *Boyd,* 299 F.R.D. at 467 ("The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar").  Accordingly,

---

[12] Even if the Supreme Court or IRS contingencies are triggered, $26.650 million of the Settlement's payments are still guaranteed.  At $26.650 million, Class Counsel's fees are at a reasonable 28.8%.  Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008,* 7 J.Emp.L.Studies 248, 265 T.7 (June 2010) (median attorney fees of 25% in cases with recovery between $22.8 million and $38.3 million).

after examining the time and labor required, the Court may apply a multiplier to the lodestar.

The Fourth Circuit has expressly adopted the criteria established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), for determining the reasonableness of the hours and rate claimed.  *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The twelve *Johnson* factors are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney[s]; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.*  In conducting this analysis, the Fourth Circuit has noted that

> the district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to [which *Johnson*] factor … [for], as the United States Supreme Court noted in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), many of the *Johnson* factors "are subsumed with the initial calculation of hours reasonably expended at a reasonably hour rate and need not be further considered at all"

*Arnold v. Burger King Corp.,* 719 F.2d 63, 67 n.4 (4th Cir. 1983).

The lodestar method confirms the reasonableness of Plaintiffs' fee request.  Class Counsel expended a total of 7,527.75 hours developing and prosecuting these two cases.  Joint Decl. ¶ 63.  At Class Counsel's hourly rates, which are comparable to those of other class action attorneys, this amounts to a combined lodestar of $4,753,801.50.  *Id.* ¶ 65. Plaintiffs' total requested fee award of $7.621 million amounts to a modest 1.6 multiplier on the combined lodestar of $4.753 million.  *Id.* This multiplier is warranted under the pertinent *Johnson* factors, as discussed below.

### 1.     The Benefits to the Settlement Class.

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the

degree of success obtained" *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998) (citation and internal quotation omitted). Given that the Settlement closely approximates the protections that the Class would have received at judgment, it cannot be disputed that Class Counsel has obtained excellent results for Plaintiffs and the Class, and accordingly, the Fee Petition should be granted.

As discussed in detail in the Final Approval Motion, the Settlement provides substantial benefits to the Class.  First, the Settlement provides for **$76,650,400** in monetary relief. Trinity will make an annual aggregate $25 million contribution to the Plans for three years, totaling $75 million in contributions. Ex. 1 at § 8.1.1. In addition to the $75 million total contribution to the Plans, Trinity will also pay $1,600 each to 219 individuals who were among the participants who elected and received a lump sum distribution during the lump sum window period in 2014 (as defined by the Plans). Ex. 2 at § 8.1.3. Finally, Trinity will pay $1,300,000, on a pro rata basis, to the 7,371 former participants in the Plans who left covered service under the Plans after completing at least three but less than five years of vesting service and who, as a result, allegedly forfeited a benefit accrued under a cash balance or pension equity formula.  Ex. 1 at § 8.1.4. Second, and perhaps more important to the Class, the participants in the Plans will receive certain ERISA-like protections for the next fifteen years, including the guarantee that should the Plans not have sufficient funds to pay participants' accrued benefits during that time period, Trinity will supplement the assets of the trust fund, assuring all accrued benefits are paid. *Id.* at § 9.2.  Third, the Settlement mimics certain ERISA provisions, protecting Plan participants in areas such as plan administration and the Plans' claim review procedure, in addition to receiving summary plan descriptions and notices (annual summaries, pension benefits statements, current benefit values).  *Id.* at § 9.3 – 9.8.  Accordingly, the Settlement offers similar protections that the Class would have received at judgment and demonstrates that the Settlement has achieved a superior result for the Plans' participants and beneficiaries, strongly weighing in favor of Class Counsel's requested award.

## 2.    Time and Labor Expended/Similar Complex Class Actions.

The 7,527.75 hours Class Counsel collectively expended on these cases were reasonably spent, especially given the high-stakes, high-risk nature of this litigation and the excellent results obtained.  Joint Decl. ¶ 65, Exs. C (summary of Cohen Milstein attorneys' fees) and D (summary of Keller Rohrback attorneys' fees).  Class Counsel: (1) learned of the widespread use of the Church Plan exemption by major hospital chains to avoid compliance with ERISA; (2) researched the law bearing on the Church Plan exemption and concluded hospitals were not entitled to the exemption; (3) investigated the non-profit hospital business as it bore on liability and defenses; (4) investigated the facts of these cases, and drafted and filed Complaints in both actions; (5) reviewed over 10,000 pages of documents produced by Defendants; (6) conducted factual and legal research to oppose the three motions to dismiss filed in these actions, and prepared for and participated in oral argument on one of these motions; (7) took or defended 18 depositions, including fact, Rule 30(b)(6) and expert depositions; (8) propounded 43 requests for documents, two sets of interrogatories and 82  requests for admission; (9) responded to 16 requests for production of documents from Defendants and produced over 2,000 pages of Plaintiffs' documents; (10) largely completed briefing on summary judgment before the cases were settled; (11) consulted with experts, exchanged expert reports and rebuttal reports, and prepared Daubert challenges; (12) monitored developments in all the Church Plan cases in order to determine the impact on these cases; (13)  negotiated and crafted a comprehensive Settlement Agreement after arm's-length negotiations overseen by a third-party mediator; (14) successfully moved for preliminary approval of the Settlement, incorporating detailed revisions suggested by the Court; (15) drafted the Class Notice materials and posted them on a dedicated settlement website; and (16) responded to class member inquiries concerning the Class Notices, the Settlement, and this litigation.  *See id.* ¶¶ 15-45.  Moreover, Class Counsel's work is not yet done.  Class Counsel still need to complete the final approval process, assist class members with inquiries, respond to any potential objections, and handle any resulting appeal.  *Id.* ¶ 47.

The hourly rates Class Counsel charged to perform this work, which range from $210 to

$940 per hour, are reasonable.  *See* Joint Decl. ¶¶ 74-76, Exs. C and D to Joint Decl. These rates are "prevailing market rates," for similar services by lawyers of "reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984).  The reasonableness of these rates is evidenced by other cases approving similar rates.  *See, e.g.*, *Boyd,* 299 F.R.D. at 467 (2014 case using attorney rates of $325 to $700, and paralegal rates of $175 to $250 in lodestar cross-check); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001) (approving rates high for district, finding "where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials" the hourly rates charged by counsel, are "within the range of reasonableness").  In addition, Class Counsel recently submitted fee petitions in other Church Plan cases in which they reported hourly rates comparable to those sought herein, and the courts approved the fee awards.  *See Griffith v. Providence Health & Services,* Pls. Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, No. 14-01720 (W.D. Wash. Feb. 3, 2017), Dkt # 57; Order Finally Approving Class Settlement ¶ 10, *Griffith v. Providence Health & Services*, No. 14-cv-1720 (W.D. Wash. Mar. 21, 2017), Dkt. # 69, attached to Joint Decl. as Ex. E (approving attorneys' fees at identical rates as sought here); *Overall v. Ascension Health,* Pl.'s Mot. for Awards of Att'ys' Fees, Expenses & Incentive Fee, No. 13-11396 (E.D. Mich. Aug. 17, 2015), Dkt. # 97; Order and Final Judgment ¶ 8, *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015), Dkt. # 115 attached to Joint Decl. as Ex. F.

> ### 3.     The Novelty and Difficulty of the Questions Involved, and the Skill Required to Properly Perform the Legal Services Rendered.

As noted above, this is not a garden variety ERISA class action; indeed, this area of law is perhaps the most unpredictable and rapidly developing area of ERISA jurisprudence.  The first cases were filed in March 2013 and are being argued in the Supreme Court only four years later. District courts reached opposite findings on the threshold issue in this case: whether a Church Plan must be established by a church, including the adverse decision by the District of Maryland

in the Trinity case here.[13]   In three such cases, the plaintiffs prevailed and the Third, Seventh, and Ninth Courts of Appeals held that only churches may establish Church Plans.  Joint Decl. ¶ 48. These are the cases now pending before the Supreme Court, and the plaintiffs are represented by Class Counsel.  *Id.*  The long-standing use of the Church Plan exemption by hospitals, the supportive private letter rulings many of them obtained from the IRS and/or the DOL, the diversity of outcomes in the lower courts, and the fact that the Supreme Court recently granted certiorari on the fundamental issues in this case were among the challenges faced by Class Counsel.  This action demanded a high degree of legal skill, both to settle the matter and to be prepared to litigate the issues through trial and on appeal.

    **4.**    **Attorneys' Opportunity Costs in Pressing the Litigation.**

As noted above, these cases have been demanding.  Class Counsel has been litigating these cases for more than four years, completing briefing on three motions to dismiss, completing months of fact and expert discovery (including 18 depositions, thousands of pages of documents, and competing expert reports and rebuttal reports), and nearly completing motions for summary judgment.  Even while these cases were stayed, Class Counsel monitored the developments in their other Church Plan cases pending in the appellate courts (and now the Supreme Court) for their impact on these cases, and informed the Named Plaintiffs of those developments.  Joint Decl. ¶ 88.  During a period of nearly five months, Class Counsel devoted time to contentious Settlement negotiations and crafting a Settlement Agreement that was fair and reasonable for the Class.  *Id.* ¶¶ 25-33.  Even after reaching agreement with Defendants, as discussed above, the process to preliminary approval took several more months, as the Parties and the Court modified the Settlement Agreement and related papers.  Consequently, over the course of the last four-plus years, this litigation precluded Class Counsel from accepting other potentially profitable work.

    **5.**    **The Customary Fee.**

---

[13] *Supra*, n.6.

The modest multiplier of 1.6 requested by Class Counsel falls well within the range of multipliers approved by Fourth Circuit courts.  *See Decohen v. Abbasi, LLC, et al.*, 299 F.R.D. 469, 483 (D. Md. 2014) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee") (citation and internal quotation omitted); *In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 265 (E.D.Va. 2009)(same)*; Deloach*, 2003 WL 23094907, at *10-11 (approving multiplier of 4.45 given superior result for Class); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 439, n. 6 (D. Md. 1998) (lodestar within 3 – 4.5 range appropriate) (Messitte, J.).

      **6.**    **The Contingent Nature of These Cases Supports an Award of Fees.**

From the outset, Class Counsel litigated this matter on a contingent basis and placed at risk their own resources to do so. Absent this Settlement, the Settlement Class and their counsel risked obtaining no recovery at all.  The contingent nature of these cases therefore favors the award of fees. *See Decohen*, 299 F.R.D. at 482 ("public policy favors the requested award" where risk of non-payment exists "because the relevant public policy considerations involve the balancing of the policy goals of encouraging counsel to pursue meritorious … litigation.") (citation and internal quotations omitted);  *In re Royal Ahold N.V. Securities & ERISA Litig.,* 461 F. Supp.2d 383, 387 (D. Md. 2006) (granting lodestar with 2.57 multiplier where, despite finding case not "undesirable," contingent nature of representation resulted in class counsel "devot[ing] exceptional resources to the prosecution, facing some risk of non-recovery").

      **7.**    **Class Counsel's Experience and Reputation Weighs in Favor of the Award.**

Class Counsel Cohen Milstein and Keller Rohrback, are among the leading ERISA plaintiffs' firms and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Joint Decl. ¶¶ 49-57.  They are only law firms in the country that—for over six years—have been involved in Church Plan litigation.  As a result of their experience litigating the recent wave of Church Plan cases, they have a deep knowledge of the applicable law.  These firms *alone* have pioneered all the recent positive developments in Church Plan law, including

three appellate victories on the key threshold issue in all Church Plan cases—that only a church can establish a Church Plan. Further, Class Counsel are now actively involved in the consolidated Church Plan ERISA cases pending before the Supreme Court (including arguing before the Court March 27, 2017), providing them a more intimate knowledge of the applicable law.  For these reasons, Judge Bennett of this Court appointed Class Counsel Cohen Milstein as lead counsel over competing counsel in another ERISA Church Plan case against Bon Secours Health System, alleging many of the same ERISA violations as those alleged here.  *See Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016) (finding that Class Counsel "have the most experience litigating this complicated issue of statutory and constitutional interpretation," citing counsel's success in the Circuit courts and the pending cases before the U.S. Supreme Court).[14]

Defense counsel are similarly highly respected and experienced.[15] Given this formidable opposition, a high level of experience was required for success. *See, e.g.*, *In re Royal Ahold N.V. Securities & ERISA Litig.,* 461 F. Supp.2d at 387 (Class Counsel competence in conjunction with highly qualified defense counsel weighs in favor of awarding requested attorney fees).

## V.       THE COURT SHOULD AWARD THE REQUESTED EXPENSES

This Court may award reasonable expenses authorized by the parties' agreement. Fed. R. Civ. P. 23(h). Trial courts may determine what is reasonable based on an objective standard of reasonableness, *i.e.*, the prevailing market value of services rendered. *Blum*, 465 U.S. at 895. The Fourth Circuit has explained that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988).

---

[14] Class Counsel Cohen Milstein and Keller Rohrback both represent lead plaintiffs in *Hodges*, but Judge Bennett agreed with defendants' objection to the appointment of more than one qualified law firm as co-lead counsel, and, accordingly, appointed Cohen Milstein as sole lead counsel for the Class.

[15] *See, e.g.*, Proskauer Employee Benefits & Executive Compensation Blog, http://www.erisapracticecenter.com.

Here, based on the Declaration filed contemporaneously herewith, Class Counsel requests reimbursement for common and routinely reimbursed litigation expenses incurred by Class Counsel in the amount of $213,845.28. Joint Decl. ¶ 65, Exs. G and H (summaries of expenses).[16]  This request is reasonable and should be approved.  *Decohen,* 299 F.R.D. at 483 (finding costs such as those sought here necessary in class litigation).

## VI.    THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS

Class Counsel respectfully requests that the Court approve an award of $10,000 to each of the four named representative plaintiffs and to Plaintiff Mary Beth Henrick.[17]   These stipends do not affect or reduce the benefits to the Class in any way, and will be paid solely out of the allocation of $7.885 million total that Defendants have agreed to pay for attorneys' fees, expenses and incentive awards.  *See* Settlement § 8.1.5.

It is well-recognized that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Boyd,* 299 F.R.D. at 469 (quoting, *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).  *See also Decohen,* 299 F.R.D. at 483 ("named plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)).  Such enhancements compensate class representatives for their time, effort, and inconvenience.  *Decohen,* 299 F.R.D. at 483.  Here, each of the Named

---

[16] The expenses incurred prosecuting these complex class actions include filing fees; travel expenses, court appearances and mediation; copying, delivery and telecommunications charges; computer legal research charges; expert fees; deposition and transcript costs; document hosting fees; mediator's charges; and similar litigation expenses.  These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Class Counsel maintain appropriate back-up documentation for each expense. Joint Decl. ¶¶ 84-86.

[17] Like the Named Plaintiffs, Ms. Henrick participated actively in the CHE litigation. She retained Class Counsel after the initiation of the lawsuit in connection with a denial of benefits and information grounded in CHE's claimed Church Plan status. She assisted Class Counsel with their investigation of the case, and was deposed at length by CHE defense counsel.  Class Counsel intended to add Ms. Henrick as a Named Plaintiff in the CHE case via amendment had the litigation progressed. Accordingly, the term "Plaintiffs" is defined in the Settlement Agreement to include all Named Plaintiffs, as well as Mary Beth Henrick.  Joint Decl. ¶ 87.

Plaintiffs made substantial contributions to the litigation, including: collecting and producing documents; maintaining regular contact with Class Counsel; reviewing and approving their respective Complaints; producing discovery propounded on them and providing testimony in response to being noticed for deposition; staying abreast of the pleadings, motions, and settlement negotiations; and involving themselves in the mediation and settlement of this litigation.  Joint Decl. ¶¶ 87-88. The requested $10,000 incentive award to each plaintiff is consistent with awards made by other courts in the Fourth Circuit.  *See, e.g., Savani v. URS Prof'l Sols. LLC,* 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (awarding incentive award of $15,000, and finding that "A substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from [class representative's] efforts); *Decohen,* 299 F.R.D. at 483 (awarding $10,000); *Jones v. Dominion Res. Servs., Inc.,* 601 F. Supp. 2d 756, 767–68 (S.D. W. Va. 2009) (awarding $15,000).

As the Court no doubt appreciates, the activities of these Plaintiffs required a considerable investment of time.  But, even more important, this responsibility demanded attention and anxiety that no other class members had to shoulder.  It is a difficult thing to go to litigation, and for non-lawyer plaintiffs it can be particularly stressful, no matter how confident one feels about the merits of the claims being asserted or about the counsel chosen. These actions provided great benefit to the members of the Settlement Class and thus the requested awards to Named Plaintiffs are appropriate.

## VII.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and incentive awards for the Named Plaintiffs and Plaintiff Mary Beth Henrick, together with such other and further relief as the Court may deem just and proper.  A proposed order granting the relief sought herein is attached as Exhibit 3 to the Final Approval Motion.

Dated: April 17, 2017                    Respectfully submitted,

                                         COHEN MILSTEIN SELLERS & TOLL PLLC


                    /s/ Michelle C. Yau
                    Michelle C. Yau (admitted *pro hac vice*)
                    Karen L. Handorf (admitted *pro hac vice*)
                    Mary J. Bortscheller (admitted *pro hac vice*)
                    1100 New York Avenue, N.W.
                    Suite 500
                    Washington, D.C. 20005
                    Tel: (202) 408-4600
                    Fax: (202) 408-4699
                    Email: myau@cohenmilstein.com
                    khandorf@cohenmilstein.com
                    mbortscheller@cohenmilstein.com

                    KELLER ROHRBACK L.L.P.
                    Lynn Lincoln Sarko
                    Havila Unrein
                    Matthew Gerend
                    1201 Third Avenue, Suite 3200
                    Seattle, WA 98101
                    Tel: (206) 623-1900 / Fax: (206) 623-3384
                    Email: lsarko@kellerrohrback.com
                    hunrein@kellerrohrback.com
                    mgerend@kellerrohrback.com

                    KELLER ROHRBACK L.L.P.
                    Ron Kilgard
                    Laurie B. Ashton
                    3101 North Central Avenue, Suite 1400
                    Phoenix, AZ 85012
                    Tel: (602) 248-0088 / Fax: (602) 248- 2822
                    Email: rkilgard@kellerrohrback.com
                    lashton@kellerrohrback.com

                    **Counsel for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 17, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Michelle C. Yau

Michelle C. Yau